**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| Kevin Brnich Electric LLC, Performance Electric, Inc., Artistic Electric Inc., Bolt Electric LLC, and Charles Vodicka, *individually and on behalf of all others similarly situated*, | ) ) ) ) ) ) ) | Case No. 1:22-cv-01229-MHC |
| | ) | **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION TO CONSOLIDATE CASES AND APPOINT INTERIM LEADERSHIP COUNSEL** |
| Plaintiffs, | ) ) | |
| v. | ) | |
| Siemens Industry, Inc., | ) ) | |
| Defendant. | ) ) ) | |

Plaintiffs Kevin Brnich Electric LLC, Performance Electric, Inc., Artistic Electric, Inc., Bolt Electric LLC, and Charles Vodicka (collectively, "Plaintiffs") move pursuant to Fed. R. Civ. P. 42(a) for the consolidation of their actions and, pursuant to Fed. R. Civ. P. 23(g), for the appointment of: (1) Brian Gudmundson of Zimmerman Reed LLP and Victoria Nugent of Cohen Milstein Sellers & Toll PLLC as Co-Lead Counsel; (2) David Goodwin of Gustafson Gluek, PLLP and Matthew D. Schelkopf of Sauder Schelkopf LLC as Plaintiffs' Executive Committee; and (3) Charles Van Horn of Berman, Fink, Van Horn P.C. as Liaison Counsel ("Motion"). For the reasons below, the Court should grant the Motion, consolidate the two actions and appoint interim leadership counsel.[1]

## INTRODUCTION

Plaintiffs brought a class action against Siemens for its defective Arc Fault Circuit Interrupters ("AFCIs"). Siemens represents that its AFCIs properly identify and trip to break power in a circuit when they detect a dangerous arc fault. Siemens' AFCIs, however, "nuisance trip", meaning they trip during the use of common

---

[1] Defendant Siemens Industry, Inc. ("Siemens") does not oppose the motion. However, by agreeing not to oppose Plaintiffs' motion to consolidate, Siemens states that it is not conceding that the Northern District of Georgia is the proper venue for Plaintiffs' claims, that Plaintiffs' claims are sufficiently pled, or that Plaintiffs' claims have merit. Additionally, Siemens does not waive and expressly reserves its right to argue that the first-filed rule warrants the dismissal, stay, or transfer of these matters to the U.S. District Court for the District of Columbia.

appliances and in other situations where no dangerous arcing is present.   This widespread problem has impacted electricians and consumers in many, if not all, states and prompted three class actions pending in two district courts: *Kevin Brnich, LLC, et al. v. Siemens Industry, Inc.*, 1:22-cv-01229-MHC (N.D. Ga.) ("*KB* Action"); *Nat'l Sentry Sec. Sys., Inc. et al. v. Siemens Indus., Inc.*, 1:21-cv-01072-CJN (D.D.C. Apr. 19, 2021) ("*Nat'l Sentry* Action"), and *Cates, et al. v. Siemens Industry, Inc.*, No. 1:22-cv-01914-MHC (N.D. Ga. May 13, 2022) ("*Cates* Action").

To efficiently manage these actions, all Plaintiffs' counsel have agreed to request consolidation and a proposed leadership structure.   Plaintiffs, thus, move the Court to: (1) consolidate the *KB* and *Cates* Actions pending in the Northern District of Georgia pursuant to Fed. R. Civ. P. 42(a); and (2) appoint interim plaintiffs' leadership counsel pursuant to Fed. R. Civ. P. 23(g).   Consolidation and appointment of interim leadership counsel promotes the interests of the parties, the proposed Class members, and the Court and ensures this complex case will be litigated efficiently.   The Court should, therefore, grant the Motion.

## BACKGROUND

### A.    Factual Background

The Plaintiffs are four electrical companies (Kevin Brnich Electric LLC, Performance Electric, Inc., Artistic Electric, Inc., Bolt Electric LLC (collectively,

"Electrician Plaintiffs") and one consumer (Charles Vodicka) who sued Siemens for harm caused by its defective AFCIs and omissions and misrepresentations related to its AFCIs' nuisance tripping. *KB* Action, Dkt. 1 ("Complaint"), at ¶¶ 1–8.

AFCIs are a type of circuit breaker that trips upon identifying dangerous arc faults—situations where the current in a circuit travels through an unintended medium and creates a risk of fire. *Id.* at ¶¶ 32–36. Manufacturers, including Siemens, developed AFCIs with advanced electronic circuitry to recognize arcs in a circuit and trip in their presence. *Id.* at ¶¶ 45–46. However, Plaintiffs allege Siemens' AFCIs trip in harmless circumstances. *Id.* at ¶¶ 48, 57–58. This issue, known as "nuisance tripping," describes breakers that repeatedly trip even though no dangerous arcing is occurring in the circuit, including when using common household appliances. *Id.* at ¶ 57. When AFCIs repeatedly and unnecessarily trip, they disrupt the normal functioning of a circuit, requiring them to be replaced with a properly functioning breaker. *Id.* at ¶ 61.

