IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KEVIN BRNICH ELECTRIC, LLC,
PERFORMANCE ELECTRIC,
INC., ARTISTIC ELECTRIC INC.,
BOLT ELECTRIC LLC,
NATIONAL SENTRY SECURITY
SYSTEMS, INC.,
ELECTRICALIFORNIA,
CHARLES VODICKA, PATRICK
CATES, BRYAN BUTAKIS, NELS
GORDON, RICK KEYSER, TYLER
BARRETTE, and CLIFFORD
OAKLEY, individually and on behalf
of all others similarly situated,

     **Plaintiffs,**

v.

**SIEMENS INDUSTRY, INC.,**

     **Defendant.**

CIVIL ACTION FILE

NO. 1:22-CV-1229-MHC

## ORDER

This is a putative class action which alleges damages suffered by both business and consumer plaintiffs arising from the operation of defective Arc Fault Circuit Interpreter ("AFCI") circuit breakers designed and manufactured by Defendant Siemens Industry, Inc. ("Siemens"). This case comes before the Court on Siemens' Motion to Dismiss ("Mot. to Dismiss") [Doc. 43].

## I.    FACTUAL BACKGROUND[1]

### A.    Circuit Breakers, AFCIs, and Nuisance Tripping

A circuit breaker is a device that is placed in an electrical panel box located in a home to protect against electrical fires and injuries.  Consol. Compl. ¶ 34.  An AFCI is a type of circuit breaker; it is designed to protect a home from electrical arc faults, which are potentially dangerous electrical conditions where an electrical current travels through an unintended medium (such as the air or a loose connection) instead of through the wires in a circuit.  Id. ¶¶ 1, 42.  An AFCI monitors the electrical current within the circuit to identify potential signatures of electrical arcs.  Id. ¶ 2.  Upon detecting a dangerous electrical arc, an AFCI breaker trips to stop the current and prevent the electrical arc from causing a fire.  Id. ¶¶ 2, 36.

There are also harmless electrical arcs that frequently occur in homes, such as when common household appliances are turned on or stopped and create arcing

---

[1] Because this case is before the Court on a motion to dismiss, the facts are presented as alleged in Plaintiffs' Consolidated Class Action Complaint ("Consol. Compl.") [Doc. 40].  See Silberman v. Miami Dade Transit, 927 F.3d 1123, 1128 (11th Cir. 2019) (citation omitted).

signatures that do not pose a threat of fire.  Id. ¶ 3.[2]  Plaintiffs allege AFCI

breakers that are properly designed distinguish between harmless electrical arcs

and dangerous electrical arcs so that tripping only occurs in the latter situation.  Id.

¶¶ 4, 41.

"Nuisance tripping" occurs when an AFCI breaker fails to distinguish

between dangerous electrical arcs and harmless electrical arcs and trips in the

presence of both.  Id. ¶¶ 4, 54.  Plaintiffs allege that the occurrence of nuisance

tripping renders the circuit unusable, causing inconvenience to the user, safety

risks, and financial loss due to necessary repairs.  Id. ¶¶ 4, 56, 59.  Beginning in

2017, the National Electric Code, which is a set of residential, housing, and

electrical standards adopted in many cities and states, began requiring that AFCIs

be installed in all new residential construction, resulting in AFCIs becoming

frequently used breakers in modern homes.  Id. ¶¶ 40, 48.

### B.   Siemens' AFCIs Are Allegedly Defective Because They Trip in the Presence of Harmless Electrical Arcs

Siemens is headquartered in Alpharetta, Georgia, and designs, manufactures,

and sells arc fault products including AFCI circuit breakers.  Id. ¶¶ 5, 29, 64.

---

[2] Similarly, devices that have electric motors—such as vacuums, treadmills, and power tools—all produce electrical arcs during normal operation but do not pose a danger of a fire.  Id. ¶ 50.

Siemens "provides a warranty" for its AFCI breakers to United States customers. Id. ¶ 29.

Plaintiffs allege that Siemens' AFCIs "suffer from nuisance tripping" by "fail[ing] to adequately distinguish between harmless and dangerous electrical arcs . . . when no dangerous electrical arc is present." Id. ¶ 5; see also id. ¶ 73 ("Electricians and consumers who installed Siemens' AFCI breakers have found that, upon installation . . ., they experience frequent, unexplainable tripping even where no identifiable arcing is occurring."). Plaintiffs further allege that Siemens has failed to update its AFCIs to identify and ignore the harmless arcing signatures caused by household appliances. Id. ¶ 5.

## C.    Siemens' Prior Knowledge of the Alleged Defect

Plaintiffs allege that, based on publications, complaints, and its own testing, Siemens was aware that its AFCI breakers experienced unusually high rates of nuisance tripping and concealed this information from electricians and consumers. Id. ¶¶ 51, 58, 71, 74-83. More specifically, Plaintiffs allege that Siemens received numerous complaints directly and on third-party websites which indicated the extent to which its AFCIs experienced nuisance tripping. Id. ¶ 75-82. Plaintiffs further allege that "[t]he many public complaints and others made directly to Siemens describing Siemens' AFCI breakers as exhibiting nuisance tripping, put

4

Siemens on notice that it had made available for sale defective Siemens' AFCI breakers that do not function properly or as advertised." Id. ¶ 82.

Plaintiffs also allege that Siemens was aware from its own testing that its AFCI breakers did not adequately distinguish between dangerous arcs and those that were the result of nuisance tripping. Id. ¶¶ 83, 88. There were also comments published by the National Electric Manufacturers Association that discussed issues concerning the unwarranted tripping of AFCIs. Id. ¶¶ 51, 71. Siemens also issued a troubleshooting guide in 2018 that providing recommendations to consumers and electricians as to how to prevent tripping in its AFCI breakers, and advertised "innovated trip indicators" as well as an Intell-Arc Diagnostic tool to help with the troubleshooting process. Id. ¶¶ 89-92.

## D.    Siemens' Alleged Concealment and Misrepresentations

Despite having knowledge that its AFCIs tripped in the presence of harmless electrical arcs and through the use of common appliances, Plaintiffs allege that Siemens failed to disclose and concealed the defects in its breakers which resulted in the nuisance tripping. Id. ¶¶ 74, 84-94. Siemens allegedly misrepresented the occurrences of nuisance tripping as a safety feature of its AFCIs and that any improper tripping was due to homeowner or electrician error. Id. ¶¶ 85, 87.

### E.     Parties

Plaintiffs are six electricians and seven homeowners who were allegedly injured by an alleged defect in Siemens' AFCIs.  Id. ¶¶ 16-28.

### 1.     The Electrician Plaintiffs

The following plaintiffs are businesses that provide electrical services to customers (collectively the "Electrician Plaintiffs"):  Kevin Brnich Electric, LLC ("KB Electric"), a Pennsylvania LLC; Bolt Electric LLC ("Bolt Electric"), a Maine LLC; Performance Electric, Inc., ("Performance Electric"), a Washington state company; Artistic Electric Inc. ("Artistic Electric"), a Pennsylvania corporation; National Sentry Security Systems, Inc. ("NSSS"), an Ohio company; and Electricalifornia, a California company.  Id. ¶¶ 16-21.  Plaintiffs allege that KB Electric, Bolt Electric, Artistic Electric, NSSS, and Electricalifornia purchased and installed Siemens' AFCI breakers, including breakers that experience nuisance tripping.  Id. ¶¶ 98, 118, 126, 134, 143.  Plaintiffs also allege that Performance Electric has exclusively used Siemens' AFCIs since 2009.  Id. ¶ 109.  The Electrician Plaintiffs fail to specify if they purchased these AFCIs directly from Siemens or a third-party retailer, or the quantity or type of AFCI purchased. Plaintiffs allege that, upon installation, each Electrician Plaintiff found that many of Siemens' AFCIs tripped "for no reason."  Id. ¶¶ 100, 109, 121, 129, 137, 146.