Siemens has claimed nuisance tripping is a "myth" or a "safety feature" and blamed the problems on electricians and homeowners. *Id.* at ¶¶ 76, 78, 80. However, Siemens knew its breakers experienced excessive nuisance tripping. Testing found its AFCIs experienced nuisance tripped where no dangerous arcing occurred, including "where an appliance is drawing high amps" or in the presence

of "electric noise caused by loads on the circuits." *Id.* at ¶ 72.   AFCI breakers are not supposed to trip in those circumstances—they should *only* trip in the presence of a destructive arc. *See id.* at ¶ 46 (statement from National Electric Manufacturers Association ("NEMA") stating that "the [AFCI] devices cannot nuisance trip" and should be able to "know[] the difference between an arc from normal operations, such as unplugging a cord or opening a switch, and a destructive arc.").

Siemens' defective AFCIs' have imposed significant costs on electricians and homeowners.  The Electrician Plaintiffs have each suffered substantial amounts of unpaid time investigating the causes of excessive tripping, only to discover that the issue was Siemens' AFCIs.  *Id.* at ¶¶ 86–121.  Kevin Brnich Electric, LLC found that replacing Siemens' AFCIs with a competitor's breaker resolved the nuisance tripping, suggesting the problem is with Siemens' breakers. *Id.* at ¶ 90.  Others, like Performance Electric, have stopped using Siemens' breakers altogether. *Id.* at ¶ 102.

The Consumer Plaintiffs also spent time and money hiring electricians to investigate nuisance tripping of Siemens AFCI's. *Id.* at ¶¶ 122–128.  Mr. Vodicka replaced his Siemens' AFCI with a competitor's breaker which resolved the tripping but required him to replace his entire electrical panel box. *Id.* at ¶ 125–26.  Mr. Cates, Mr. Butakis, and Mr. Gordon of the *Cates* Action have been unable to use key household appliances because doing so caused their Siemens' AFCIs to trip.

*Cates* Action, Dkt. 1, at ¶¶ 15, 22, 29.  They have expended time and effort replacing and attempting to replace their Siemens' AFCIs.  *Id.* at ¶¶ 23, 31.  Plaintiffs seek a remedy for the harm they and members of the proposed Classes suffered due to Siemens' AFCIs' excessive nuisance tripping.

## B.    The Related Actions

The *KB* Action is the second filed action against Siemens for defects in its AFCIs that lead to nuisance tripping.  On April 19, 2021, National Sentry Security Systems, Inc., Electricalifornia, and Rick Keyser ("First Filed Plaintiffs")—an Ohio electrical company, a California electrical business, and a consumer residing in Nebraska—filed an action against two Siemens defendants, Siemens Corp. and Siemens Industry, Inc., in the United States District Court for the District of Columbia.[2]   Decl. of Brian Gudmundson, at ¶ 3.   The First Filed Plaintiffs represented a proposed nationwide class of consumers and electricians impacted by Siemens' defective AFCIs or, alternatively, Ohio, California, and Nebraska subclasses.  Ex. A at ¶¶ 98–99.  They asserted jurisdiction and venue were proper in D.C. because the defendants were allegedly headquartered there.  *Id.* at ¶¶ 14–15.

---

[2] The *Nat'l Sentry* Action is attached as Exhibit A to the Decl. of Brian C. Gudmundson.

On August 16, 2021, the Siemens defendants moved to dismiss that complaint. *Nat'l Sentry* Action, Dkt. 22. Siemens argued that "Siemens Corp. is not a proper defendant as to any claim" because it "never designed, made, sold, or marketed a single AFCI product and should be removed from the case." *Id.* at 4, 6–7. Defendants represented that Siemens Industry, Inc. manufactured Siemens' AFCIs, and was a Delaware company headquartered in Alpharetta, Georgia. *Id.* at 4. Plaintiffs, thus, filed an amended complaint naming only Siemens Industry, Inc. as a defendant, and moved to transfer the action to the Northern District of Georgia under 28 U.S.C. §1404 because, without Siemens Corp., no party resided in D.C. and no relevant activity occurred there. *Nat'l Sentry* Action, Dkt. 29, 31. Siemens opposed the requested § 1404 transfer and waived jurisdiction in D.C. even though no parties or claims were based there. Siemens also moved to dismiss the *Nat'l Sentry* Action on substantive grounds. *Nat'l Sentry* Action, Dkt. 30. The motion to transfer and motion to dismiss are fully briefed and pending before the Court in D.C.