2.    **The Consumer Plaintiffs**

The following plaintiffs are consumers that purchased Siemens' AFCIs for their homes or purchased homes that already had these AFCIs installed (collectively, the "Consumer Plaintiffs"):  Charles Vodicka ("Vodicka") of North Carolina; Patrick Cates ("Cates") of California; Bryan Butakis ("Butakis") of Pennsylvania; Nels Gordon ("Gordon") of Washington state; Rick Keyser ("Keyser") of Nebraska; Tyler Barrette ("Barrette") of New Hampshire; and Clifford Oakley ("Oakley") of Oregon.  Id. ¶¶ 22-28.

Vodicka hired a home builder and electrician, who installed Siemens' AFCI in his home in North Carolina in 2014.  Id. ¶ 151.  Cates moved into a new construction vacation home in California in 2021 and hired a builder and electrician to purchase and install Siemens' AFCIs.  Id. ¶ 158.  Butakis moved into a new construction home in 2021 in Pennsylvania and hired a builder and electrician to purchase and install Siemens' AFCIs.  Id. ¶ 163.  Gordon purchased a new home in Washington in 2022 which had Siemens' AFCI breakers already installed.  Id. ¶ 168.  Between 2019-2020, Keyser, a certified electrician, performed the electrical work in his newly constructed home in Nebraska, including the purchase and installation of Siemens' AFCI breakers.  Id. ¶¶ 172, 174.  In 2020, Barrette purchased a new home in New Hampshire which had new

7

Siemens' AFCI breakers. Id. ¶¶ 178-79. In 2021, Oakley purchased a Siemens electrical panel, which included Siemens' AFCIs and which were used in the remodeling of his kitchen. Id. ¶ 187.

Although the Consolidated Complaint alleges that Cates, Butakis, Gordan, and Barrette purchased Siemens' AFCIs indirectly (i.e., by hiring builders/electricians to purchase the AFCIs for them, or by receiving the AFCIs with the purchase of their homes), id. ¶¶ 158, 163, 168, 179, and that Keyser purchased Siemens' AFCIs from Menards, id. ¶ 174, it does not specify whether Vodicka and Oakley purchased their AFCIs directly from Siemens or from a third-party retailer, id. ¶¶ 151-52, 187. The Consolidated Complaint alleges that each Consumer Plaintiff experienced issues with Siemens' AFCI breakers inappropriately tripping. Id. ¶¶ 152-53, 159, 164, 168-69, 175-76, 180, 188.

## F.    Procedural History

On April 19, 2021, NSSS, Electricalifornia, and Keyser filed a Class Action Complaint in the United States District Court for the District of Columbia seeking damages for the purchase and installation of Siemens' allegedly defective AFCI breakers. Nat'l Sentry Sec. Sys., Inc., et al v. Siemens Corp., Inc., No. 1:21-cv-1072-CJN (D.D.C. Apr. 19, 2021) (Doc. 1 in No. 1:22-CV-3043-MHC). An Amended Class Action Complaint added Barrette as a party plaintiff. Id. (Doc. 29

in No. 1:22-CV-3043-MHC).  On July 27, 2022, the district court granted the

plaintiffs' motion to transfer that case to the Northern District of Georgia (Doc. 44

in No. 21-CV-3043-MHC), where it was assigned to the undersigned.  Nat'l Sentry

Sec. Sys., Inc., et al v. Siemens , Inc., No. 1:22-CV-3043-MHC (N.D. Ga., April

19, 2022).

A second Class Action Complaint was filed on March 29, 2022, by Plaintiffs

KB Electric, Performance Electric, Artistic Electric, Bolt Electric, and Vodicka in

this case.  Compl. [Doc. 1].  A third Class Action Complaint was filed by Cates,

Butakis, and Gordon in this Court.  Cates, et. al v. Siemens Industry, Inc., No.

1:22-CV-1914-MHC (N.D. Ga. May 13, 2022).

On June 24, 2022, this Court granted the plaintiffs' unopposed motion to

consolidate the Cates case with this case.  (Doc. 15 in No. 1:22-CV-1914-MHC).

On September 8, 2022, this Court granted the plaintiffs' unopposed motion to

consolidate the NSSS case with this case.  (Doc. 59 in No. 1:22-CV-3043-MHC).

The Consolidated Complaint, filed in this case on August 2, 2022[3], asserts one

federal claim for violation of the Magnuson-Moss Warranty Act ("MMWA"), 14

U.S.C. § 2301, et seq. (Count VI); state law claims for fraudulent concealment

---

[3] Oakley was added as a party plaintiff to the Consolidated Complaint.  Consol.
Compl. ¶ 15.

(Count II), negligent misrepresentation (Count III), breach of the implied warranty of merchantability (Count IV), breach of express warranty (Count V), and unjust enrichment (Count VII); and violations of ten different state-specific consumer protection statutes (Counts I and VIII through XVI).  Consol. Compl. ¶¶ 201-365.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Under Federal Rule of Civil Procedure 12(b)(6), a claim will be dismissed for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citation omitted).  Thus, a claim will survive a motion to dismiss only if the factual allegations in the pleading are "enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555.

At the motion to dismiss stage, the court accepts all well-pleaded facts in the plaintiff's complaint as true, as well as all reasonable inferences drawn from those facts. <u>McGinley v. Houston</u>, 361 F.3d 1328, 1330 (11th Cir. 2004); <u>Lotierzo v. Woman's World Med. Ctr., Inc.</u>, 278 F.3d 1180, 1182 (11th Cir. 2002). Not only must the court accept the well-pleaded allegations as true, but these allegations must also be construed in the light most favorable to the pleader. <u>Powell v. Thomas</u>, 643 F.3d 1300, 1302 (11th Cir. 2011). However, the court need not accept legal conclusions, nor must it accept as true legal conclusions couched as factual allegations. <u>Iqbal</u>, 556 U.S. at 678. Thus, evaluation of a motion to dismiss requires the court to assume the veracity of well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." <u>Id.</u> at 679.

Under Federal Rule of Civil Procedure 9(b), a complaint alleging fraud "must state with particularity the circumstances constituting fraud."

> Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud.

<u>United States ex rel. Clausen v. Lab. Corp. of Am.</u>, 290 F.3d 1301, 1310 (11th Cir. 2002) (quoting <u>Ziemba v. Cascade Int'l, Inc.</u>, 256 F.3d 1194, 1202 (11th Cir.

2001)).  "Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint."

Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005).

However, Rule 9(b) also provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  FED. R. CIV. P. 9(b).  Thus, Rule 9(b) "does not require a plaintiff to allege specific facts related to the defendant's state of mind when the allegedly fraudulent statements [or omissions] were made."  Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1237 (11th Cir. 2008).  Instead, it is sufficient to plead "the who, what, when, where, and how" of the allegedly fraudulent statements or omissions and then allege generally that those statements or omissions were made with the requisite intent.  Id.

## III.   DISCUSSION

### A.   Federal Law Claim  - Violation of the MMWA (Count VI)

In their only federal cause of action, the Consumer Plaintiffs allege that Siemens breached a warranty of merchantability under the MMWA.  Consol. Compl. ¶¶ 255-60.  In its Motion to Dismiss, Siemens asserts that Plaintiffs' MMWA claim fails for the same reasons as their state warranty claims and because the Act requires at least 100 named plaintiffs.  Mot. to Dismiss at 19.  In their opposition to the Motion to Dismiss, Plaintiffs "concede to dismissal of their Magnuson Moss Warranty Act Claim."  Pls.' Opp'n to Mot. to Dismiss ("Pl.'s

Opp'n") [Doc. 45] at 19 n.8.  Accordingly, the Court **GRANTS** Siemens' Motion to Dismiss Count VI of the Consolidated Complaint.