On March 29, 2022, Plaintiffs filed the instant action against Siemens in this Court, which has jurisdiction as the defendant is headquartered in Alpharetta, Georgia. Dkt. 1. Plaintiffs here also seek to represent a nationwide class of electricians and consumers impacted by Siemens' AFCIs or, in the alternative, Pennsylvania, Washington, Maine, and North Carolina subclasses. *Id.* at ¶¶ 129–

130.   Plaintiffs are represented by the same counsel as the plaintiffs in the action pending in the United States District Court for the District of Columbia with the addition of Atlanta counsel Charles Van Horn of Berman Fink Van Horn, P.C.

On May 13, 2022, Patrick Cates, Bryan Butakis, and Nels Gordon, all consumers of Siemens' AFCIs, filed an action against Siemens for its defective AFCIs in the Northern District of Georgia.  *Cates* Action, Dkt. 1.  Those plaintiffs proposed a nationwide class of consumers or, alternatively, California, Pennsylvania, and Washington subclasses.  *Id.* at 44–45.  The plaintiffs in the *Cates* action are represented by counsel Adam Webb of Webb, Klase & Lemond, LLC and Joseph Sauder and Matthew Schelkopf of Sauder Schelkopf LLC.

## ARGUMENT

## I.   The Court Should Consolidate the Related Actions

Under Fed. R. Civ. P. 42(a)(2), the Court may consolidate "actions before the court involv[ing] a common question of law or fact[.]"[3]   "When the common question of law or fact requirement has been satisfied, trial courts in the Eleventh Circuit are 'encouraged to make good use of Rule 42(a) . . . in order to expedite the

---

[3] Consolidation is only possible concerning actions that are pending before the same court.  *Ewing v. United States*, No. 1:21-cv-2528-MLB, 2021 WL 5926013, at *1 (N.D. Ga. Nov. 23, 2021).  Should the District of D.C. grant the First Filed Plaintiffs' motion for transfer of the *Nat'l Sentry* Action under 28 U.S.C. § 1404, Plaintiffs will also move to consolidate that action with the *KB* Action and the *Cates* Action.

trial and eliminate unnecessary repetition and confusion.'" *Ewing*, 2021 WL 5926013 at *2 (quoting *Hendrix v. Raybestos-Manhattan, Inc.*, 776 F.2d 1495 (11th Cir. 1995)).  In evaluating a motion to consolidate, the Court should consider the risk of prejudice and confusion of maintaining separate actions, and whether consolidation will conserve judicial resources and promote efficient litigation.  *See, e.g.*, *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990) ("Considerations of convenience and economy must yield to a paramount concern for a fair and impartial trial."); *Young v. City of Augusta*, 59 F.3d 1160, 1169 (11th Cir. 1995) ("Decisions to consolidate have been reversed in cases where a party was prejudiced because his substantive legal interests conflicted with those of a co-party.").

## A.    The Related Actions Involve Common Questions of Law and Fact

To consolidate actions under Fed. R. Civ. P. 42(a), the actions must share a common question of law or fact.  *Ewing*, 2021 WL 5926013, at *2.  Here, the *KB* Action and the *Cates* action concern the same alleged wrongdoing—Siemens sale of defective AFCI breakers that excessively nuisance tripped; the same harm—lost money and time investigating and replacing the defective AFCIs; and proposed nationwide class—consumers of Siemens' AFCIs.  *See Walker v. Countrywide Home Loan Servs., Inc.*, No. 1:17-cv-3052, 2017 WL 5712296, at *2 (N.D. Ga. Nov.

1, 2017) ("[C]onsolidation . . . is appropriate[] because . . . the actions raise identical claims, and arise out of the same occurrence.").

The cases also share common legal inquiries.  Both cases bring claims for: (1) breach of implied warranty; (2) violation of the Magnuson-Moss act; (3) unjust enrichment; and (4) violation of Washington's Unfair Business Practices Act.  The actions also have similar fraud-based claims, with the *KB* action alleging fraudulent concealment and negligent omission, and the *Cates* action bringing a common law fraud claim.  The fraud claims each allege Siemens knew but omitted information about this defect to encourage consumers and electricians to purchase and continue to use them.  *KB* Action, Dkt. 1, at ¶ 63; *Cates* Action, Dkt. 1, at ¶¶ 137–38.

The claims that differ do so because of the different state-specific claims available to the respective plaintiffs under the laws of their home states.  *See, e.g.*, *KB* Action, Dkt. 1, at ¶¶ 207–214 (Charles Vodicka brought a claim under North Carolina's Unfair and Deceptive Trade Practices Act); *Cates* Action, Dkt. 1 at ¶¶ 114–26 (Plaintiff Butakis brought a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Act), at ¶¶ 80–108 (Plaintiff Cates brought claims under California's Song-Beverly Act, Consumer Legal Remedies Act, and Unfair Competition Law).