### B.   State Law Claims

### 1.   Choice of Law

Counts II-V and VII of the Consolidated Complaint allege claims for fraudulent concealment, negligent misrepresentation, breach of the implied warranty of merchantability, breach of express warranty, and unjust enrichment. None of these causes of action purport to indicate which state's laws are alleged to be violated and there is no indication as to how those claims might vary depending upon Plaintiffs' states of residence.  See Consol. Compl. ¶¶ 213-253; 261-265.  In its Motion to Dismiss, Siemens fails to discuss the choice of law issue at all, but references in footnotes state court decisions from each of the states represented by either the Electrician or Consumer Plaintiffs.  See generally Mot. to Dismiss.  In their opposition brief, Plaintiffs contend that this Court should apply Georgia law because Siemens' defenses are not based upon any state statute so that Georgia's choice of law rules would then apply to Plaintiffs' contract and tort claims on a class-wide basis, while also referencing cases from other jurisdictions in footnotes.

Pl.'s Opp'n at 8-10.  For the first time in its reply brief[4], Siemens asserts that the District of Columbia's choice of law rules apply to the classes whose claims were first filed in the NSSS case, that if one of the nine states represented by one or more of the Electrician and Consumer Plaintiffs have enacted a statute for either contract or tort based claims, then one of those statutes would apply, and that applying Georgia law to all of the common law claims would violate Siemens' due process rights.  Siemens' Reply Mem. [Doc. 46] at 1-5.

In the usual case, when a district court exercises jurisdiction based on diversity of citizenship, the court must apply the choice of law rules of the forum state to determine which substantive law governs the action.  U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp., 550 F.3d 1031, 1033 (11th Cir. 2008).  Georgia

---

[4] Although generally a party may not raise new grounds for granting its motion in a reply brief, in those instances "[w]here a party does raise new grounds in its reply, the Court may either strike the new grounds or permit the non-moving party additional time to respond to the new argument."  Int'l Telecomms. Exch. Corp. v. MCI Telecomms. Corp., 892 F. Supp. 1520, 1531 (N.D. Ga. 1995) (allowing non-movant to file surreply briefs because movant raised new arguments in its reply briefs).  "Although the Court may in its discretion permit the filing of a surreply, this discretion should be exercised in favor of allowing a surreply only where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief."  Fedrick v. Mercedes-Benz USA, LLC, 366 F. Supp. 2d 1190, 1197 (N.D. Ga. 2005).  As will be discussed in more detail below, because neither party sufficiently addressed the choice of law issues in their briefs, the Court will order further briefing on this point.

courts apply the rules of *lex loci contractus* to contract actions and *lex loci delecti* to tort actions in addressing choice of law issues. <u>Rayle Tech, Inc. v. DEKALB Swine Breeders, Inc.</u>, 133 F.3d 1405, 1409 (11th Cir. 1998). Under these rules, respectively, contract disputes are governed by the "substantive law of the state where the contract was made" and tort disputes are "governed by the substantive law of the state where the tort was committed." <u>Id.</u> "Georgia's choice of law system, however, has an unusual characteristic: 'the application of another jurisdiction's laws is limited to statutes and decisions construing those statutes' [and] . . . [w]hen no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law." <u>In re Tri-State Crematory Litig.</u>, 215 F.R.D. 660, 677 (N.D. Ga. 2003) (citations and internal punctuation omitted).

The choice of law issue in this case is more complex than the usual diversity case. This action is a consolidated case and one of those earlier cases, the <u>NSSS</u> case, originally was filed in the United States District Court for the District of Columbia and transferred to this Court on the plaintiffs' motion.[5]

---

[5] The Court notes that if it had been the defendant that moved for transfer under 28 U.S.C. § 1404, the analysis would be more straight forward as the transferee court would be obligated to apply the same law as the transferor court; however, because it was the plaintiffs who moved for transfer, the analysis is more nuanced. <u>See</u> <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 640 (1964) ("We do not attempt to determine

> Federal courts sitting in diversity apply the forum state's choice-of-law rules. It is also true, however, that when a case is transferred from one forum to another, the transferor court's choice-of-law rules apply to the transferred case even after the transfer occurs. Further, consolidation of cases under Fed. R. Civ. P. 42 does not strip the cases of their individual identities.

Boardman Petroleum, Inc. v. Federated Mut. Ins. Co., 135 F.3d 750, 752 (11th Cir.

1998) (footnotes omitted). Therefore, it would appear that this Court must apply

the District of Columbia choice of law rules with respect to NSSS,

Electricalifornia, Keyser, and Barrette, the plaintiffs in the NSSS case.

With respect to tort claims, the District of Columbia follows the "substantial

interest" position of the RESTATEMENT (SECOND) OF CONFLICT OF LAWS (1971)

§ 145, under which the court will "balance the competing interests of the two

jurisdictions, and apply the law of the jurisdiction with the more 'substantial

interest' in the resolution of the issue." Jaffe v. Pallotta TeamWorks, 374 F.3d

1223, 1227 (D.C. Cir. 2004) (citation omitted). This inquiry is to include

consideration of several contacts, including (1) "the place where the injury

occurred," (2) "the place where the conduct causing the injury occurred," (3) "the

---

whether, for example, the same considerations would govern if a plaintiff sought transfer under § 1404(a) . . . .").

domicile, residence, nationality, place of incorporation and place of business of the parties," and (4) "the place where the relationship is centered." Id. (quoting RESTATEMENT, § 145(2) (internal citation omitted)).  Similarly, in contract cases, the District of Columbia "applies the law of the state which has the more substantial interest in the resolution of the issue" and references the RESTATEMENT (SECOND) OF CONFLICT OF LAWS (1971) § 188, under which the contacts to be taken into account include: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties."  Wright v. Sony Pictures Ent., Inc., 394 F. Supp. 2d 27, 32 (D.D.C. 2005) (quoting RESTATEMENT, § 188) (internal citation omitted).

> **2.    Further Briefing on the Choice of Law Issue and the Substance of the Applicable State Law for Each Plaintiff is Necessary**

As previously discussed, Siemens failed to raise or discuss the choice of law issue in its brief in support of its Motion to Dismiss.  Plaintiffs raised it in their response but, in the Court's view, their argument that Georgia law should apply to Counts II-V and VII to all Plaintiffs is incorrect because the District of Columbia choice of law rules would apply to the NSSS plaintiffs.  Siemens' newly raised

arguments in its reply brief appear to have some merit, but Plaintiffs have had no opportunity to respond to them. And, assuming this Court will have to review the case law of a number of states to determine whether Counts II-V and VII state a claim as to any or all Plaintiffs, the parties need to provide more detailed argument than they have previously made.[6]

Accordingly, the Court **DENIES WITHOUT PREJUDICE** Siemens' Motion to Dismiss Counts II-V and VII. Within thirty (30) days from the date of this Order, Siemens may file a revised Motion to Dismiss with respect to Counts II-V and VII, addressing both the choice of law issue and the substantive claims for each Plaintiff. Plaintiffs shall do the same in their response to any such motion.

---

[6] For example, if Plaintiffs or Siemens believe that Georgia's choice of law applies to a California plaintiff and that California has a statute that would apply to a particular state law contract or tort count of the Consolidated Complaint, then the party should supply the Court with the statute and relevant case law applicable to resolving whether Plaintiffs state a cause of action for that plaintiff and that count. And if Siemens argues that it would be a violation of due process to apply Georgia common law to a claim raised by a plaintiff from a state in which there was no applicable statute, then Siemens should explain the differences between the common law of the other state and Georgia and its impact on the resolution of the issue before the Court.