Additionally, the *KB* Action brings claims on behalf of electricians and consumers, while the *Cates* Action is limited to consumer claims. The claims of each group, however, are premised on the same theory—that Siemens AFCIs are defective because they cannot distinguish between normal arcing signatures in a circuit and dangerous ones, resulting in frequent nuisance tripping that renders the breakers unusable. *KB* Action, Dkt. 1, at ¶¶ 44–45, 57.

## B. Consolidation Would Not Prejudice Any of the Parties

Consolidation of cases concerning the same questions of fact or law may not be appropriate if doing so causes "prejudice or possible confusion" or undermines a "fair and impartial trial." *Ewing*, 2021 WL 5926013, at *2. Here, consolidation creates no such prejudice. Plaintiffs and Plaintiffs' counsel in both the *KB* Action and the *Cates* Action have agreed to consolidation of the cases and to the leadership structure outlined below. Further, both actions were filed close together and neither has progressed beyond the initial filings of the complaints, and a motion to dismiss yet to be filed on May 31, 2022 in the *KB* Action. Thus, there is no risk of prejudice or waste of resources that might undermine consolidation. *Id.* ("[T]he Court finds no possible prejudice or confusion from consolidation, partly because neither action has had any substantial proceedings thus far.").

Instead, consolidation will economize judicial resources and the resources of the parties by preventing overlapping motions that will concern many of the same claims, and discovery, which will involve many of the same requests, documents, and communications.  *See Hendrix*, 776 F.2d at 1495 (noting that "the burden on parties, witnesses and available judicial resources posed by multiple lawsuits" is a relevant factor in evaluating a motion to consolidate).  The benefits of consolidation, therefore, outweigh any concerns of prejudice or confusion.  *See id.* (considering "whether the specific risks of prejudice and possible confusion are overborne by the risk of inconsistent adjudications of common factual and legal issues[.]").  The Court should, therefore, consolidate the two related actions.

## II.    The Court Should Appoint Co-Lead Counsel to Oversee the Related Actions

In addition to consolidating the *KB* Action and *Cates* Action, the Court should appoint Interim Co-Lead Counsel pursuant to Fed. R. Civ. P. 23(g).

### A.    Appointing Interim Co-Lead Class Counsel Ensures the Efficient Litigation of the Complex, Overlapping, and Related Actions

"The court may designate interim counsel to act on behalf of a putative class before determining whether to certify the action as a class action."  Fed. R. Civ. P. 23(g)(3).  The Committee Notes to Rule 23 emphasize the benefits of designating interim co-lead counsel even before the class certification stage:

11

> [I]t will usually be important for an attorney to take action to prepare for the certification decision. The amendment to Fed. R. Civ. P. 23(c)(1) recognizes that some discovery is often necessary for that determination. Moreover, settlement may be discussed before certification. It also may be important to make or respond to motions before class certification.

*See* Fed. R. Civ. P. 23 Advisory Comm. Notes (2003).

The Manual for Complex Litigation also recommends early appointment of interim co-lead counsel in complex cases: "designation of interim counsel clarifies the responsibility for protecting the interests of the class during precertification activities, such as making and responding to motions, conducting any necessary discovery, moving for class certification and negotiating settlement." Manual Complex Litig. (Fourth) ("MCL") § 21.11 (2004). To avoid inefficiency, duplication, and prejudice to plaintiffs in related actions, the MCL recommends courts "institute procedures under which one or more attorneys are selected and authorized to act on behalf of other counsel and their clients." *Id.* at § 10.22.

Here, appointing Interim Co-Lead Counsel will benefit the efficient and coordinated litigation of the related actions to the benefit of the Court, the parties, and the putative Class. Already, there are three pending actions involving numerous plaintiffs with overlapping claims and similarly proposed nationwide and state subclasses. Proposed Interim Co-Lead Counsel includes all the counsel who represent the Plaintiffs in the related actions, and by adopting the proposed

leadership structure, the Court will help promote collaboration between the cases, provide clear leadership for efficient decision-making, and ensure the Class's interests are protected by capable counsel in this matter. Implementing a clear leadership structure at this stage in the litigation will allow the various firms to focus their efforts and efficiently represent the putative Class. Such collaboration is critical in a complex class like this one, involving multiple classes.

Under Plaintiffs' proposal, the Interim Co-Lead Counsel will be charged with the oversight and prosecution of this matter and will work in concert to avoid a duplication of effort. Moreover, proposed Co-Lead Counsel will be tasked with efficiently managing this litigation and supervise the Plaintiffs' Executive Committee and its member firms to manage and appropriately direct activity performed on behalf of Plaintiffs and the Class. The collective and broad experiences of the proposed Interim Co-Lead Counsel will ultimately benefit the Class and the efficient litigation of this case.