**C.**     **Violations of State-Specific Consumer Protection Statutes (Counts I, and VIII-XVI)**

Plaintiffs bring claims alleging that Siemens violated the following

consumer protection statutes:

- The Georgia Fair Business Practices Act ("FBPA"), O.C.G.A. § 10-1-390 et seq., on behalf of the Consumer Class and the Electrician Class (Count I);

- The Washington Unfair Business Practices Act[7], Wash. Rev. Code § 19.86.10, et seq., on behalf of Performance Electric and Gordon on behalf of the Washington Subclass (Count VIII);

- The North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. Ann. § 75-1.1, on behalf of Vodicka and the North Carolina Subclass (Count IX);

- Pennsylvania's Unfair Trade Practices and Consumer Protection Laws ("UTPCPL"), 73 Pa. Cons. Stat. § 201, et. seq., on behalf of Butakis and the Pennsylvania Subclass (Count X);

- The Song-Beverly Act on behalf of Electricalifornia, Cates, and the California Subclass (Count XI);

---

[7] In their Consolidated Complaint, Plaintiffs refer to an alleged violation of the "Washington Unfair Business Practices Act, Wash. Rev. Code § 19.86.010, et seq." Consol. Compl. at 89. However, the cited section is to the Washington Consumer Protection Act ("WCPA"). There is a Washington Unfair Motor Vehicle Business Practices Act, Wash. Rev. Code § 19.70.180, but that section obviously is not applicable to this lawsuit. Plaintiffs apparently realized their error when discussing the WCPA in their opposition brief. Pl.'s Opp'n at 35-36.

- The California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq., on behalf of Electricalifornia, Cates, and the California Subclass (Count XII);

- The California Business & Professional Code § 17200 ("UCL"), et seq., on behalf of Electricalifornia, Cates, and the California Subclass (Count XIII);

- The Nebraska Consumer Protection Act ("NCPA"), Neb. Rev. Stat. § 59-1601, et. seq., on behalf of Keyser and the Nebraska Subclass (Count XIV);

- The New Hampshire Consumer Protection Act ("NHCPA"), N.H. Rev. Stat. Ann. § 358-A, et seq., on behalf of Barrette and the New Hampshire Subclass (Count XV); and

- The Oregon Unlawful Trade Practices Act ("UTPA"), Or. Rev. Stat. § 646.604, et seq., on behalf of Oakley and the Oregon Subclass (Count XVI).

Consol. Compl. ¶¶ 201-212, 266-365. The Court will consider each claim in a separate section below.

### 1.   Georgia – The FBPA Claim (Count I)

Plaintiffs allege that Siemens violated the FBPA by engaging in unfair and deceptive acts in the conduct of consumer transactions by misrepresenting the function of their AFCI breakers because of their inability to distinguish between harmless and dangerous arcs and concealing this fact from Plaintiffs. Consol. Compl. ¶¶ 202-212. Siemens seeks dismissal of this claim because of the failure of Plaintiffs to plead deceptive or unfair conduct, reliance, causation, and injury.

20

Mot. to Dismiss at 31-2 (citing Edwards-Astin v. Medtronic Minimed, Inc., No.

1:08-CV-103-CAP, 2008 WL 11319723, at *4 (N.D. Ga. June 4, 2008)).  Siemens

also seeks dismissal because (1) the Electrician Plaintiffs are not consumers and

not covered by the FBPA; (2) the Consumer Plaintiffs have failed to allege that

they purchased the AFCIs for their own use[8], and (3) the FBPA forbids class

actions.  Id. at 33-35.  Plaintiffs contend that the Electrician Plaintiffs may

maintain an action under the FBPA, that the allegations are sufficient to state a

claim under the FBPA because of Siemens' advertising and selling deceptive

products, and the FBPA does not bar the class claims in this case.  Pl.'s Opp'n at

30-34.  In their opposition brief, Plaintiffs fail to address the specific elements of a

private claim under the FBPA.

> "A private FBPA claim has three elements:  a violation of the Act,
> causation, and injury."  Tiismann v. Linda Martin Homes Corp., 281
> Ga. 137, 139 (2006) (citations omitted) (internal alterations); see also
> Regency Nissan, Inc. v. Taylor, 194 Ga. App. 645, 647 (1990).  In
> addition, "justifiable reliance is an essential element of an FBPA
> claim."  Crown Ford, Inc. v. Crawford, 221 Ga. App. 881, 884 (1996)
> (citation omitted).  Finally, '[e]stablishment of unfair or deceptive acts
> or practices, within the meaning of the FBPA, does not require proof of

---

[8] That is not accurate as to all of the Consumer Plaintiffs, as at least two of them
specifically alleged that they purchased an AFCI breaker.  Consol. Compl. ¶¶ 174,
187.

> an intentional conduct on the part of defendant."   [ ] <u>Taylor</u>, 194 Ga.
> App. at 647 (emphasis omitted).

<u>Amin v. Mercedes-Benz USA, LLC</u>, 301 F. Supp. 3d 1277, 1289-90 (N.D. Ga. 2018) (parallel citations omitted).  Although Plaintiffs allege that each of them either installed, purchased, or bought homes with Siemens' defective AFCIs, and that they "would not have purchased" the breakers if they knew they were defective, Consol. Compl. ¶ 210, they fail to allege any specific false representations made by Siemens which they specifically relied upon or actual harm caused from those particular statements.

In <u>In re Arby's Rest. Grp. Inc. Litig.</u>, No. 1:17-CV-0514-AT, 2018 WL 2128441, at *21 (N.D. Ga. Mar. 5, 2018), the plaintiffs based their FBPA claims on both affirmative misrepresentations and misrepresentations by omission.  Much like here, the plaintiffs alleged that "they would not have made purchases at Arby's using their debit or credit cards had they known of Arby's failure to employ data security protections." <u>Id.</u>  The court found this was not enough to show reliance:

> [T]he Consumer Plaintiffs must show their actual reliance on Defendant's alleged representations or omissions and resulting injury. They cannot simply rely on the alleged (or actual) falsity of Defendant's representations to establish reliance and injury.  As the Consumer Plaintiffs do not expressly or specifically address reliance in Count VI, their allegations are insufficient to state a claim under the GFBPA.

Id. Because Plaintiffs fail to allege justifiable reliance based upon any claims made by Siemens, their FBPA claim fails as a matter of law. See also Edwards-Astin, 2008 WL 11319723, at *4 (granting motion to dismiss FBPA claim where the plaintiff "d[id] not include the allegation of justifiable reliance required by Georgia law.").[9]

Accordingly, the Court **GRANTS** Siemens' Motion to Dismiss Count I.

### 2.   Washington State – The WCPA Claim (Count VIII)

The Consolidated Complaint alleges that Siemens violated the WCPA by making available defective AFCI breakers which they should have known would cause injury to Gordon and Performance Electric, that Siemens failed to fix the problem when confronted with the issue of nuisance tripping, and that Gordon and Performance Electric suffered injuries as a result of the defective breakers. Consol. Compl. ¶¶ 108-16, 167-70, 267-78. Siemens contends that Performance Electric's WCPA claim is untimely, and that Gordon cannot establish a causal link between the alleged deceptive act and the alleged injury. Mot. to Dismiss at 35-6. Plaintiffs assert that Siemens' fraudulent concealment tolled the statute of

---

[9] Because of Plaintiffs' failure to adequately plead justifiable reliance, the Court need not discuss the other grounds raised by Siemens to support its Motion to Dismiss.

limitations and that the WCPA does not require a plaintiff to show a causal

connection between the purchase of the product and the defendant's alleged unfair

and deceptive acts as long as the acts themselves caused the alleged injury. Pl.'s

Opp'n at 36.