## B.       Proposed Co-Lead Counsel Satisfy the Criteria for Appointment

Although Rule 23(g)(3) does not provide specific criteria for assessing whether to appoint interim class counsel, courts apply the Rule 23(g)(1)(A) factors. *In re: Dairy Farmers of Am. Cheese Antitrust Litig.*, No. 1:09-cv-03690, 2013 WL 6050431, at *3 (N.D. Ill. Nov. 15, 2013). Fed. R. Civ. P. 23(g)(1)(A) provides four

factors for appoint class counsel: (1) "the work counsel has done in identifying or investigating potential claims in the action"; (2) "counsel's experiences in handling class actions, other complex litigation, and the types of claims asserted in the action"; (3) "counsel's knowledge of the applicable law"; and (4) "the resources that counsel will commit to representing the class[.]" *Id.* at 23(g)(1)(A)(i)-(iv).

Here, as discussed below, each of these factors fully supports appointing the proposed Interim Co-Lead Counsel.

### 1. Proposed Interim Co-Lead Counsel Have Performed Substantial Work Investigating and Bringing this Action

The first Rule 23(g)(1)(A) factor is the work counsel has done to date in identifying and investigating potential claims.  Fed. R. Civ. P. 23(g)(1)(A)(i). Plaintiffs' counsel has extensively researched the facts and legal issues in this case, including by: (1) performing an extensive, months' long initial investigation of Siemens' AFCI breakers before filing an initial complaint; (2) drafting and filing initial and amended complaints; (3) conducting settlement negotiations pursuant to the early settlement program in the United States District Court for the District of Columbia; (4) obtaining, reviewing, and analyzing limited discovery exchanged during settlement negotiations; and (5) fully briefing Siemens' motion to dismiss the complaint in the District of D.C.

Plaintiffs' counsel also continue to perform substantial work that will be valuable to the Class as the case moves forward.  For example, counsel continues to (1) review and investigate complaints of Siemens' AFCIs; (2) investigate Siemens' AFCIs, the scope of its defects, challenges they have posed to consumers and to electricians, and public disclosures regarding the same; (3) research viable legal theories to be brought and filed against Defendant and defenses thereto; and (4) coordinate with Siemens' counsel to ensure the efficient progress of the litigation. Proposed Interim Co-Lead Counsel have conducted all the work necessary to investigate Plaintiffs' claims and prosecute this litigation and continue to devote substantial effort to advancing the claims of Plaintiffs and the proposed Class.

## 2. Proposed Interim Co-Lead Counsel Have Relevant Experience and Knowledge of the Applicable Law

The second and third factors consider proposed Interim Co-Lead Counsel's experience in handling complex litigation and their knowledge of the applicable law. Fed. R. Civ. P. 23(g)(1)(A)(ii)-(iii).  Here, Plaintiffs' counsel are well-qualified to serve as Interim Co-Lead Counsel in this litigation as is evident from the firm biographies attached to the Gudmundson Decl. as Exhibits B-F.  *See In re Terazosin Hydrochloride Antitrust Litig*., 220 F.R.D. 672, 702 (S.D. Fla. 2004) (stating that the "most persuasive" factor in choosing class counsel is counsel's "experience in, and knowledge of, the applicable law in this field").  Each of the attorneys proposed for

leadership and their respective firms have a track record of successfully litigating and resolving consumer class actions. Counsels' qualifications and experiences are detailed in the accompanying firm resumes and briefly summarized below:

**Proposed Interim Co-Lead Counsel**

      **i.**      **Brian C. Gudmundson of Zimmerman Reed LLP**

Brian C. Gudmundson has led and litigated numerous MDL and consolidated actions. He currently serves as co-lead counsel in the consolidated action *Patlan v. BMW of North America, LLC*, 18-cv-09546 (D.N.J.), alleging damages related to fire risk caused by defective BMW vehicles; in the Sonic data breach litigation on behalf of financial institutions, *In re Sonic Corp. Customer Data Sec. Breach Litig.*, 17-md-02807 (N.D. Ohio); and in the consumer data breach action *In re: Netgain Tech., LLC, Consumer Data Breach Litig.*, 21-cv-1210 (SRN/LIB) (D. Minn.). Recently, he led all plaintiffs' counsel on behalf of consumers in the settled MDL action *In re CenturyLink Sales Practices & Secs. Litig.*, MDL 2795 (D. Minn.). Mr. Gudmundson also served as co-lead counsel in the settled arbitration action *GLS Cos. v. Minnesota Timberwolves Basketball LP*, No. 27-cv 16-2816 (Minn. Dist. Ct.) challenging implementation of the Timberwolves' paperless ticketing system and restrictions on transfer of game tickets.