"To prevail on a [W]CPA claim, plaintiffs must establish these elements:

(1) unfair or deceptive act or practice, (2) occurring in trade or commerce,

(3) public interest impact, (4) injury to plaintiff in his or her business or property,

and (5) causation." Brown v. Transworld Sys. Inc., No. 2:20-cv-00680-DGE, 2022

WL 17750097, at *6 (W.D. Wash. Dec. 15, 2022) (citing Hangman Ridge Training

Stables, Inc. v. Safeco Title Ins. Co., 719 P.2d 531, 535 (Wash. 1986)). To prove

causation, "[a] plaintiff must establish that, but for the defendant's unfair or

deceptive practice, the plaintiff would not have suffered an injury." Id. at *6

(quoting Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington,

Inc., 170 P.3d 10, 22 (Wash. 2007)). If the injury would have occurred no matter

if the alleged violation existed, causation cannot be established. Id. (citing Panag v.

Farmers Ins. Co., 204 P.3d 885, 903 (Wash. 2009)).

The allegedly unfair or deceptive trade practice alleged in Count VIII is the

same as the allegations that form the basis of the other underlying claims: selling

defective AFCI breakers when Siemens knew or should have known did not

function properly and concealing the defect.  With respect to Performance Electric, the Consolidated Complaint alleges that it exclusively used Siemens' AFCI breakers since 2009, noticed the frequency of nuisance tripping, was not informed of any issues with the AFCI breakers from Siemens, and would not have continued to purchase Siemens' AFCIs had it known they were defective.  Consol. Compl. ¶¶ 109, 276.  However, there is no allegation in the Consolidated Complaint that Performance Electric purchased or installed the AFCIs because of an affirmative misrepresentation of fact.  With respect to Gordon, the Consolidated Complaint alleges that he moved into a home that already contained Siemens' AFCIs but would not have purchased the home or would have paid less for it or stopped using the AFCIs sooner had he been advised of the defect in the product.  Id. ¶ 277.  However, Gordon does not allege that he relied upon any misrepresentation with respect to his purchasing decision.  See Indoor Billboard, 170 P.3d at 22 ("We conclude where a defendant has engaged in an unfair or deceptive act or practice, and there has been an affirmative misrepresentation of fact, our case law establishes that there must be some demonstration of a causal link between the misrepresentation and the plaintiff's injury.").[10]

---

[10] To the extent Plaintiffs contend that they have established causation by their reliance upon Siemens' representations that their AFCIs were in proper working order, their own citation belies that theory.  In Young v. Toyota Motor Sales,

Accordingly, because Plaintiffs have failed to sufficiently plead the element of causation with respect to their WCPA claim, Siemens' Motion to Dismiss Count VIII is **GRANTED**. See, e.g., Edwards v. Caliber Home Loans, Inc., 708 F. App'x 438, 439 (9th Cir. 2018) ("The district court properly dismissed plaintiffs' claim under the Washington Consumer Protection Act ('WCPA') because plaintiffs failed to allege facts sufficient to show that defendants engaged in an unfair or deceptive act that caused plaintiffs' injury.").

### 3.    North Carolina – The UDTPA Claim (Count IX)

Plaintiffs contend that Siemens violated the North Carolina UDTPA by making defective AFCI breakers available for sale that it knew or should have known were defective causing harm to Vodicka, who paid electricians to install the breakers. Consol. Compl. ¶¶ 280-87. Aside from arguing that Plaintiffs fail to

---

U.S.A., 472 P.3d 990 (Wash. 2020), the appellate court found that the trial court's conclusion that the plaintiff failed to establish causation was fatal to his WCPA claim, and commented that the plaintiff "attempts to frame the trial court's decision as requiring him to show reliance, which would have been error under Indoor Billboard" where the court "rejected the company's argument that as a matter of law, any false or deceptive act if committed could not be the cause of the plaintiff's injury because the customer could not show he relied on the deceptive act in deciding to pay the bill." Id. at 996. But because the plaintiff's theory of causation in Young was that he relied on the defendant's misrepresentation in deciding to purchase the product and he failed to prove it, there was no error in denying the WCPA claim. Id. at 996-97.

plead the necessary elements of a UDTPA claim, Siemens contends that the

economic loss doctrine bars Vodicka's claim because he alleges no personal injury

or property damage.  Mot. to Dismiss at 31, 36.  Plaintiffs respond by asserting that

the economic loss doctrine has been excluded from applying to fraud claims like

those in the UDTPA but fail to discuss the required elements of such a claim.  Pls.'

Opp'n at 37.

"To state a UDTPA claim under North Carolina law, the plaintiffs must

plausibly allege that (1) [the defendant] committed an unfair or deceptive act or

practice, (2) the act or practice was in or affecting commerce, and (3) the act

proximately caused injury to the plaintiff." Solum v. Certainteed Corp., 147 F.

Supp. 3d 404, 411 (E.D.N.C. 2015) (citing N.C. Gen. Stat. Ann. §§ 75-1.1, 75-16).

"The conduct must be immoral, unethical, oppressive, unscrupulous, or

substantially injurious to consumers." Kelly v. Georgia-Pac. LLC, 671 F. Supp. 2d

785, 798-99 (E.D.N.C. 2009) (citations omitted).  "When the alleged UDTPA

violation is a misrepresentation, a plaintiff must prove detrimental reliance on the

alleged misrepresentation to satisfy the proximate cause requirement." Solum, 147

F. Supp. 3d at 411; see also Kelly, 671 F. Supp. 2d at 799 ("[w]here an unfair or

deceptive practice claim is based upon an alleged misrepresentation by the

defendant, the plaintiff must show 'actual reliance' on the alleged

misrepresentation in order to establish that the alleged misrepresentation 'proximately caused' the injury of which plaintiff complains.") (quoting Sunset Beach Dev., LLC v. AMEC, Inc., 675 S.E.2d 46, 54 (N.C. App. 2009)).

Plaintiffs fail to allege actual reliance or that a misrepresentation proximately cause the purported damage. Basically, Plaintiffs allege that if Vodicka had known that the AFCI breaker was defective, he would have not purchased Siemens' AFCI breakers. Consol. Compl. ¶ 286. This is not equivalent to an allegation that Vodicka purchased the AFCI breakers in actual reliance upon a statement that the breaker was not defective.[11] Accordingly, Siemens' Motion to Dismiss Count IX is **GRANTED**.

### 4.    Pennsylvania – The UTPCPL Claim (Count X)

Plaintiffs assert that Butakis hired a builder and electrician to purchase and install Siemens' AFCIs, that he experienced frequent nuisance tripping after

---

[11] Because Plaintiffs fail to allege that a misrepresentation proximately caused the alleged damage, the Court need not determine whether the economic loss rule bars a claim under the UDTPA. Compare Bussian v. DaimlerChrysler Corp., 411 F. Supp. 2d 614, 625 (M.D.N.C. 2006) (holding that the plaintiff's unfair or deceptive trade practices claim "should be dismissed pursuant to the 'economic loss rule' . . . which prohibits the purchaser of a defective product from using tort law to recover purely economic losses."), with Martin v. Bimbo Foods Bakeries Dist., LLC, No. 5:15-CV-96-BR, 2015 WL 1884994, at *7 (E.D.N.C. Apr. 24, 2015) ("The North Carolina courts have not decided whether the economic loss rule applies to UDTPA claims." (collecting cases)).

moving into his new home, and suffered damage by the loss of value and necessary repair of the defective breakers. Consol. Compl. ¶¶ 163-165, 285. Because Butakis would have not purchased the AFCIs or paid less for them had he known the defect, Plaintiffs contend that Siemens engaged in an unlawful trade practice under the UTPCPL. Id. ¶¶ 293-96. With respect to the Electrician Plaintiffs, KB Electric asserts that it purchased and installed Siemens' AFCI breakers, that it found they tripped for no reason, and its supplier informed KB Electric that the AFCIs required a technology update to resolve the nuisance tripping, but the nuisance tripping continued, causing KB Electric to replace many of the breakers. Id. ¶¶ 98-105. Similarly, Artistic Electric purchased and installed AFCI breakers, they experienced nuisance tripping, and they had to be replaced. Id. ¶¶ 126-32.