Mr. Gudmundson has held several other leadership positions, including serving as co-lead counsel in the settled Arby's data breach litigation on behalf of financial institutions, *In re Arby's Rest. Grp., Inc., Data Sec. Litig.*, 17-cv-00514, (N.D. Ga.), and on the steering committees on behalf of financial institutions in the settled actions involving the Equifax data breach, *In re Equifax Inc. Customer Data Sec. Breach Litig.*, MDL 2800 (N.D. Ga.), Wendy's data breach, *First Choice Fed. Credit Union v. The Wendy's Co.*, 16-cv-00506 (W.D. Pa.); and Home Depot data breach, *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, MDL 2583 (N.D. Ga.), among several others.  Prior to these, he was one of the lead litigators in the landmark Target data-breach case, *In re Target Corp. Customer Data Sec. Breach Litig.*, MDL 14-2522 PAM/JJK (D. Minn.) and served on the plaintiffs' steering committee for the breach-of privacy action, *In re Vizio, Inc., Consumer Privacy Litig.*, MDL 2693 (C.D. Cal.).

Mr. Gudmundson has coordinated and led the investigation and present litigation related to Siemens' allegedly defective AFCI breakers to date.

### ii. Victoria Nugent of Cohen Milstein Sellers & Toll PLLC

Victoria Nugent is a highly regarded consumer protection litigator, having overseen significant consumer fraud investigations and litigation on behalf of the state Attorneys General of Nevada, New Mexico, Pennsylvania, New Jersey,

Indiana, and Vermont – as well as class actions brought on behalf of consumers under the laws of numerous states.  Ms. Nugent is named among Lawdragon's "500 Leading Lawyers in America" (2019 – 2021), as well as Lawdragon's "500 Leading Plaintiff Consumer Lawyers" (2020), and The National Law Journal's "Plaintiffs' Lawyers Trailblazers" (2017).  She is Co-Chair of the Consumer Practice Group.

Over the last decade, Ms. Nugent has represented state Attorneys General in civil law enforcement investigations and litigation involving consumer protection, Medicaid fraud, and other areas of enforcement that protect government interests and vulnerable communities.  These included cases involving deceptive and unfair opioid marketing and distribution, deceptive and irresponsible lending, and improper foreclosure.  During her earlier years in the Consumer Practice Group, Ms. Nugent was involved in several precedent-setting matters, including *Keithly v. Intelius, Inc.* (W.D. Wash) (a consumer class action against Intelius concerning their Adaptive Marketing scheme to deceptively enroll product purchasers in inadequately disclosed subscription-based services); *In re StarLink Corn Prod. Liab. Litig.*, (N.D. Ill.) (representing farmers against Aventis CropScience concerning the sale of an unapproved, genetically modified corn product); *In re General Motors Dex-Cool Prod. Liab. Litig.* (Super. Ct. Alameda Cty., Cal.) (representing consumers with engine damages caused by defective factory-installed coolant).

Ms. Nugent has argued cases before the high courts of Georgia, Nebraska, and the District of Columbia, as well as the federal D.C. Circuit Court of Appeals and the Commonwealth Court of Pennsylvania.   Most recently, Ms. Nugent was appointed to the Executive Committee in *Lyman, et al. v. Ford Motor Co.* (E.D. Mich.). In that case, Ms. Nugent represents consumers who claim that Ford's F-150 pickup trucks have excessive oil consumption due to a product defect.

Prior to joining Cohen Milstein in 2000, Ms. Nugent worked for seven years at Public Citizen, a national consumer advocacy organization.   There, she worked on many legislative and regulatory campaigns related to highway, automobile, and trucking safety.   Ms. Nugent is on the Board of Directors of Public Justice Foundation, the one of the nation's foremost consumer litigation and advocacy organizations.   Ms. Nugent served on the D.C. Bar Committee on the Rules of Professional Conduct from 2012 to 2019.   Since 2019, she has been a member of the Bar's Legal Ethics Committee.

**<u>Proposed Members of Interim Plaintiffs' Executive Committee</u>**

### i.   David Goodwin, Gustafson Gluek, PLLC

David Goodwin is a partner with Gustafson Gluek PLLC. His practice focuses on antitrust, securities, and consumer protection litigation. He currently serves in leadership positions in *Hogan v. Amazon, Inc.,* No. 1:21-cv-3169 (N.D. Ill.); *In re*

*Netgain Tech., LLC, Consumer Data Breach Litig.*, No. 21-cv-1210 (D. Minn.);
*Krukas et al. v. AARP, Inc., et al.,* No. 18-cv-1124-BAH (D.D.C); *FCA US LLC*
*Monostable Elec. Gearshifts Litig.,* 16-md-2744-DML-DRG (E.D. Mich.), and
*Reynolds, et al. v. FCA US, LLC*, No. 2:19-cv-11745 (E.D. Mich.).   Some of the
other cases Mr. Goodwin has been actively involved in include *Kottemann*
*Orthodontics, P.L.L.C. v. Delta Dental Plans Ass'n*, 0:19-cv-03139 (D. Minn.); *In*
*re Dealer Mgmt. Sys. Antitrust Litig.*, 1:18-cv-00864 (N.D. Ill.); *Karsjens v. Jesson*,
No. 0:11-cv-03659 (D. Minn.); *In re Nat'l Prescription Opiate Litig.*, 1:17-md-
02804 (N.D. Ohio); *Phillips v. Caliber Home Loans*, No. 0:19-cv-02711 (D. Minn.);
*Woronko v. General Motors, LLC*, No. 4:19-cv-13449 (E.D. Mich.); *Dryer v. Nat'l*
*Football League*, No. 0:09-cv-02182 (D. Minn.); *National Hockey League Players'*
*Concussion Injury Litig.*, No. 0:14-md-02551 (D. Minn.).