In its motion to dismiss, Siemens alleges that Plaintiffs fail to show that KB Electric, Artistic Electric, or Butakis justifiably relied on any wrongful misrepresentation by Siemens which caused their injuries (citing Yocca v. Pittsburgh Steelers Sports, Inc., 854 A.2d 425, 438 (Pa. 2004)), and, in any event, no punitive damages are available under the UTPCPL. Mot. to Dismiss at 31-2, 37. In response, Plaintiffs focus on the split of authority as to whether recovery for punitive damages is available under the UTPCPL but fail to respond to the assertion of the lack of justifiable reliance. Pls.' Opp'n at 37-38.

Under the UTPCPL, it is unlawful to engage in any "unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" 73 Pa. Cons. Stat. § 201-3. To prevail in a private cause of action under the UTPCPL, the consumer must have "justifiably relied upon the unfair or deceptive business practice when making the purchasing decision." Gregg v. Ameriprise Fin., Inc., 245 A.3d 637, 646 (Pa. 2021); see also Slapikas v. First Am. Title Ins. Co., 298 F.R.D. 285, 292 (W.D. Pa. 2014) (internal quotations and citations omitted) (holding that "a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance.").

Again, rather than allege that KB Electric, Artistic Electric, or Butakis relied on a specific misrepresentation that caused them to purchase and install the AFCI breakers, they only allege that had Butakis and the Pennsylvania subclass members known the breakers were defective and would trip unnecessarily, they would have not purchased them or would have paid less. Consol. Compl. ¶ 296. Plaintiffs failed to allege the essential element of justifiable reliance to sustain a claim under the UTPCPL. See Hunt v. U.S. Tobacco Co., 538 F.3d 217, 223 n.4 (3d Cir. 2008), as amended (Nov. 6, 2008) ("A justifiable-reliance requirement . . . requires the plaintiff . . . must show that he justifiably bought the product in the first place (or engaged in some other detrimental activity) because of the misrepresentation.")

30

(emphasis added); compare Carder v. Graco Children's Prods., Inc., 558 F. Supp. 3d 1290, 1332 (N.D. Ga. 2021) (finding the element of reliance satisfied under the UTPCPL because the Pennsylvania plaintiffs alleged they decided to buy the defendant's products based on the defendant's misrepresentations of the safety features of the child's booster seats).

Accordingly, Siemens' Motion to Dismiss is **GRANTED** as to Count X.

## 5.    California – The Song-Beverly Act Claim (Count XI)

In Count XI of the Consolidated Complaint, Electricalifornia and Cates allege a breach of implied warranty in violation of the Song-Beverly Act.  Consol. Compl. ¶¶ 302-305.  Specifically, Electricalifornia and Cates allege that Siemens impliedly warranted that Siemens' AFCIs "are merchantable and fit for the ordinary purposes for which they were sold," and were "reliable for use as breakers," but they were not fit for their ordinary purpose because they "suffer from excessive nuisance tripping." Id. ¶¶ 303-05.

Siemens argues that the implied warranty of merchantability under the Song-Beverly Act is not a promise that the goods will meet a buyer's every expectation, but instead that the goods are fit for their ordinary purpose, and that Plaintiffs' claims are subject to dismissal because they do not sufficiently allege that Siemens' products are not of the quality generally acceptable in the trade, that they

31

fail to trip in the presence of dangerous arcs, or that they do not meet certain

industry standards.  Mot. to Dismiss at 14-15.

The Song-Beverly Act, states in relevant part:

> Unless disclaimed in the manner prescribed by this chapter, every sale
> of consumer goods that are sold at retail in this state shall be
> accompanied by the manufacturer's and the retail seller's implied
> warranty that the goods are merchantable.  The retail seller shall have a
> right of indemnity against the manufacturer in the amount of any
> liability under this section.

Cal. Civ. Code § 1792.  The elements under the Song-Beverly Act are the same as

a claim for a breach of implied warranty under the California Commercial Code,

which requires that the goods in question: "(1) pass without objection in the trade

under the contract description; (2) are fit for the ordinary purposes for which those

goods are used; (3) are adequately contained, packaged, and labeled; and

(4) conform to the promises or affirmation of fact made on the container or label."

Birdsong v. Apple, Inc., 590 F.3d 955, 958 n.2 (9th Cir. 2009).

"The Song-Beverly Consumer Warranty Act provides for an implied

warranty of merchantability that the consumer goods are 'fit for the ordinary

purposes for which such goods are used.'"  Mosqueda v. Am. Honda Motor Co.,

Inc., 443 F. Supp. 3d 1115, 1127 (C.D. Cal. 2020) (quoting Cal. Civ. Code §

1791.1(a)).  "To state a claim for breach of . . . the implied warranty under the

Song-Beverly Act, . . . a plaintiff may show that the product did not possess even

32

the most basic degree of fitness for ordinary use." Gagetta v. Walmart, Inc., No. 3:22-CV-03757-WHO, 2022 WL 17812924, at *9 (N.D. Cal. Dec. 19, 2022) (internal citation and quotation omitted).

Plaintiffs sufficiently allege that Siemens' AFCIs are not fit for their ordinary purpose, which is to both trip in the presence of dangerous electrical arcs and not trip in the presence of electrical arcs which are not dangerous, in violation of the implied warranty of merchantability mandated by the Song-Beverly Act. See, e.g., Stewart v. Electrolux Home Prod., Inc., 304 F. Supp. 3d 894, 913 (E.D. Cal. 2018) (denying a motion to dismiss a Song-Beverly Act claim because the compliant alleged that the inability of an oven to properly heat and cook food after its thermostat was broken by the self-cleaning function rendered it unfit for its ordinary purpose). The only California authority cited by Siemens in support of its argument is Birdsong, which is clearly distinguishable. In Birdsong, the plaintiffs admitted that the ordinary purpose of iPods was to listen to music but contended Apple breached an implied warranty of merchantability because it posed a risk of hearing loss to users because of their adjustable volume. The Ninth Circuit concluded that there was no breach of an implied warranty because "[t]he plaintiffs do not allege the iPods failed to do anything they were designed to do," or that they were in any way defective. Id. at 958-59. In this case, on the other hand, Plaintiffs

33

allege that Siemens' AFCIs failed their basic purpose. Consolidated Compl. ¶¶ 56 (alleging that AFCIs that nuisance trip fail at their essential purpose and create challenges and hazards), 72 (alleging that an AFCI breaker that nuisance trips in the presence of harmless arcs "defies the basic and fundamental purpose of an AFCI, which is to identify and warn homeowners of a dangerous arc, and trip to prevent a possible fire," and that when an AFCI breaker exhibits nuisance tripping, it has failed to correctly identify a dangerous arc, thereby preventing the normal use of the circuit necessitating the replacement of the breaker), 304 (alleging that Siemens' AFCIs are not fit for their ordinary purpose because they suffer from an inherent defect at the time of sale that causes the AFCIs to suffer from excessive nuisance tripping and are thus incapable of being used for their intended purpose).[12]

Accordingly, Siemens' Motion to Dismiss Count XI is **DENIED**.

---

[12] To the extent that Siemens argues that the ordinary purpose of its AFCIs is to trip in the presence of dangerous electrical arcs (as opposed to not tripping when there are non-harmful electrical arcs), that is a factual contention that may be relevant on summary judgment or at trial, but for purposes of considering Siemens' motion to dismiss, the Court must credit the allegations in the Consolidated Complaint which allege that frequent tripping where no harmful arc exists in the circuit is not part of the normal operation of a correctly functioning AFCI. Consol. Compl. ¶¶ 56-57, 72, 86.