### ii.    Matthew D. Schelkopf, Sauder Schelkopf LLC

Matthew D. Schelkopf, a partner at Sauder Schelkopf LLC, has extensive
litigation experience throughout the United States and has successfully handled large
complex class actions on behalf of millions of consumers. *See, e.g.*, *In re: Hyundai*
*and Kia Engine Litig.*, 8:17-cv-02208-JLS-JDE (C.D. Cal.) (appointed co-lead
counsel in class action against Hyundai and Kia and negotiated a class settlement
valued at approximately $892 million related to alleged engine defect); *Jackson v.*

*Viking Group, Inc.*, No. 8:18-cv-02356-PJM, ECF No. 46 (D. Md.) (class action settlement valued between $30.45 million and $50.75 million that provided a free replacement program to replace the allegedly defective sprinklers with non-defective sprinklers, and a claims program to reimburse those who experienced non-fire activations); *Fath v. American Honda Motor Co.*, No. 18-cv-01549-WMW (D. Minn.) (appointed lead counsel in class action against Honda and negotiated a class settlement related to an alleged oil dilution defect).  In 2022, *LawDragon* recognized Mr. Schelkopf in its list of the "500 Leading Plaintiff Consumer Lawyers." *The Legal Intelligencer* named Mr. Schelkopf in its 2020 Pennsylvania Trailblazers list recognizing 31 lawyers who "have taken extra measures to contribute to positive outcomes . . . and who are truly agents of change." Since 2010, Mr. Schelkopf has been selected by Pennsylvania Super Lawyers as a Rising Star (a distinction held by the top 2.5% of attorneys in PA) and then a Pennsylvania Super Lawyer, as chosen by their peers and through the independent research of Law & Politics.  In 2022, he was selected as a Best Lawyer® in America (Mass Tort/Class Action).

**Proposed Liaison Counsel**

> **i.  Charles Van Horn, Berman, Fink, Van Horn**

Charles Van Horn is a shareholder in the Atlanta, Georgia firm Berman Fink Van Horn where his practice involves business and commercial litigation with an

emphasis on litigation for financial institutions on a wide variety of issues.  Mr. Van Horn is AV rated by Martindale Hubbell.

Mr. Van Horn's representation of financial institutions includes data breach and cyber-related issues, as well as enforcement litigation, lender liability, statutory compliance issues and foreclosure claims.  In addition, he handles a significant number of cases involving fraudulent conveyance claims and has tried many such claims to jury verdict.  Some of his ongoing litigation highlights most relevant to this Motion are set forth below:

- Appointed co-lead counsel in *In re: Sonic Corp. Customer Data Sec. Breach Litig. (Financial Institutions)*, No. 1:17-md-02807 (N.D. Ohio) representing banks and credit unions who issued payment cards that were subject of alleged data breach.

- Appointed member of the Plaintiffs' Executive Committee in *In re: Arby's Rest. Group, Inc. Data Sec. Litig.*, No. 17-cv-00514 (N.D. Ga.) representing banks and credit unions who issued payment cards that were subject of alleged data breach.

- Appointed member of the Plaintiffs Steering Committee in *In re: Marriott Int'l Customer Data Sec. Breach Litig.*, No. 8:18-cv-03833-PJM (D. Md.) representing banks and other financial institutions in recovering losses arising from the Marriott Data Breach.

- Appointed member of the Plaintiffs' Steering Committee in *In re: Equifax, Inc. Customer Data Sec. Breach Litig.*, MDL No. 2800; 1:17-md-2800-TWT (N.D. Ga.), representing financial institutions in recovering losses arising from the Equifax Data Breach.

Mr. Van Horn was formerly an adjunct professor teaching legal writing and advocacy at Emory University School of Law.  Mr. Van Horn lectures frequently, including conducting numerous seminars on lender litigation matters, data security, foreclosure issues and fraudulent conveyance claims.  For example, he has presented to the Georgia Community Bankers Association on lender enforcement and liability issues.  He is also a frequent lecturer for National Business Institute on trial advocacy, evidence, and business litigation issues.

### 3.    Proposed Interim Co-Lead Counsel are Committed to Representing and Advancing the Interests of the Class

The final factor here is the resources that counsel will commit to representing the class.  Fed. R. Civ. P. 23(g)(1)(A)(i)-(iv).  Proposed Interim Class Counsel's respective law firms have the resources to effectively prosecute this case and are also committed to utilizing those resources to advance the interests of Plaintiffs and the Class.  Indeed, Plaintiffs' counsel have already devoted significant time and resources to investigating this action, communicating with Plaintiffs and other putative class members, engaging in limited discovery and settlement negotiations, and briefing disputes before the Court in the District of Columbia.