### 6.      California – The CLRA Claim (Count XII)

Plaintiffs contend that Siemens committed unfair and deceptive practices

under the CLRA because they failed to disclose the defects in the AFCIs to

Electricalifornia and Cates that led to nuisance tripping.  Consol. Compl. ¶¶ 314-

17.  In its motion to dismiss, Siemens asserts that Plaintiffs have failed to plead a

causal connection by showing they acted in reliance on a false representation

(citing Marolda v. Symantec Corp., 672 F. Supp. 2d 992, 1003-04 (N.D. Cal.

2009)) and that Electricalifornia lacks standing to bring a CLRA claim.  Mot. to

Dismiss at 31-2, 40.  In response, Plaintiffs contend that Electricalifornia is a

"consumer" under the Act but fail to respond to the argument that they have not

adequately pleaded a causal connection.  Pls.' Opp'n at 41.

The CLRA provides "a nonexclusive statutory remedy for unfair methods of

competition and unfair or deceptive acts or practices undertaken by any person in a

transaction intended to result or which results in the sale or lease of goods or

services to any consumer."  Saini v. Sutter Health, 295 Cal. Rptr. 3d 853, 857 (Cal.

Ct. App. 2022) (citation and internal punctuation omitted).  To state a

misrepresentation claim under the CLRA, "a plaintiff must allege (1) a

misrepresentation; (2) reliance on that misrepresentation; and (3) damages caused

by the misrepresentation."  Rojas-Lozano v. Google, Inc., 159 F. Supp. 3d 1101,

1112 (N.D. Cal. 2016) (quoting In re Sony PS3 Other OS Litig., 551 F. App'x 916, 920 (9th Cir. 2014)). The element of "reliance" requires "actual reliance" on the misrepresentation. Cohen v. DIRECTV, Inc., 101 Cal. Rptr. 3d 37, 43 (Cal. Ct. App. 2009).

Once again, Plaintiffs fail to allege that the California consumer or electrician actually relied upon a misrepresentation when the AFCIs were purchased, but rather that they realized the defects after the purchase and use of Siemens' breakers. However, that is not the end of the inquiry. The CLRA includes as an unfair or deceptive act one that "[r]epresent[s] that goods or services are of a particular standard, quality, [or] grade . . . ." Cal. Civ. Code § 1770(a)(7). A plaintiff can state a cause of action under the CLRA when there is "an omission of a fact the defendant was obligated to disclose." Falk v. Gen. Motors Corp., 496 F. Supp. 2d 1088, 1094 (N.D. Cal. 2007) (citation omitted).

> A failure to disclose a fact can constitute actionable fraud or deceit in four circumstances: (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed.

Collins v. eMachines, Inc., 134 Cal. Rptr. 3d 588, 593 (Cal. Ct. App. 2011), as modified (Dec. 28, 2011). In this case, Cates has sufficiently alleged the second

36

Collins factor; namely, that Siemens had knowledge that their ACFI breakers were defective because of their inability to properly recognize nuisance tripping, that a reasonable consumer would deem that information important to determine whether to purchase the product, and Cates did not know about the defect.  Consol. Compl. ¶ 314.  See Collins, 134 Cal. Rptr. 4th at 256 (denying motion to dismiss where the complaint sufficiently alleged the second Collins factor).[13]

With respect to Siemens' assertion that Electricalifornia lacks standing to maintain a claim under the CLRA, the statute defines a "consumer" as "an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes."  Cal. Civ. Code § 1761(d).  "A corporation, however, cannot seek or acquire a plane for 'personal, family, or household purposes,' and the language of the statute clearly envisions a person as the 'individual' permitted to bring suit."  Cooper v. Simpson Strong-Tie Co., 460

---

[13] This component of the reliance analysis is different for omission and concealment than affirmative misrepresentation.  In an affirmative misrepresentation case, a plaintiff obviously must plead that they in fact viewed or were exposed to the misleading misrepresentation; otherwise, they could not have relied on it.  In contrast, the very premise of an omission case is that the plaintiff was never exposed to certain information that should have been disclosed.

Sloan v. Gen. Motors LLC, 287 F. Supp. 3d 840, 874 (N.D. Cal. 2018), order clarified, No. 16-CV-07244-EMC, 2018 WL 1156607 (N.D. Cal. Mar. 5, 2018), and on reconsideration, 438 F. Supp. 3d 1017 (N.D. Cal. 2020).

F. Supp. 3d 894, 912 (N.D. Cal. 2020) (quoting Bristow v. Lycoming Engines, No.

CIV. S-06-1947 LKK/GGH, 2007 WL 1752602, at *5 (E.D. Cal. June 15, 2007)).

However, as Plaintiffs point out, they have pleaded that Electricalifornia is "a

California company[] and sole proprietorship owned by Drew Montoya[.]"  Consol.

Compl. ¶ 21.  See also Ball v. Steadfast-BLK, 126 Cal. Rptr. 4th 694, 701 (Cal. Ct.

App. 2011) ("[A] sole proprietorship is not a legal entity separate from its

individual owner.").

Consequently, Siemens' Motion to Dismiss Count XII is **DENIED**.

### 7.    California – The UCL Claim (Count XIII)

Electricalifornia and Cates contend that Siemens has violated California's

UCL because it engaged in an unlawful and deceptive conduct by making

defective AFCIs available despite having a duty to disclose the defective nature of

the AFCIs and it was in a superior position to know those defects.  Consol. Compl.

¶¶ 321-26.  In its motion, Siemens argues that any equitable relief under the UCL

is unavailable because of the availability of adequate legal remedies.  Mot. to

Dismiss at 37.  Plaintiffs respond that the possibility of other relief is not a bar to

the pursuit of an alternative remedy at the pleadings stage.  Pls.' Opp'n at 40-1.

Although "a plaintiff may only seek equitable relief under the UCL if there

is no adequate remedy at law," "there is an 'intra-circuit split' on the issue of

whether it is appropriate to dismiss UCL claims at the pleading stage when they are based on identical facts as other claims providing the legal remedy of damages." Eason v. Roman Catholic Bishop of San Diego, 414 F. Supp. 3d 1276, 1282 (S.D. Cal. 2019) (citing cases). In Eason, the court denied the motion to dismiss the UCL claims because there was no controlling authority to prevent a plaintiff from pleading alternative legal remedies and discovery could reveal the inadequacy of such legal remedies. Id. In addition, in this case, the Court is dismissing without prejudice the other state court claims in which the legal remedy of damages may be available.

Therefore, the Court **DENIES** Siemens' Motion to Dismiss Count XIII.

### 8.    Nebraska – The NCPA Claim (Count XIV)

Keyser asserts that Siemens has violated the NCPA because it made available defective AFCI breakers. Consol. Compl. ¶ 336. Siemens contends that Keyser alleges only a private injury and not one affecting the public interest, an element required under the NCPA. Mot. to Dismiss at 39-40. Keyser responds by contending that he has alleged that the defective AFCI breakers were widely sold in public markets. Pls.' Opp'n at 38-39.

The NCPA provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be

unlawful." Neb. Rev. Stat. § 59-1602.  In construing the NCPA, the Nebraska

Supreme Court has held "that to be actionable under the Act, the unfair or

deceptive act or practice must have an impact upon the public interest and that the

Act is not available to redress a private wrong where the public interest is

unaffected." Jenkins v. Gen. Collection Co., 538 F. Supp. 2d 1165, 1176 (D. Neb.

2008) (quoting Arthur v. Microsoft Corp., 676 N.W.2d 29, 33 (Neb. 2004)).

Plaintiffs do not allege that the AFCI breakers were sold in public markets,

and specifically fail to include any allegation connecting Siemens' actions to

Nebraska beyond Keyser's isolated purchase.  As discussed in Peter Kiewit Sons',

Inc. v. Wall St. Equity Grp., Inc., No. 8:10-CV-365, 2014 WL 4843674 (D. Neb.