The subsequent filings of additional Plaintiffs in this action and in the *Cates* action demonstrate Interim Co-Lead Counsel's continued investigation of this case and of its continued communication with putative Class members.  With their

23

knowledge of the facts, claims, and legal issues, the Interim Co-Lead Counsel fully

understand the investment of time and resources that will be necessary to pursue this

action to a successful resolution. Their respective firms have devoted, and will

continue to devote, the necessary resources to advance the interests of the Class.

### C.     The Responsibilities of Interim Co-Lead Counsel

Proposed Interim Co-Lead Counsel, members of the proposed Plaintiffs'

Executive Committee, and Liaison Counsel will each contribute to directing and

coordinating substantive and procedural issues on behalf of Plaintiffs and the Class.

MCL, §§ 10.221, 40.22.  Co-Lead Counsel, specifically, will be responsible for the

overall conduct of the litigation and will have the specific responsibility to:

1.   Determine and present (in briefs, oral argument, or such other fashion as may be appropriate, personally or by a designee) to the Court and opposing parties the Plaintiffs' and putative Class members' positions on all matters arising during pretrial proceedings;

2.   Coordinate the initiation and conduct of discovery on behalf of Plaintiffs and putative Class members, consistent with the requirements of Fed. R. Civ. P. 26(b)(1), 26(b)(2), and 26(g), including the preparation of joint interrogatories and requests for the production of documents and the examination of witnesses in depositions;

3.   Conduct settlement negotiations on behalf of Plaintiffs and putative Class members, and, where appropriate, to present any proposed settlements to the Court on behalf of putative class members;

4.   Delegate specific tasks to other counsel, in a manner designed to ensure that pretrial preparation is conducted efficiently and effectively;

5.      Enter stipulations with opposing counsel as necessary;

6.      Prepare and distribute status reports to any other law firms that might seek to represent the putative class;

7.      Maintain adequate time and disbursement records covering services as Interim Co-Lead Counsel;

8.      Monitor the activities of any other law firms that might seek to represent putative Class members to ensure that schedules are met and unnecessary expenditures of time and funds are avoided; and

9.      Perform such other duties as may be incidental to the proper prosecution and coordination of pretrial activities on behalf of Plaintiffs and the putative Class or authorized by further order of this Court.

The proposed Interim Co-Lead Counsel are well-immersed in class action and complex litigation and have already undertaken substantial work identifying, investigating, and prosecuting potential claims in this action.  Proposed Interim Co-Lead Counsel are willing and able to commit ample resources to staff and finance the prosecution of this action over a period of years.  The proposed Interim Co-Lead Counsel are, therefore, well-qualified and committed to achieving a favorable result on behalf of Plaintiffs through the efficient management of this complex case.

## CONCLUSION

The Court should grant Plaintiffs' motion, consolidate the *KB* and *Cates* Actions, and appoint the proposed interim leadership counsel to oversee this and any related actions on behalf of Plaintiffs and the Class.

Respectfully submitted,

Dated: June 2, 2022

*/s/ Brian C. Gudmundson*
Brian C. Gudmundson (*pro hac vice*)
Michael J. Laird (*pro hac vice*)
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
Facsimile: (612) 341-0844
brian.gudmundson@zimmreed.com
michael.laird@zimmreed.com

Victoria S. Nugent (*pro hac vice pending*)
Brian E. Johnson (*pro hac vice pending*)
**COHEN MILSTEIN SELLERS**
**& TOLL PLLC**
1100 New York Ave. NW, Suite 500
Washington, DC 20005
Telephone: (202) 408-4600
Facsimile: (202) 408-4699
vnugent@cohenmilstein.com
bejohnson@cohenmilstein.com

Charles H. Van Horn (724710)
**BERMAN FINK VAN HORN P.C.**
3475 Piedmont Road NE, Suite 1100
Atlanta, GA 30305
Telephone: (404) 261-7711
Facsimile: (404) 233-1943
cvanhorn@bfvlaw.com

David A. Goodwin (*pro hac vice*)
Anthony J. Stauber (*pro hac vice*)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600

Minneapolis, MN 55402
Telephone: (612) 333-8844
Facsimile: (612) 339-6622
dgoodwin@gustafsongluek.com
tstauber@gustafsongluek.com

*Counsel for Plaintiffs and the Class*

27

**LOCAL RULE 7.1 CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing pleading filed with the Clerk of Court has

been prepared in 14-point Times New Roman font in accordance with Local Rule

5.1(C).

Dated: June 2, 2022                    */s/ Brian C. Gudmundson*
                                        Brian C. Gudmundson