Sept. 29, 2014), aff'd, 809 F.3d 1018 (8th Cir. 2016),

> there is nothing to suggest that the defendants reached into Nebraska
> with their solicitations, or that if they did, it was more than an isolated
> transaction. Kiewit alleged that the defendants "supply advertisements
> containing representations which are likely to deceive the general
> public," but neither alleged nor proved that any of that occurred in
> Nebraska—and a CPA claim requires a showing that not just one, but
> many Nebraska citizens are affected by a defendant's practices. Kiewit
> has made no such showing.

Id. at *8 (citations omitted).  Keyser's alleged injuries under the NCPA are based

solely upon a singular transaction, and there are no allegations in the Consolidated

Complaint with respect to the Nebraska public as a whole.  Accordingly, the Court

**GRANTS** Siemens' Motion to Dismiss Count XIV.

### 9.    New Hampshire – The NHCPA Claim (Count XV)

Barrette alleges that Siemens violated the NHCPA by selling AFCI breakers that it knew were defective and failed to disclose that fact to consumers. Consol. Compl. ¶¶ 345-50. Siemens argues that Barrette fails to allege that Siemens intended to sell its AFCIs in a manner not as advertised. Mot. to Dismiss at 38-39. Barrette claims that he sufficiently alleged that Siemens knew its AFCIs nuisance tripped and obfuscated the source of that tripping, thereby satisfying the NHCPA's rascality test. Pls.' Opp'n at 39-40.

The NHCPA makes it "unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce" in New Hampshire. N.H. Rev. Stat. Ann. § 358-A:2. The NHCPA lists fourteen difference deceptive acts or practices, including "[r]epresenting that goods or service are of a particular standard, quality, or grade, . . . if they are another," and "[a]dvertising goods or services with intent not to sell them as advertised[.]" Id., § 358-A:2, VII & XI. These are the provisions relied upon by Barrette. Consol. Compl. ¶ 341. In order to state a claim under N.H. Rev. Stat. Ann. § 358-A:2, Barrette must allege a representation that Siemens made with respect to its AFCIs with actual knowledge of its falsity or reckless disregard for

its truth with the intent to induce customers to purchase them. <u>Brace v. Rite Aid Corp.</u>, No. 10-cv-290-LM, 2011 WL635299, at 3 (D.N.H. Feb. 14, 2022) (citations omitted). There is no allegation in the Consolidated Complaint that Siemens communicated any representation concerning the standard or quality of the AFCIs to Barrette which induced him to purchase the breakers. Indeed, when Barrette purchased his new home, the AFCI breakers were already installed after which he experienced nuisance tripping. Consol. Compl. ¶¶ 179-180. "The purpose of the [NH]CPA is to protect consumers from those who would sell them goods and services under false pretenses. . . . That is, it is not a [NH]CPA violation to sell bad goods or services; the [NH]CPA is implicated only when a seller induces the purchase of such goods and services." <u>Brace</u>, 2011 WL 635299, at *5.[14]

Thus, the Court **GRANTS** Siemens' Motion to Dismiss as to Count XV.

---

[14] Barrette claims that Siemens' conduct comes within the "rascality test" under the NHCPA. Pls.' Opp'n at 40; <u>see also</u> Consol. Compl. ¶ 342. The rascality test developed by the New Hampshire Supreme Court applies to commercial actions that are not specifically delineated within the NHCPA. <u>State v. Moran</u>, 861 A.2d 763, 765 (N.H. 2004). Under the rascality test, "[t]he objectionable conduct must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." <u>Id.</u> (internal citation and quotations omitted). In this case, the allegations of the Consolidated Complaint do not meet that standard. If they did, then every consumer in New Hampshire who purchased a home that contained a part which failed in its operation would have a NHCPA claim regardless of the fact that the manufacturer or seller of the part never made any representation to the consumer about the quality of the product.

### 10. Oregon – The UTPA Claim (Count XVI)

Oakley alleges that Siemens violated the Oregon UTPA by selling AFCI breakers it knew were not up to the standards it represented them to be and they experienced nuisance tripping. Consol. Compl. ¶¶ 358-60. Specifically, Oakley alleges that he purchased and installed AFCI breakers during his kitchen remodeling, they experienced nuisance tripping, and they only work when they are connected to an extension cord plugged into the main panel, an action which prevents him from passing an inspection. Id. ¶¶ 187-90. Oakley does not allege that he relied on any representation made by Siemens prior to the purchase of the AFCI breakers. Siemens alleges that Oakley has failed to properly plead reliance and lacks standing to seek injunctive relief under the UTPA. Mot. to Dismiss at 31-2 (citing Pearson v. Philip Morris, Inc., 361 P.3d 3, 28 (Or. 2015)), and 38. Oakley asserts that he has standing under the UTPA because he has alleged a substantial risk of future harm but fails to respond to the causation argument. Pls.' Opp'n at 41-2.

The UTPA states that "any person who suffers any ascertainable loss of money or property, real or personal, as a result of willful use or employment by another person of a method, act or practice declared unlawful by ORS 646.608,

may bring an individual action in an appropriate court." Or. Rev. Stat.

§ 646.638(1).  Oakley alleges the following unlawful practices by Siemens:

- Representing that goods have characteristics or qualities that they do not have;

- Representing that goods are a particular standard or quality if they are of another;

- Advertising goods or services with the intent not to provide them as advertised; and

- Engaging in any other unfair or deceptive conduct.

Consol. Compl. ¶ 356 (citing Or. Rev. Stat. § 646.608(1)).

In Pearson, the Oregon Supreme Court analyzed causation and reliance in the context of a claim involving alleged misrepresentations under the UTPA.  See Pearson, 361 P.3d at 26-28.  The court explained that although a UTPA claim does not itself require reliance, reliance must be shown if it is an integral to the underlying unlawful trade practice, and that the plaintiff "must suffer a loss of money or property that was *caused by* the unlawful trade practice.  Whether, to prove the requisite causation, a plaintiff must show reliance on the alleged unlawful trade practice depends on the conduct involved and the loss allegedly caused by it."  Id. at 28.

Oakley fails to allege reliance on the misrepresentations purportedly made by Siemens and that his current loss was caused by those representations. Instead, Oakley alleges that "Siemens violated the OUTPA by selling AFCI breakers that it knew were not up to the standard, quality, or grade Siemens represented them to be," and "Siemens marketed and sold its AFCI breakers as if they were properly functioning and charged consumers a premium to purchase its AFCI breakers. Even though Siemens was aware that its AFCI breakers were defective, it did not disclose this fact to purchasers of its products." Consol. Compl. ¶¶ 358, 362. In conclusory fashion, Oakley then alleges "[a]s a result, and as a result of the misconduct otherwise described herein, Plaintiff [Oakley] suffered economic injury." Id. ¶ 363. But Oakley fails to allege that his purchase and installation of the breakers was in reliance on any of the alleged representations.

Therefore, the Court **GRANTS** Siemens' Motion to Dismiss Count XVI.

IV.   **CONCLUSION**

For the foregoing reasons, it is hereby **ORDERED** that Defendant Siemens Industry, Inc.'s Motion to Dismiss [Doc. 43] is **GRANTED IN PART and DENIED IN PART**.

The Motion is **GRANTED** as to Count VI, which is **DISMISSED WITH PREJUDICE**, and as to Counts I, VIII, IX, X, XIV, XV, and XVI, which are **DISMISSED WITHOUT PREJUDICE**.

The Motion is **DENIED** as to Counts XI, XII and XIII.

As to Counts II, III, IV, V, and VII, the Motion is **DENIED WITHOUT PREJUDICE** for failure to adequately address the choice of law issues in this case. However, Siemens may file an amended motion to dismiss within thirty (30) days of the date of this Order with respect to Counts II-V and VII, addressing both the choice of law issue and the substantive claims for each Plaintiff.

**IT IS SO ORDERED** this 18th day of May, 2023.

MARK H. COHEN
United States District Judge