# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

|  |  |
|---|---|
| Kevin Brnich Electric LLC, Performance Electric, Inc., Artistic Electric Inc., Bolt Electric LLC, National Sentry Security Systems, Inc., Electricalifornia, Charles Vodicka, Patrick Cates, Bryan Butakis, Nels Gordon, Rick Keyser, Tyler Barrette, and Clifford Oakley *individually and on behalf of all others similarly situated*, | Case No. 1:22-cv-01229-MHC |
| Plaintiffs, | **OPPOSITION TO AMENDED MOTION TO DISMISS COUNTS II, III, IV, V, AND VII OF PLAINTIFFS' CONSOLIDATED CLASS ACTION COMPLAINT** |
| v. |  |
| Siemens Industry, Inc. |  |
| Defendant. |  |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

ARGUMENT .....................................................................................................4

I.   GEORGIA LAW GOVERNS PLAINTIFFS' TORT AND UNJUST
     ENRICHMENT CLAIMS ...........................................................................4

     A.   Georgia's Choice of Law Rules Apply to the D.C. Plaintiffs
          Because the District of Columbia Was Not a Proper Venue ................5

     B.   Georgia Law Governs Plaintiffs' Tort Claims and Plaintiffs' Home
          State Laws Govern their Warranty Claims...........................................7

          1.   Georgia's choice of law rules are unique and support Plaintiffs'
               choice of law arguments ...........................................................8

          2.   Georgia law applies to Plaintiffs' negligent misrepresentation,
               fraudulent concealment, and unjust enrichment claims.............9

     C.   Applying Georgia Law Satisfies Constitutional Due Process ........... 12

          1.   Georgia has sufficient contacts with the claims to
               constitutionally apply its laws.................................................12

          2.   Conflicts in state laws do not create any fundamental
               unfairness ..............................................................................14

II.  PLAINTIFFS PROPERLY PLED THEIR EXPRESS WARRANTY
     CLAIMS ...............................................................................................15

     A.   Plaintiffs Alleged Siemens' Warranty Covers the Defect ..................15

     B.   Siemens' Warranty Limitations are Unconscionable ........................16

III. PLAINTIFFS PROPERLY PLED THEIR IMPLIED WARRANTY
     CLAIM.................................................................................................18

A.     Plaintiffs Alleged the AFCIs were Unmerchantable ........................... 18

B.     Privity Does Not Bar Plaintiffs Warranty Claims Under California, North Carolina, Ohio, Oregon, or Washington Law .......................... 21

C.     Siemens Did Not Effectively Disclaim its Implied Warranty of Merchantability ................................................................................... 22

D.     Plaintiffs' Warranty Claims Are Not Time-Barred ............................ 24

IV.   PLAINTIFFS PROPERLY PLED THEIR FRAUDULENT CONCEALMENT AND NEGLIGENT MISREPRESENTATION CLAIMS .................................................................................................. 25

A.     Plaintiffs' Allegations Satisfy Rule 9(b)............................................ 25

B.     The Economic Loss Doctrine Does Not Bar Plaintiffs' Tort Claims .................................................................................................. 30

       1.    Plaintiffs alleged an independent duty apart from contract ........................................................................... 31

       2.    Plaintiffs' allegations satisfy the fraud exception to the ELD ............................................................................ 32

C.     Plaintiffs Pled Siemens' Pre-Sale Knowledge Sufficient to Establish Fraudulent Concealment ..................................................... 33

       1.    Plaintiffs alleged Siemens' knowledge of the defect from product testing, customer complaints, and industry knowledge ................................................................... 33

       2.    Plaintiffs alleged Siemens' duty to disclose the defects based on its superior knowledge and efforts to misinform purchasers ............................................... 36

D.  Plaintiffs Sufficiently Alleged Affirmative Misrepresentations and Omissions Necessary to State a Claim for Negligent Misrepresentation ...................................................................39

1.  Siemens' material omissions are sufficient to establish negligent misrepresentation ......................................................39

2.  Siemens' affirmative misrepresentations are sufficient to establish negligent misrepresentation .......................................42

V.  PLAINTIFFS' PROPERLY PLEAD THEIR UNJUST ENRICHMENT CLAIMS ....................................................................43

CONCLUSION ......................................................................45

# TABLE OF AUTHORITIES

## Cases

*Acadia Ins. Co. v. Fluid Mgmt., Inc.*,
  2015 WL 3869696 (D. Me. June 23, 2015) ........................................ 19

*Ace Tree Surgery, Inc. v. Terex Corp.*,
  2018 WL 11350293 (N.D. Ga. Mar. 20, 2018) .............................. 11, 15

*Ahern v. Apple Inc.*,
  411 F. Supp. 3d 541 (N.D. Cal. 2019) ................................................ 36

*Akins v. Firstbank, N.A.*,
  415 A.2d 567 (Me. 1980) .................................................................... 24

*Allan v. Guar. RV Ctrs.*,
  2006 WL 1050548 (D. Or. Apr. 15, 2006) ......................................... 22

*Allstate Ins. Co. v. Hague*,
  449 U.S. 302 (1981) ............................................................................ 12

*Am. Aerial Servs., Inc. v. Terex USA, LLC*,
  39 F. Supp. 3d 95 (D. Me. 2014) ....................................................... 22

*Amin v. Mercedes-Benz USA, LLC*,
  301 F. Supp. 3d 1277 (N.D. Ga. 2018) ............................. 19, 36, 37, 41

*Anderson v. Apple Inc.*,
  500 F. Supp. 3d 993 (N.D. Cal. 2020) ............................................... 27

*BDO Seidman, LLP v. Mindis Acquisition Corp.*,
  578 S.E.2d 400 (Ga. 2003) ................................................................. 27

*Berenblat v. Apple, Inc.*,
  2010 WL 1460297 (N.D. Cal. Apr. 9, 2010) ...................................... 34

*Bieda v. CNH Indus. Am. LLC*,
    518 F. Supp. 3d 863 (W.D. Pa. 2021) ..................................................... 17

*Birdsong v. Apple, Inc.*,
    590 F.3d 955 (9th Cir. 2009) ................................................................ 19

*Blangeres v. United States Seamless, Inc.*,
    725 F. App'x 511 (9th Cir. 2018) ..........................................................11

*Blue Cross Blue Shield Ass'n v. GlaxoSmithKline LLC*,
    417 F. Supp. 3d 531 (E.D. Pa. 2019) ..................................................... 24

*Bowdoin v. Showell Growers, Inc.*,
    817 F.2d 1543 (11th Cir. 1987) ............................................................ 22

*Brooks v. Blue Cross & Blue Shield of Fla., Inc.*,
    116 F.3d 1364 (11th Cir. 1997) ............................................................ 26

*Browning v. Am. Honda Motor Co.*,
    2022 WL 824106 (N.D. Cal. Mar. 18, 2022) ......................................... 16

*Bush Truck Leasing, Inc. v. All Ways Auto Transp., LLC*,
    2021 WL 3173073 (S.D. Ohio July 26, 2021) ................................... 44, 45

*Bussian v. DaimlerChrysler Corp.*,
    411 F. Supp. 2d 614 (M.D.N.C. 2006) ................................................... 17

*Carter-Jones Lumber Co. v. Oro RB SPE Owner, LLC*,
    2021 WL 2592531 (S.D. Ohio, 2021) .............................................. 44, 45

*Clark v. LG Elecs. U.S.A., Inc.*,
    2013 WL 5816410 (S.D. Cal. Oct. 29, 2013) ......................................... 22

*Collella v. Beranger Volkswagen, Inc.*,
    386 A.2d 1283 (N.H. 1978) .................................................................. 22

*Confederated Tribes of Warm Springs Reservation of Oregon v. Ambac Assur. Corp.*,
2010 WL 4875657 (D. Or. 2010) .................................................................. 44, 45

*Coon v. Med. Ctr., Inc.*,
797 S.E.2d 828 (Ga. 2017)............................................................................... 8, 9

*DeFrank v. Samsung Elecs. Am., Inc.*,
2020 WL 6269277 (D.N.J. Oct. 26, 2020)........................................................ 17

*Deras v. Volkswagen Grp. of Am., Inc.*,
2018 WL 2267448 (N.D. Cal. May 17, 2018) .................................................. 44

*Dinner Bell Café, Inc. v. N. Am. Bancard, LLC*
2016 WL 4257768 (N.D. Ga. Aug. 4, 2016)............................................... 43, 44

*Elbeco Inc. v. Nat'l Ret. Fund*,
128 F. Supp. 3d 849 (E.D. Pa. 2015) (applying Pennsylvania law) ................... 37

*Elder v. Reliance Worldwide Corp.*,
563 F. Supp. 3d 1221 (N.D. Ga. 2021) ............................................. 9, 10, 11, 44

*Elias v. Hewlett-Packard Co.*,
903 F. Supp. 2d 843 (N.D. Cal. 2012) ............................................................. 19

*Elliott v. Brunswick Corp.*,
903 F.2d 1505 (11th Cir. 1990) ....................................................................... 19

*Favors v. Matzke*,
770 P.2d 686 (Wash. Ct. App. 1989).................................................................. 37

*Ferens v. John Deere Co.*,
494 U.S. 516 (1990) ........................................................................................... 5

*Firstar Fiber, Inc. v. Karl W. Schmidt & Assocs., Inc.*,
2010 WL 4241585 (Neb. Ct. App. Mar. 16, 2010) ........................................... 16

*Forrett v. Gourmet Nut, Inc.*,
  2022 WL 6768217 (N.D. Cal. Oct. 11, 2022) ...................................................... 44

*Francis v. Gen. Motors, LLC*,
  504 F. Supp. 3d 659 (E.D. Mich. 2020) ............................................................. 16

*Frank Briscoe Co., Inc. v. Ga. Sprinkler Co., Inc.*,
  713 F.2d 1500 (11th Cir. 1983) ............................................................... 7, 8, 10

*Fulton Bank, N.A. v. UBS Securities, LLC*,
  2011 WL 5386376 (E.D. Pa. Nov. 7, 2011) ....................................................... 42

*General Insulation Co. v. Eckman Const.*,
  159 N.H. 601 (N.H. 2010) ........................................................................... 44, 45

*Gerace Construction Company, Inc. v. DRC Acquisition, Inc.*,
  2023 WL 2772393 (N.D. Ohio, 2023) ................................................................ 44

*Granillo v. FCA US LLC*,
  2016 WL 9405772 (D.N.J. Aug. 29, 2016) ........................................................ 16

*Grasso v. Electrolux Home Prods., Inc.*,
  2016 WL 2625746 (S.D. Fla. Mar. 24, 2016) .................................................... 17

*Gregory Wood Prods., Inc. v. Advanced Sawmill Mach. Equip., Inc.*,
  2007 WL 1825179 (W.D.N.C. June 25, 2007) ................................................... 22

*Greenwald v. Odom*,
  723 S.E.2d 305 (Ga. Ct. App. 2012) ................................................................. 40

*Grover v. BMW of N. Am., LLC*,
  434 F. Supp. 3d 617 (N.D. Ohio 2020) ............................................................. 24

*Hadjian v. Mercedes-Benz, USA, LLC*,
  2022 WL 3699603 (N.D. Ga. Mar. 31, 2022) .................................................... 41

*Hanover Ins. Co. v. Hermosa Const. Grp., LLC*,
  57 F. Supp. 3d 1389 (N.D. Ga. 2014) ............................................................... 31

*Hodsdon v. Mars, Inc.*,
  891 F.3d 857 (9th Cir. 2018) ................................................................. 39

*Hogan v. BMW of N. Am. LLC*,
  2020 WL 5664946 (W.D. Wash. Aug. 31, 2020) ................................. 24

*Holloman v. D.R. Horton, Inc.*,
  524 S.E.2d 790 (Ga. App. Ct. 1999) ............................................... 31, 32

*Holmes v. Grubman*,
  691 S.E.2d 196 (Ga. 2010) .............................................................. 28, 39

*Hornig v. Martel Lift Systems, Inc.*,
  258 Neb. 764 (Neb. 2000) ............................................................... 44, 45

*In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prod. Liab. Litig.*,
  2013 WL 169289 (D.S.C. Jan. 16, 2013) ............................................ 24

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*,
  295 F. Supp. 3d 927 (N.D. Cal. 2018) ................................................. 37

*In re Equifax, Inc., Customer Data Sec. Breach Litig.*,
  371 F. Supp. 3d 1150 (N.D. Ga. 2019) ............................................ 28, 31

*In re Gen. Motors Air Conditioning*,
  406 F. Supp. 3d, 618 (E.D. Mich. 2019) ......................................... 34, 35

*In re Nexus 6P Prod. Liab. Litig.*,
  293 F. Supp. 3d 888 (N.D. Cal. 2018) ..................................... 19, 21, 23

*In re Takata Airbag Prod. Liab. Litig.*,
  2016 WL 5848843 (S.D. Fla. Sept. 21, 2016) ..................................... 24

*In re Tri-State Crematory Litig.*,
  215 F.R.D. 660 (N.D. Ga. 2003) ..................................................... 8, 10

*In re Volkswagen Timing Chain Prod. Liab. Litig.*,
  2017 WL 1902160 (D.N.J. May 8, 2017) ........................................ 37, 39

*In re: Dollar General Corp. Motor Oil Mktg. and Sales Practices Litig.*,
  2017 WL 3863866 (W.D. Mo. Aug. 3, 2017) ...................................................... 44

*Intellicig USA, LLC v. CN Creative Ltd.*,
  2017 WL 11634374 .......................................................................................... 40

*Jenkins Brick Co. v. Bremer*,
  321 F.3d 1366 (11th Cir. 2003) ........................................................................ 6

*Johnson v. Microsoft Corp.*,
  834 N.E.2d 791 (Ohio 2005).................................................................... 44, 45

*June Roberts Agency, Inc. v. Venture Properties, Inc.*,
  676 A.2d 46, fn.1 (Me. 1996)........................................................................... 44

*Krise v. SEI/Aaron's, Inc.*,
  2017 WL 3608189 (N.D. Ga. Aug. 22, 2017)................................................... 14

*Lafontaine v. Alexander*,
  808 S.E.2d 50 (Ga. Ct. App. 2017) .................................................................. 40

*Liberty Mut. Fire Ins. Co. v. Cagle's, Inc.*,
  2010 WL 5288673, Ga. Dec. 16......................................................................... 31

*Lugo v. Farmers Pride, Inc.*,
  2009 PA Super 5, 967 A.2d 963 (2009) ............................................................ 44

*Mandani v. Volkswagen Grp. Of Am., Inc.*,
  2019 WL 652867 (N.D. Cal. Feb. 15, 2019)...................................................... 34

*Manley v. Engram*,
  755 F.2d 1463 (11th Cir. 1985) ............................................................... 6, 7, 8

*Martin v. Ort*,
  2016 WL 1069907 (Me. Super. Feb. 03, 2016) (applying Maine law)................ 37

*Mattingly v. Palmer Ridge Homes LLC*,
  238 P.3d 505 (Wash. Ct. App. 2010).................................................................. 22

*McCabe v. Daimler AG*,
   948 F. Supp. 2d 1347 (N.D. Ga. 2013) ................................................. 27

*Miller v. Heil Co.*,
   525 F. Supp. 3d 612 (W.D. Pa. 2021)..................................................... 19

*Mirkin v. Wasserman*,
   858 P.2d 568 (Cal. 1993)......................................................................... 10

*Monopoli v. Mercedes-Benz USA, LLC*,
   2022 WL 409484 (N.D. Ga. Feb. 10, 2022) .................................. Passim

*Moore v. Lovein Funeral Home, Inc.*,
   852 S.E.2d 876 (Ga. Ct. App. 2020) ...................................................... 40

*Moscatiello v. Pittsburgh Contractors Equip. Co.*,
   595 A.2d 1198 (Pa. 1991)......................................................................... 22

*Mullinax v. United Mktg. Group, LLC*,
   2011 WL 4085933 (N.D. Ga. 2011) ....................................................... 44

*Niloy, Inc. v. Lowe's Companies, Inc.*,
   2017 WL 29338 (W.D.N.C. Jan. 3, 2017)............................................... 44

*Ochoa v. Indus. Ventilation, Inc.*,
   2021 WL 5405203 (E.D. Wash. Nov. 18, 2021) .................................... 42

*Outlook Windows P'ship v. York Intern. Corp.*,
   112 F.Supp.2d 877 .................................................................................... 42

*Pac. Emp'r. Ins. Co. v. Indus. Accident Comm'n of California*,
   306 U.S. 493 (1939) ................................................................................. 14

*Peterson v. Aaron's, Inc.*,
   2017 WL 364094 (N.D. Ga. Jan. 25, 2017) ........................................... 14

*Pfizer Genetics, Inc. v. Williams Mgmt. Co.*,
   281 N.W.2d 536 (Neb. 1979) .................................................................. 22

*Philips v. Ford Motor Co.*,
2016 WL 1745948 (N.D. Cal. May 3, 2016) ...................................................... 24

*Phillips Petroleum Co. v. Shutts*,
472 U.S. 797 (1985) .................................................................................. 12, 15

*Precisely Software Inc. v. Loqate Inc.*,
2022 WL 4348469 (N.D. Cal., 2022)................................................................ 44

*Puhalla v. Mercedes-Benz USA, LLC*,
462 F. Supp. 3d 1304 (S.D. Fla. 2020)............................................................. 44

*Red Roof Franchising, LLC v. Riverside Macon Grp., LLC*,
2020 WL 2494462 (S.D. Ohio May 14, 2020) .................................................. 34

*Ressallat v. Burglar & Fire Alarms, Inc.*,
606 N.E.2d 1001 (Ohio Ct. App. 1992) ............................................................ 22

*Sanford v. National Ass'n for Self-Employed, Inc.*,
2009 WL 1460768 (D. Me. May 26, 2009) ....................................................... 42

*Scott v. Carr*,
2020 WL 6381812 (W.D. Wash. Oct. 30, 2020) ............................................... 44

*Seattlehaunts, LLC v. Thomas Family Farm, LLC*,
2020 WL 5500373 (W.D. Wash. Sept. 11, 2020).............................................. 42

*Sebago, Inc. v. Beazer E., Inc.*,
18 F. Supp. 2d 70 (D. Mass. 1998)................................................................... 24

*Shea v. Best Buy Homes, LLC*,
533 F. Supp. 3d 1321 (N.D. Ga. 2021) ................................................. 28, 39, 40

*Singh v. Lenovo (United States) Inc.*,
510 F. Supp. 3d 310 (D. Md. 2021) ................................................................. 17

*Smith v. Ethicon, Inc.*,
2021 WL 3578681 (D. Or. May 13, 2021)......................................................... 21

*SodexoMAGIC, LLC v. Drexel Univ.*,
24 F.4th 183 (3d Cir. 2022) (applying Pennsylvania law) .................................. 37

*State Farm Mutual Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.*,
427 F. App'x 714 (11th Cir. 2011) ....................................................... 44

*Szep v. General Motors LLC*,
491 F. Supp. 3d 280 (N.D. Ohio 2020) .................................... 27, 35, 36

*Tadych v. Noble Ridge Constr., Inc.*,
519 P.3d 199 (Wash. 2022) ................................................................. 17

*Terrill v. Electrolux Home Prods., Inc.*,
753 F. Supp. 2d 1272 (S.D. Ga. 2010) .............................. 12, 13, 14, 44

*Traxler v. PPG Indus., Inc.*,
158 F. Supp. 3d 607 (N.D. Ohio 2016) ............................................... 17

*Wilson v. Hewlett-Packard Co.*,
668 F.3d 1136 (9th Cir. 2012) ............................................................. 34

*Wozniak v. Ford Motor Co.*,
2019 WL 108845 (E.D. Mich. Jan. 4, 2019) ....................................... 34

**Statutes**

11 M.R.S.A. § 2-302 ........................................................................... 18
13 Pa. Stat. C.S. § 2302 ...................................................................... 18
13 Pa. Stat. C.S. § 2721 ...................................................................... 10
28 U.S.C. § 1391(b)(1)–(2) ................................................................... 6
42 Pa. C.S. § 7102 .............................................................................. 10
Cal. Civ. Code § 5 ............................................................................... 11
Cal. Civ. Code § 1670.5 ...................................................................... 18
Cal. Civ. Code § 1709 ......................................................................... 11
Cal. Civ. Code § 1710 ................................................................... 10, 11
Cal. Civ. Code § 1710(3) ..................................................................... 11
Me. Rev. Stat. Ann. Tit. 14 § 156........................................................ 10
Me. Rev. Stat. Ann. Tit 11, § 2-721 .................................................... 10

## Statutes Cont'd

Me. Rev. Stat. tit 11 § 2-316(5)..................................................................... 23

Neb. Comm. Code § 2-302 ........................................................................... 18

N.C. Gen. Stat. § 1-139 ................................................................................ 10

N.C. Gen. Stat. § 25-2-721 ........................................................................... 10

N.C. Gen. Stat. § 25-2-302 ........................................................................... 18

N.H. Rev. Stat. § 382-A:2-302 ..................................................................... 18

N.H. Rev. Stat. § 382-A:2-316(4) ................................................................. 23

O.R.C. § 1302.15 .......................................................................................... 18

Or. Rev. Stat. § 31.600 ................................................................................. 10

Or. Rev. Stat. § 72.3020 ............................................................................... 18

Or. Rev. Stat. § 72.7210 ............................................................................... 10

RCW § 62A.2-316(4).................................................................................... 23

Wash. Rev. Code Ann. § 7.72.010(4) ........................................................... 42

Wash. Rev. Code § 62A.2-302 ..................................................................... 18

Wash. Rev. Code § 62A2-721 ...................................................................... 10

Wash. Rev. Code § 4.22.005 ........................................................................ 10

Wash. Rev. Code § 4.22.015 ........................................................................ 10

## Rules

Fed. R. Civ. P. 8(a)(3)................................................................................... 43

Fed. R. Civ. P. 8(d)(3) .................................................................................. 43

Fed. R. Civ. P. 9(b).................................................................................Passim

Fed. R. Civ. P. 12(b)(6) .................................................................................. 3

## Other Authorities

Restatement (Second) of Torts § 538 (1977) ............................................... 41

Restatement (Second) of Torts § 552 (1977) ............................................... 27

## INTRODUCTION

Plaintiffs are electricians and consumers who purchased and installed defective arc-fault circuit interrupters ("AFCIs") manufactured by Siemens Industry, Inc. ("Siemens" or "Defendant"), a Georgia-based corporation that designed, tested, manufactured, marketed, and distributed the AFCIs. Plaintiffs asserted that Siemens' AFCIs failed to fulfill their essential purpose of allowing electricity to flow through a circuit unless dangerous electrical arcing occurred within it. Instead, Siemens' AFCIs repeatedly tripped where no dangerous arcing occurred at all, including from the use of basic, safe household appliances. Relevant here, Plaintiffs brought claims for breach of express warranty, breach of implied warranty, negligent misrepresentation, fraudulent omission, and unjust enrichment.

On May 18, 2023, the Court denied in part Siemens' motion to dismiss Plaintiffs' claims with leave to refile. The Court directed Siemens to address choice of law issues in any refiled motion, including: (1) which choice of law rules apply to Plaintiffs who initially filed in D.C., and later transferred their action to this Court; and (2) which law or laws govern Plaintiffs' common law and warranty claims. As described further below, under Georgia's choice of law rules, Georgia law governs Plaintiffs' negligent misrepresentation and fraudulent concealment claims; Georgia

law governs all Plaintiffs' unjust enrichment claims except for the Washington Plaintiffs' claim; and Plaintiffs' home state laws govern their warranty claims.

First, Georgia's choice of law rules govern all Plaintiffs' claims, even those who initially filed in D.C.  Contrary to the usual rule that a transferee court applies the laws of the transferor court's forum state, where a case is transferred from an improper forum, the transferee court applies its forum state's laws.  Here, the District of D.C. was an improper forum because it lacked any connection to this action.  Plaintiffs initially filed in D.C. believing Siemens Corporation, a D.C. based entity, was a proper defendant.  Plaintiffs removed Siemens Corporation as a defendant and moved to transfer upon learning that it was not involved with Siemens' AFCIs.

Second, Georgia's choice of law rules apply the common law as developed by Georgia to any common law claims and defer to other states' statutes concerning any statutory claims.  Siemens has not identified any applicable state statutes displacing the common law elements of Plaintiffs' negligent misrepresentation or fraudulent concealment claims, and cite only one statute displacing the Washington Plaintiffs' unjust enrichment claim.  Thus, Georgia common law governs each of those claims except the Washington Plaintiffs' unjust enrichment claim.  Plaintiffs agree that their implied and express warranty claims arise out of state statutes and, thus, those claims are governed by Plaintiffs' home state laws.

Third, as required by Fed. R. Civ. P. 12(b)(6), Plaintiffs address each of the specific grounds on which Siemens seeks dismissal of their claims.  Applying the proper laws, none of Plaintiffs' claims should be dismissed except for the Washington Plaintiffs' unjust enrichment claim.[1]  Specifically, Plaintiffs properly alleged Siemens breached its express and implied warranties by marketing and selling defective AFCIs that failed their essential purpose.  Every state at issue recognizes downstream privity, that is, that a manufacturer and the ultimate consumer are in privity for warranty purposes.  While Siemens asserts it disclaimed certain warranties, Siemens has not shown it provided a disclaimer to Plaintiffs prior to purchase, that the disclaimer cited to in its brief is the operable one, or that the disclaimer is valid as a matter of law in each state.

Plaintiffs also properly alleged negligent misrepresentation and fraudulent concealment claims under Georgia law.  Plaintiffs alleged in great detail, sufficient to satisfy Fed. R. Civ. P. 9(b), that Siemens negligently and fraudulently concealed the defects in its AFCIs, leading consumers and electricians to falsely believe the AFCIs functioned normally.  Siemens knew, based on its own statements, its testing

---

[1] Plaintiffs concede to the dismissal of the Washington Plaintiffs' unjust enrichment claim due to preemption of that claim under the Washington Products Liability Act ("WPLA").  Unless otherwise noted, references to Plaintiffs' unjust enrichment claims, *infra*, do not include the Washington Plaintiffs' claim.

of the devices, and public complaints, that its AFCIs contained a material defect that caused excessive nuisance tripping.  Those facts combined with its superior knowledge of the device triggered a duty to disclose the defect to consumers.  Yet, Siemens chose to do the opposite—cover its tracks and blame electricians and consumers for causing the nuisance tripping problems.  The economic loss doctrine does not save Siemens from its wrongdoing because Georgia does not apply the doctrine where, as here, the defendant had an independent duty outside of any contract and the contract was entered into due to fraud.

Plaintiffs' remaining unjust enrichment claims should also survive because those claims are governed by Georgia law, which allows pleading in the alternative.

The Court should, therefore, deny Siemens' Amended Motion to Dismiss with respect to all Plaintiffs' remaining claims.  Should the Court find any claim is deficient, Plaintiffs respectfully request leave to amend their Complaint to supplement their allegations accordingly and to conform their claims to the Court's choice of law determination.

## ARGUMENT

## I.   GEORGIA LAW GOVERNS PLAINTIFFS' TORT AND UNJUST ENRICHMENT CLAIMS

The Court previously denied in part Siemens' motion to dismiss "for failure to adequately address the choice of law issues in this case."  ECF No. 48 at 46.  The

Court gave Siemens leave to refile its motion but ordered Siemens to address "both the choice of law issue and the substantive claims for each Plaintiff." *Id.* Siemens has now attempted to do so. Def. Am. Mot. to Dismiss ("Def. Br."), ECF No. 52. However, based on applicable law, the Court should find: (1) Georgia's choice of law rules apply to all Plaintiffs, including those who initially filed in D.C. because D.C. was an improper forum; (2) Georgia's choice of law rules apply Georgia's substantive law to Plaintiffs' tort and unjust enrichment claims and Plaintiffs' home state laws to their warranty claims; and (3) the application of Georgia law does not upset Siemens' constitutional due process rights.

### A.   Georgia's Choice of Law Rules Apply to the D.C. Plaintiffs Because the District of Columbia Was Not a Proper Venue

Siemens argues that the District of Columbia's ("D.C.") choice of law rules apply to the D.C. Plaintiffs.[2] Generally, where a case is transferred by either a plaintiff or defendant, the transferee court applies the transferor courts' forum state. *Ferens v. John Deere Co.*, 494 U.S. 516, 523 (1990). However, if the transfer was from an improper venue, the opposite rule applies: "[w]hen a transfer for improper venue is granted pursuant to § 1406(a), then regardless of which party requested the

---

[2] "D.C. Plaintiffs" refers to the Plaintiffs who initially filed suit in D.C.: Electricalifornia (CA), National Sentry Security Systems, Inc. ("NSSS") (OH), Keyser (NE), and Barrette (NH). None of them is a D.C. resident.

transfer or the purpose behind the transfer, the transferee court must apply the choice of law rules of the state in which it sits." *Manley v. Engram*, 755 F.2d 1463, 1467 (11th Cir. 1985) (internal quotations removed).  The Eleventh Circuit has applied the same rule to cases transferred under § 1404(a) where the transferor court is later deemed to have been an improper venue.  *See Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1369–73 (11th Cir. 2003) (applying Georgia law to an action transferred under § 1404(a) from the Middle District of Alabama to the Southern District of Georgia after deeming the Alabama Court an improper venue).

Here, although the D.C. action was transferred under § 1404(a), the District of D.C. was an improper venue because no party resided there and none of the relevant facts occurred there.  *See* 28 U.S.C. § 1391(b)(1)–(2).  The D.C. Plaintiffs originally filed in D.C. under the mistaken belief that Siemens Corporation, headquartered in D.C., manufactured Siemens' AFCIs.  *See Nat'l Sentry Sec. Sys., Inc., et al. v. Siemens Corp., et al.*, No. 21-cv-1072 (D.D.C.) (the "*NSSS Action*"), ECF No. 1, at ¶¶ 14, 15, 19.  Siemens later asserted and confirmed that: (1) Siemens Corporation has nothing to do with its AFCI business; and (2) Siemens Industry, Inc., headquartered in Georgia, was responsible for Siemens' AFCI.  *See, e.g.*, *NSSS Action,* ECF No. 22-1, at ¶¶ 5–10; *NSSS Action*, ECF No. 44, at 4.

Subsequently, the D.C. Plaintiffs amended their complaint to remove Siemens Corporation as a defendant, requested Siemens consent to transfer to this Court, and moved to transfer when Siemens refused. *NSSS Action*, ECF No. 44, at 1–2. Immediately after learning that D.C. had no connection to the case, Plaintiffs sought to bring their action here, to a proper venue. *See Manley*, 755 F.2d at 1469 ("[W]e are convinced that a plaintiff who attempts to file in the state of defendant's residence should not be held to have waived her right to select among proper forums in the absence of actual or constructive knowledge of the defendant's true residence.").

D.C. has no connection to the parties, facts, or claims at issue and the D.C. Plaintiffs did not agree to litigate there once they learned of that fact. *See, e.g.*, *NSSS Action*, ECF. No. 44. The D.C. Court was an improper forum.[3] Thus, Georgia's choice of law rules apply to the D.C. Plaintiffs' claims. *Manley*, 755 F.2d at 1467.

## B.   Georgia Law Governs Plaintiffs' Tort Claims and Plaintiffs' Home State Laws Govern their Warranty Claims

Georgia's choice of law rules govern the claims of the Plaintiffs who filed in this Court. *Frank Briscoe Co., Inc. v. Ga. Sprinkler Co., Inc.*, 713 F.2d 1500, 1503

---

[3] To the extent Siemens contends the D.C. Plaintiffs were forum shopping, the D.C. Court previously rejected that assertion. *NSSS Action*, ECF No. 44, at 3.

(11th Cir. 1983).  They also govern the D.C. Plaintiffs' claims transferred here from the improper venue in D.C.  *Manley*, 755 F.2d at 1467.

### 1. Georgia's choice of law rules are unique and support Plaintiffs' choice of law arguments

"Georgia's choice of law system . . . has an unusual characteristic: 'the application of another jurisdiction's laws is limited to statutes and decisions construing those statues'" and "'[w]hen no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law.'" *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 677 (N.D. Ga. 2003) (citing *Frank Briscoe*, 713 F.3d at 1503 ("[T]he application of another jurisdiction's laws is limited to statutes and decisions construing those statues.")).  "[T]he Georgia Supreme Court has . . . upheld this aspect of Georgia's choice of law rules[.]" *Monopoli v. Mercedes-Benz USA, LLC*, No. 1:21-cv-1353, 2022 WL 409484, at *4 (N.D. Ga. Feb. 10, 2022) (citing *Coon v. Med. Ctr., Inc.*, 797 S.E.2d 828, 833–35 (Ga. 2017)).

The Georgia Supreme Court explained that "the prevailing view at the time the doctrine was established was that there is one common law that can be properly discerned by wise judges, not multiple common laws by which judges make law for their various jurisdictions." *Coon*, 797 S.E.2d at 834.  "In the absence of a statute, . . . a Georgia court will apply the common law as expounded by the courts of

Georgia." *Id.* Where a statute applies, however, "a Georgia court will defer to another state's statutes" and decisions "interpreting those statutes[.]" *Id.*

Here, as described below, Plaintiffs' negligent misrepresentation, fraudulent concealment, and remaining unjust enrichment claims are not governed by statute and, thus, Georgia common law applies to those claims. *Coon*, 797 S.E.2d at 834. Plaintiffs agree their warranty claims are governed by statutes and thus, their home state laws apply to those claims.

> **2.    Georgia law applies to Plaintiffs' negligent misrepresentation, fraudulent concealment, and unjust enrichment claims.**

Plaintiffs' negligent misrepresentation and fraudulent concealment are common law tort claims that are not traditionally governed by any state statute. Courts applying Georgia's choice of law rules have frequently applied Georgia substantive law to negligence and fraud-based claims brought by non-resident plaintiffs. *See Monopoli*, 2022 WL 409484, at *4 (applying Georgia law to fraudulent concealment, fraudulent misrepresentation, negligent design and manufacturing, and negligent failure to warn claims); *Coon*, 797 S.E.2d at 734 (applying Georgia law to a negligent infliction of emotional distress claim); *Elder v. Reliance Worldwide Corp.*, 563 F. Supp. 3d 1221, 1231 (N.D. Ga. 2021) (applying

Georgia law to a negligence claim); *Frank Briscoe*, 713 F.2d at 1503 (applying Georgia law to a negligence-based claim); *see also Tri-State*, 215 F.R.D. at 678.

Siemens, however, asserts that Plaintiffs' tort claims are governed by statutes, precluding the application of Georgia law. Def. Br. at 8, n.6. None of the statutes it cites, however, supplant the common law elements of Plaintiffs' tort claims. Apart from California's, the statutes Siemens cites are irrelevant. For instance, many concern comparative or contributory negligence,[4] which Siemens does not raise as a defense. *See, e.g.*, *Siemens' Answer to Plaintiffs' Class Action Complaint*, ECF No. 49, at 70–74. The others codify the UCC's remedies for misrepresentations in a contract and have no bearing on the common law elements of fraud or negligence.[5]

The only potentially relevant fraud statute, Cal. Civ. Code § 1710, defines "deceit" under California law. However, the deceit statute does not provide for or displace the common law elements for a fraud or misrepresentation claim. *See, e.g.*, *Mirkin v. Wasserman*, 858 P.2d 568, 572 (Cal. 1993) ("Provisions of the Civil Code that are substantially the same as the common law, such as the provisions that codify

---

[4] Def. Br. at 8, n.6 (citing Me. Rev. Stat. Ann. Tit. 14 § 156; 42 Pa. C.S. § 7102; N.C. Gen. Stat. § 1-139; Or. Rev. Stat. § 31.600; and Wash. Rev. Code §§ 4.22.005, 4.22.015).

[5] Def. Br. at 8, n.6 (citing Me. Rev. Stat. Ann. Tit 11, § 2-721; 13 Pa. Stat. C.S. § 2721; N.C. gen. Stat. § 25-2-721; Or. Rev. Stat. § 72.7210; and Wash Rev. Code § 62A2-721).

common law torts, 'must be construed as continuations thereof, not as new enactments.'   Civil Code sections 1709 and 1710 have been recognized as continuations of the common law." (quoting Cal. Civ. Code § 5)).   California's "deceit" statute does not define or impact the elements of common law fraud, meaning that claim is governed by the common law, not by statute.[6]   Without an applicable state statute, Georgia common law governs Plaintiffs' tort claims.

Georgia law also governs Plaintiffs' remaining unjust enrichment claims.   Siemens cites one statute, the WPLA, which displaces the Washington Plaintiffs' unjust enrichment claim.   *See, e.g.*, *Blangeres v. United States Seamless, Inc.*, 725 F. App'x 511, 514 (9th Cir. 2018).   However, Siemens does not identify any other statutes governing or displacing an unjust enrichment claim, and therefore, Georgia law governs the remaining unjust enrichment claims.   *See Elder*, 563 F. Supp. 3d at 1231 (applying Georgia law to an unjust enrichment claim).

---

[6] Additionally, § 1710 does not conflict with Georgia law because both make omissions actionable.   *Monopoli*, 2022 WL 409484, at *10; Cal. Civ. Code § 1710(3).   Thus, even if that statute applied, the choice of law question is irrelevant.   *See Ace Tree Surgery, Inc. v. Terex Corp.*, No. 1:16-cv-0775, 2018 WL 11350293, at *4 (N.D. Ga. Mar. 20, 2018) ("If there is no actual conflict, then a choice of law analysis is unnecessary, and the law common to the states should be applied.").

**C.    Applying Georgia Law Satisfies Constitutional Due Process**

Although Siemens is headquartered in Georgia and its alleged wrongdoing occurred there, Siemens claims applying Georgia law would be "arbitrary" and "unfair" and would violate its constitutional due process rights.   Def. Br. at 8. However, Georgia has significant contacts with the parties and the claims in this case and, as such, Georgia law may be constitutionally applied.

**1.    Georgia has sufficient contacts with the claims to constitutionally apply its laws**

To constitutionally apply Georgia law, Georgia "must have a 'significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests,' in order to ensure the choice of [Georgia] law is not arbitrary or unfair."  *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821–22 (1985) (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312–13 (1981)).  The Supreme Court has recognized that more than one state may satisfy that criteria in a case.  *See Hague*, 449 U.S. at 307 ("[A] set of facts giving rise to a lawsuit, or a particular issue within a lawsuit, may justify, in constitutional terms, [the] application of the law of more than one jurisdiction."); *see also Terrill v. Electrolux Home Prods., Inc.*, 753 F. Supp. 2d 1272, 1282 (S.D. Ga. 2010).

Siemens claims that only Plaintiffs' home states laws may constitutionally apply because place of purchase dictates choice of law.  Georgia courts have rejected

that argument, where, as here, the defendant resides in Georgia and the wrongdoing occurred there. *See Terrill*, 753 F. Supp. 2d at 1281–82 (rejecting the argument that "[p]laintiffs' claims do not have a connection to Georgia because [they] purchased their [devices] in the home states" because "[defendant's principle place of business [was] located in . . . Georgia" and "the corporate decisions surrounding [defendant's] response to the alleged defects were made in . . . Georgia."); *Monopoli*, 2022 WL 409484, at *7 (applying Georgia law where "many of the alleged decisions about the marketing of and response to the defective [devices] were made in Georgia.").

Here, by Siemens' own admission, it operates its business from Georgia and the alleged wrongdoing emanated from there. Siemens, headquartered in Georgia, "designs, tests, manufacturers, markets, and distributes AFCIs." *NSSS Action*, ECF No. 22-1, ¶ 9. This case centers on Siemens' manufacture, distribution, and sale of defective AFCIs despite its knowledge, including through testing of its AFCI devices, that they failed to perform the essential functions of an AFCI. Compl., ECF No. 40, at ¶¶ 53–57, 7268, 73, 83. That misconduct emanated from Siemens' headquarters in Georgia, creating significant contacts to this case and Plaintiffs' claims.

Georgia is both Siemens' place of business and the place where it committed all or a substantial part of the alleged misconduct. That constitutes sufficient

contacts to constitutionally apply Georgia law. *Terrill*, 753 F. Supp. 2d at 1281–82; *Monopoli*, 2022 WL 409484, at *6–7.[7]

> ### 2. Conflicts in state laws do not create any fundamental unfairness

Siemens also claims Georgia law cannot constitutionally apply because doing so would deprive it of certain defenses available under Plaintiffs' home state laws. Def. Br. at 8–11. In essence, Siemens claims that the application of Georgia's laws might be less favorable to it and such a result violates its due process rights. Siemens has no authority to support such a claim, and the Court should reject it.

All Siemens has shown with its due process arguments is that Georgia's law may conflict with other, potentially applicable state laws. *See, e.g.*, Def. Br., at Ex. C. Those conflicts do not require this Court, under the guise of due process, to apply laws that Siemens has deemed more favorable to its defense. *See Pac. Emp'r. Ins. Co. v. Indus. Accident Comm'n of California*, 306 U.S. 493, 502 (1939) ("[T]he full faith and credit clause does not require one state to substitute for its own statute, applicable to persons and events within it, the conflicting statute of another state.").

---

[7] In Siemens' cited cases, unlike here, the alleged wrongdoing occurred entirely outside of Georgia. *See Krise v. SEI/Aaron's, Inc.*, 2017 WL 3608189, at *8 (N.D. Ga. Aug. 22, 2017) (holding the wrongdoing occurred in Connecticut); *Peterson v. Aaron's, Inc.*, No. 1:14-cv-1919, 2017 WL 364094 (N.D. Ga. Jan. 25, 2017) (holding that the franchisees' conduct at issue occurred in six other states, and not Georgia).

Instead, those conflicts prompt the need to perform a choice of law analysis and ensure that the state selected under that analysis may constitutionally apply its laws. *See Shutts*, 472 U.S. at 816; *Ace Tree*, 2018 WL 11350293, at *4.

Plaintiffs acknowledge that choice of law may impact the outcome of the case. *See Shutts*, 472 U.S. at 818 (noting that the conflicting state laws would have "amounted to [a difference of] millions of dollars of liability."). That does not make applying one state's law over another's unconstitutional, as long as the state whose laws apply has sufficient contacts to the claims. *Shutts*, 472 U.S. at 821–22. Georgia satisfies that here and, therefore, Georgia law may constitutionally apply.

## II.   PLAINTIFFS PROPERLY PLED THEIR EXPRESS WARRANTY CLAIMS

### A.   Plaintiffs Alleged Siemens' Warranty Covers the Defect

Siemens asserts Plaintiffs' express warranty claim must be dismissed because the warranty does not cover design defects. However, Plaintiffs do not allege whether the defect is a design defect or a manufacturing defect because, absent discovery, Plaintiffs cannot be expected to definitively categorize the nature of the defect. Siemens argues Plaintiffs alleged the "nuisance tripping issues 'stem from' Siemens' AFCI breaker design and affect the entire product line." Def. Br. at 12. That is not true. Plaintiffs pled that the defect relates to the arc detection algorithm in the AFCIs, which causes nuisance tripping. *See* Compl., ¶¶ 57, 68.

Those types of software calibration issues are treated as manufacturing defects at the pleading stage. *See Browning v. Am. Honda Motor Co.*, No. 20-cv-05417, 2022 WL 824106, at *9 (N.D. Cal. Mar. 18, 2022) (denying motion to dismiss express warranty claims concerning an alleged design defect because defectively calibrated software "is a manufacturing defect."); *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 673 (E.D. Mich. 2020) (holding plaintiffs did not "commit to either" a manufacturing or design defect concerning a "software fix to reprogram shifting behavior" and that further discovery was needed to determine the "culprit");[8] *Granillo v. FCA US LLC*, No. 16-cv-153, 2016 WL 9405772, at *14 (D.N.J. Aug. 29, 2016) (finding plaintiff properly alleged a manufacturing defect where the product "contain[ed] one or more design and/or manufacturing defects that may stem from the Transmission Control Module . . . and its software."). Plaintiffs, therefore, plausibly alleged the AFCIs may contain a manufacturing defect.

## B.     Siemens' Warranty Limitations are Unconscionable

Siemens also wrongly contends Plaintiffs' express warranty claims should fail because, under the warranty, Plaintiffs must seek repairs from Siemens within one

---

[8] The *Francis* court held the result would be the same under other states' laws, including Maine, Ohio, New Hampshire, North Carolina, Oregon, and Washington. *Id.* at 672. In Nebraska, issues of a breach of express warranty are factual issues for a jury. *Firstar Fiber, Inc. v. Karl W. Schmidt & Assocs., Inc.*, No. A-08-1315, 2010 WL 4241585, at *7 (Neb. Ct. App. Mar. 16, 2010).

year of purchase. Def. Br at 13. While some Plaintiffs did just that, Compl., ¶ 164, the one-year warranty's strict temporal limitation does not apply because it is both substantively and procedurally unconscionable under Plaintiffs' home state laws.

Warranty limitations are unconscionable when a defendant knows of and conceals a defect. *See, e.g.*, *Grasso v. Electrolux Home Prods., Inc.*, No. 15-cv-20774, 2016 WL 2625746, at *2 (S.D. Fla. Mar. 24, 2016) (holding a warranty unconscionable where "in addition to knowing about the latent defect, [defendant] engaged in a course of conduct intended to actively conceal the defect.").[9] Here, Plaintiffs alleged Siemens knew of the defect prior to sale and concealed it. Compl., ¶¶ 74–94. Plaintiffs assert Siemens exploited the difficulty of determining the cause of nuisance tripping, which often requires substantial effort and investigation to identify. *See, e.g., id.* at ¶¶ 87–90. Siemens also affirmatively deflected blame for nuisance tripping to homeowners and electricians and falsely claimed nuisance tripping was not a problem with its AFCIs. *Id.* at ¶¶ 85, 87-94.

---

[9] *See also Singh v. Lenovo (United States) Inc.*, 510 F. Supp. 3d 310, 322 (D. Md. 2021); *DeFrank v. Samsung Elecs. Am., Inc.*, No. 19-cv-21401, 2020 WL 6269277, at *19 (D.N.J. Oct. 26, 2020); *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 622 (M.D.N.C. 2006); *Tadych v. Noble Ridge Constr., Inc.*, 519 P.3d 199, 204 (Wash. 2022); *Bieda v. CNH Indus. Am. LLC*, 518 F. Supp. 3d 863, 874 (W.D. Pa. 2021); *Traxler v. PPG Indus., Inc.*, 158 F. Supp. 3d 607, 616 (N.D. Ohio 2016).

Plaintiffs' home state laws each hold that "[w]hen it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination."[10]  At this stage, Plaintiffs have adequately alleged Siemens' one year warranty limitation is unconscionable.  Plaintiffs' express warranty claim should proceed.

## III.   PLAINTIFFS PROPERLY PLED THEIR IMPLIED WARRANTY CLAIM

### A.   Plaintiffs Alleged the AFCIs were Unmerchantable

Plaintiffs alleged that Siemens' AFCIs were unfit for their ordinary purpose, contrary to Siemens' claims otherwise.  Specifically, Plaintiffs alleged that Siemens' AFCIs "defie[d] the basic and fundamental purpose of an AFCI" because they did not allow electricity to flow through a circuit *unless* the circuit contains a dangerous arc.  Compl., ¶ 72.  Instead, the AFCIs frequently tripped even where no dangerous arc existed in the circuit, breaking the safe flow of electricity and undermining the AFCIs' capacity to inform homeowners whether the circuit contained a dangerous

---

[10] Cal. Civ. Code § 1670.5; O.R.C. § 1302.15; 11 M.R.S.A. § 2-302; Neb. Comm. Code § 2-302; N.H. Rev. Stat. § 382-A:2-302; N.C. Gen. Stat. § 25-2-302; Or. Rev. Stat. § 72.3020; 13 Pa. C.S. § 2302; Wash. Rev. Code § 62A.2-302.

arc.  *Id.* at ¶¶ 56, 73.  Because Siemens' ACFIs were unsuitable for their intended purpose, they were unmerchantable.[11]

While Siemens claims its AFCIs complied with one industry standard, the UL 1699, the high rates of nuisance tripping required the AFCIs to be repeatedly replaced to adequately use the circuit, indicating that they were unmerchantable regardless of the supposed compliance with one standard.  *See Elliott v. Brunswick Corp.*, 903 F.2d 1505, 1508 (11th Cir. 1990) ("[A] manufacturer's proof of compliance with either industry-wide practices, or even federal regulations, fails to eliminate conclusively its liability for its design of allegedly defective products.").  Besides, Plaintiffs plausibly claimed that Siemens *did no*t meet industry standards and expectations, specifically, the National Electrical Manufacturers Association's ("NEMA") mandate that AFICs not nuisance trip.  Compl. ¶¶ 56–57, 86.

Siemens argues that an AFCI is not unmerchantable when it trips in the presence of both harmless and dangerous arcs.[12]  Def. Br. at 15.  Plaintiffs, however,

---

[11] *Miller v. Heil Co.*, 525 F. Supp. 3d 612, 619 (W.D. Pa. 2021); *Acadia Ins. Co. v. Fluid Mgmt., Inc.*, No. 2:15-cv-0008, 2015 WL 3869696, at *8 (D. Me. June 23, 2015); *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 925 (N.D. Cal. 2018); *see also Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 852-53 (N.D. Cal. 2012); *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1288 (N.D. Ga. 2018).
[12] Siemens cites *Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009) in support, but there, unlike here, the court dismissed plaintiffs' claims because the alleged safety issues arose from plaintiffs' "extreme" and "risky" use of the products.  *Id.* at 958.

alleged that frequent tripping where no dangerous arc exists in the circuit is not part of the normal operation of a correctly functioning AFCI.  Compl. ¶¶ 56–57, 72, 86. For example, Plaintiffs alleged that: (1) according to NEMA, "the [AFCI] devices cannot nuisance trip" and should be able to "know[] the difference between an arc from normal operations, such as unplugging a cord or opening a switch, and a destructive arc[,]" *id.* at ¶ 57; (2) other AFCI manufacturers have largely resolved the issue, *id.* at ¶¶ 58–59; (3) Siemens itself has represented that it resolved nuisance tripping and that nuisance tripping is a "myth", suggesting that Siemens agrees nuisance tripping is not normal, *id.* at ¶ 85; (4) Plaintiffs who have installed competitors' AFCIs have resolved nuisance tripping, *id.* at ¶¶ 153, 182; and (5) AFCIs experiencing nuisance tripping must be replaced, *id.* at ¶ 72, 86.  Additionally, electricians and consumers have suffered significant economic injury and damages addressing Siemens' AFCIs' inability to distinguish between safe and dangerous arcs, indicating Siemens' AFCIs do not work properly.  *See, e.g.*, *id.* at ¶¶ 97–191.

Finally, Siemens claims Plaintiffs failed to plead when and where their Siemens' AFCIs were purchased, how many were defective, and how the Plaintiffs determined they were nuisance tripping.  Def. Br., at 15–16.  This is not true, and Siemens fails to show it is required.  *See id.* at ¶¶ 186–91 (describing in detail Plaintiff Oakley's experiences with his defective AFCIs).  Collectively, Plaintiffs

established that Siemens' AFCIs persistently experienced nuisance tripping where no dangerous arc occurred, and that they, thus, were unmerchantable. To the extent any such allegations are not present and are required, they are easily added through amendment, which Plaintiffs have already informed Siemens they seek to do to add new plaintiffs and address any order related to Siemens' motions to dismiss.

Plaintiffs, thus, plausibly alleged Siemens' AFCIs were unmerchantable.

### B. Privity Does Not Bar Plaintiffs Warranty Claims Under California, North Carolina, Ohio, Oregon, or Washington Law

Siemens contends that Plaintiffs from California, North Carolina, Ohio, Oregon, and Washington cannot state an implied warranty claim because they did not purchase the breakers directly from Siemens. Def. Br., at 15–16. These states, however, recognize exceptions to the privity requirement where, as here, the manufacturer provides a warranty that runs to the ultimate consumer. *See, e.g.*, *In re Nexus 6P*, 293 F. Supp. 3d at 923 (rejecting lack of privity arguments under California, North Carolina, Ohio, and Washington law); *Smith v. Ethicon, Inc.*, No. 3:20-cv-0851, 2021 WL 3578681, at *8 (D. Or. May 13, 2021) (holding privity is not required for remote purchasers of a product). Siemens here asserts that an express warranty applies and runs to the Plaintiffs, thus establishing privity under Plaintiffs' home state laws.

### C.   Siemens Did Not Effectively Disclaim its Implied Warranty of Merchantability

Siemens asserts it disclaimed the implied warranty of merchantability.  Def. Br. at 17.  The Court should reject Siemens' claim for several reasons.

First, although Siemens attached a supposedly applicable disclaimer, ECF No. 43-2, it made no showing that any Plaintiff (or other customer) ever received the warranty before purchase.  Under Plaintiffs' home state laws, a disclaimer cannot be enforced if it was not provided at or before the point of sale.  *See Bowdoin v. Showell Growers, Inc.*, 817 F.2d 1543, 1545 (11th Cir. 1987) ("[A] disclaimer that appears for the first time after the sale in something supplied by the seller is not a part of the basis of the bargain and therefore is not binding on the buyer." (internal quotations omitted)).[13]  Siemens does not show that the warranty it cites to was placed on or referenced in the AFCI product packaging, and, thus, it does not bind Plaintiffs.

---

[13] *Clark v. LG Elecs. U.S.A., Inc.*, No. 13-cv-485, 2013 WL 5816410, at *13 (S.D. Cal. Oct. 29, 2013); *Ressallat v. Burglar & Fire Alarms, Inc.*, 606 N.E.2d 1001, 1006 (Ohio Ct. App. 1992); *Am. Aerial Servs., Inc. v. Terex USA, LLC*, 39 F. Supp. 3d 95, 106 (D. Me. 2014); *Collella v. Beranger Volkswagen, Inc.*, 386 A.2d 1283, 1284 (N.H. 1978); *Gregory Wood Prods., Inc. v. Advanced Sawmill Mach. Equip., Inc.*, No. 5:06-cv-0087, 2007 WL 1825179, at *7 (W.D.N.C. June 25, 2007); *Allan v. Guar. RV Ctrs.*, No. 05-cv-6036, 2006 WL 1050548, at *5 (D. Or. Apr. 15, 2006); *Mattingly v. Palmer Ridge Homes LLC*, 238 P.3d 505, 512 (Wash. Ct. App. 2010); *Moscatiello v. Pittsburgh Contractors Equip. Co.*, 595 A.2d 1198, 1202 (Pa. 1991); *Pfizer Genetics, Inc. v. Williams Mgmt. Co.*, 281 N.W.2d 536, 539 (Neb. 1979).

Second, Siemens also fails to establish that the disclaimer it provides was the operative one when Plaintiffs purchased their AFCIs.   Indeed, other versions of Siemens' warranty are available online that do not disclaim implied warranties at all[14] or assert the disclaimer does not apply to consumer goods.[15]   Under those warranties, should they apply, Siemens disclaimer argument would fail outright.

Third, even if the disclaimer is applicable, it is still substantively invalid. Maine, Washington, and New Hampshire expressly prohibit disclaimers of implied warranties in the sale of consumer goods.[16]   Siemens' disclaimer would also improperly conflict with its express warranties.   *Nexus 6P*, 293 F. Supp. 3d at 941. Specifically, Siemens warrants that its goods are "of the kind and quality described," that is, Siemens warrants its devices perform the functions of an AFCI.   Plaintiffs allege that Siemens AFCIs do not perform the basic function of an AFCI, namely, that they do not allow electricity to flow in a circuit where no dangerous arcing is ongoing.   Siemens cannot simultaneously warrant that their devices perform the

---

[14] *Siemens Standard Extended Warranty for Residential Products*, available at: https://images.homedepot-static.com/catalog/pdfImages/46/465f49de-7abf-4289-8737-3d7403f7c3d5.pdf (pdf download).

[15] *Siemens Circuit Breaker and Surge Protective Device Limit (sic) Warranty*, at 2 available at: https://assets.new.siemens.com/siemens/assets/api/uuid:08c56a96-ab25-4252-a18f-368a32298285/sie-fl-cirbreakerspd-warranty.pdf (pdf download).

[16] Me. Rev. Stat. tit 11 § 2-316(5); RCW § 62A.2-316(4); N.H. Rev. Stat. § 382-A:2-316(4).

basic functions of an AFCI while disclaiming that same warranty.  Thus, at this stage, the Court should reject the purported disclaimer.

### D.    Plaintiffs' Warranty Claims Are Not Time-Barred

Siemens lastly contends Plaintiffs' implied warranty claims are barred by respective statutes of limitation.  However, in each of Plaintiffs' home states, the statute of limitations may be tolled where the defendant fraudulently concealed the defect at issue and the plaintiff had no reasonable means of discovering it.[17]

Plaintiffs alleged Siemens fraudulently concealed the defect here, tolling any statute of limitations.  *See, e.g.*, Compl., ¶¶ 213–24.  Specifically, Plaintiffs allege Siemens concealed the nuisance tripping defects in its AFCIs by falsely claiming that nuisance tripping was a "myth", a "safety feature" or the fault of the homeowner or electrician. *Id.* at ¶¶ 85, 89–90.  Plaintiffs also alleged Siemens represented it had resolved and implemented "solutions" for nuisance tripping of its AFCIs.  *Id.* at ¶¶

---

[17] *In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Prod. Liab. Litig.*, No. 8:11-cv-03085, 2013 WL 169289, at *5 (D.S.C. Jan. 16, 2013); *Hogan v. BMW of N. Am. LLC*, No. 20-cv-0089, 2020 WL 5664946, at *4 (W.D. Wash. Aug. 31, 2020), *report and recommendation adopted*, No. 20-cv-0089, 2020 WL 5659511 (W.D. Wash. Sept. 23, 2020); *In re Takata Airbag Prod. Liab. Litig.*, No. 14-cv-24009, 2016 WL 5848843, at *15 (S.D. Fla. Sept. 21, 2016); *Blue Cross Blue Shield Ass'n v. GlaxoSmithKline LLC*, 417 F. Supp. 3d 531, 552 (E.D. Pa. 2019); *Sebago, Inc. v. Beazer E., Inc.*, 18 F. Supp. 2d 70, 103 (D. Mass. 1998) (citing *Akins v. Firstbank, N.A.*, 415 A.2d 567, 569 (Me. 1980)); *Philips v. Ford Motor Co.*, No. 14-cv-02989, 2016 WL 1745948, at *14 (N.D. Cal. May 3, 2016); *Grover v. BMW of N. Am., LLC*, 434 F. Supp. 3d 617, 633 (N.D. Ohio 2020).

88, 90.  Siemens is one of the largest multinational corporations in the world, with ubiquitous product placement due to its market power, and thus, Plaintiffs were entitled to rely upon Siemens' claim that its AFCIs were fit for their ordinary use. Because each manufacturer's AFCI are uniquely designed and due to Siemens repeated misdirection blaming nuisance tripping on several other potential causes rather than its own defective AFCIs, Plaintiffs had no inherent knowledge or ability to learn of Siemens' AFCIs defects.  *Id.* at ¶ 71.  Plaintiffs' claims were, thus, tolled up to the point they discovered the defects and filed this lawsuit.

## IV.   PLAINTIFFS   PROPERLY   PLED   THEIR   FRAUDULENT   CONCEALMENT   AND   NEGLIGENT   MISREPRESENTATION   CLAIMS

Siemens seeks to dismiss Plaintiffs' common law tort claims and evaluates these claims exclusively under Plaintiffs' home state laws.  As described above, for all Plaintiffs, these claims are governed by Georgia law.  These claims are principally based on Siemens' material omissions of defects in its AFCIs, which are described in great detail in the Complaint.  For the reasons below, Plaintiffs' tort claims survive under Georgia law and would likewise survive under Plaintiffs' home state laws.

### A.   Plaintiffs' Allegations Satisfy Rule 9(b)

Siemens argues Plaintiffs fail to plead their fraudulent concealment and negligent misrepresentation claims with sufficient particularity to meet Fed. R. Civ.

P. 9(b).   Specifically, Siemens asserts Plaintiffs did not allege with particularity: (1) the alleged misrepresentations, omissions, and acts of concealment; and (2) facts establishing a causal connection between Siemens' misrepresentations and omissions and Plaintiffs' claimed injuries.   To the extent Rule 9(b) applies to Plaintiffs' claims, the claims are pled with the required, or greater, particularity.

Fed. R. Civ. P. 9(b) requires plaintiffs to "state with particularity the circumstances constituting fraud or mistake."   To meet this standard, plaintiffs must allege: (1) misleading statements or omissions; (2) the time, place and person who made or omitted the statement; (3) how plaintiffs were misled; and (4) what the defendants obtained from the fraud.   *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997).

However, Rule 9(b)'s particularity requirement is not as stringent when applied to fraudulent concealment claims premised on an omission.   As this Court has explained, "[b]y the very nature of fraudulent concealment, plaintiffs cannot be expected to point to the time, place, and precise substance of what should have been disclosed."   *Monopoli,* 2022 WL 409484, at *10.   Thus, Rule 9(b) is less demanding with respect to omissions than it is with affirmative misrepresentations.   *Id.*   In practice, it "is enough for plaintiffs to allege that a fact was material and that it could have, and should have, been disclosed prior to the time plaintiffs acted on the

omission." *Id.* A plaintiff satisfies Rule 9(b) by alleging an omission in the sale of a defective product, a duty to disclose the omitted facts, a material defect, and that, had the defect been disclosed, the plaintiff would not have purchased the product or would have paid less for it had they known. *Id.*; *see also McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1368 (N.D. Ga. 2013).[18]

Rule 9(b)'s pleading standard also does not apply to negligent misrepresentation claims. The heightened pleading standard applies only in the context of knowing, intentional fraud, and claims for negligent misrepresentation sound in negligence and from a party's failure to apprehend and timely disclose material facts. *See BDO Seidman, LLP v. Mindis Acquisition Corp.*, 578 S.E.2d 400, 401 (Ga. 2003) (citing standard for alleging a claim of negligent misrepresentation based on Restatement (Second) of Torts § 552 (1977) ("[I]f [defendant] fails to exercise reasonable care or competence in obtaining or

---

[18] Concerning the D.C. Plaintiffs, even if the Court is persuaded that their home state laws apply, the D.C. Plaintiffs' home states recognize and treat omission-based claims as Georgia does. *See, e.g., Anderson v. Apple Inc.,* 500 F. Supp. 3d 993, 1018 (N.D. Cal. 2020) (reliance established where plaintiff pled the defendant failed to disclose material information, plaintiff had an opportunity to see a disclosure if provided, and plaintiff would have behaved differently had disclosure been made); *Szep v. General Motors LLC*, 491 F. Supp. 3d 280, 293 (N.D. Ohio 2020) (fraudulent concealment properly pled under Rule 9(b) where plaintiff alleges manufacturer knew of a defect before sale, failed to disclose the defect, and plaintiff would not have purchased the product or paid less had they known).

communicating the information")).  *Cf. Shea v. Best Buy Homes, LLC*, 533 F. Supp. 3d 1321, 1339 (N.D. Ga. 2021) (explaining, in the context of Rule 9(b), the distinction between fraud and negligent misrepresentation is the level of defendant's knowledge) (quoting *Holmes v. Grubman*, 691 S.E.2d 196, 200 (Ga. 2010)).  For that reason, Georgia federal courts generally do not require particularized pleading under Rule 9(b) for negligent misrepresentation claims.  *Shea,* 533 F. Supp. 3d at 1339; *In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 371 F. Supp. 3d 1150, 1177 (N.D. Ga. 2019).

Moreover, Plaintiffs pled with sufficient particularity the who, what, when, where, and how for both claims.  Plaintiffs offer a detailed explanation of how AFCIs are supposed to function, Compl., ¶¶ 45, 69–71; how Siemens' AFCIs routinely malfunction by nuisance tripping, *id.* at ¶¶ 68, 73; and how Siemens concealed this defect, sought to prevent its identification, and deflected blame to others, *id.* at ¶¶ 74, 84–92, 215-218.  Plaintiffs have pled Siemens was aware of the harm created by the nuisance tripping, and that it had a duty to disclose it.  *Id.* at ¶¶ 215-218.

Plaintiffs alleged Siemens both made affirmative misrepresentations and failed to disclose material facts—at the point-of-sale and in post-sale communications during the warranty period.  At point-of sale, Siemens labelled and marketed its AFCIs without disclosing their high rate of nuisance tripping, Compl.

¶¶ 83-84, and their inability to distinguish between harmless arcs and dangerous arc faults, *id.* at ¶¶ 83-84 (omissions).   Post-sale, Siemens made affirmative misrepresentations, by: characterizing nuisance tripping as a "myth," *id.* at ¶¶ 85, 89, and a safety alert or safety benefit, *id.* at ¶¶ 85, 87; and, blaming instances of nuisance tripping on the consumer (*e.g.*, loose light bulbs and furniture pushing on electrical wires) and faulty electrical work (*e.g.*, electricians not using strategic routes for wiring), *id.* at ¶¶ 87, 89–90.   Plaintiffs also alleged Siemens failed to disclose material information post-sale—failing to advise customers that nuisance tripping was a sign of a defect in the AFCIs and that their nuisance tripping experiences were most likely caused by defects in the AFCIs themselves, and not user-error. *Id.* at ¶¶ 91, 94.   These post-sale representations would encourage repeat customers – *i.e.*, electricians – to continue to buy Siemens products.

The Complaint also identifies when and how Siemens' misrepresentations and omissions injured Plaintiffs. *See Id.* at ¶ 105 (KB Electric) ¶¶ 110, 112 (Performance Electric); ¶ 124 (Bolt Electric) ¶ 132 (Artistic Electric); ¶ 140 (NSSS); ¶ 148 (Electricalifornia); ¶¶ 154–55 (Vodicka); ¶¶ 159–160 (Cates); ¶ 164 (Butakis); ¶¶ 168–70 (Gordon); ¶¶ 175–176 (Keyser); ¶¶ 181–183 (Barrette); and ¶¶ 187–188 (Oakley).   Plaintiffs alleged that they expected Siemens AFCIs to perform their essential function, but they did not, and that Plaintiffs would not have purchased, or

paid less for, the AFCIs had they known of the defect. *Id.* at ¶ 103 (KB Electric); ¶ 113 (Performance Electric); ¶ 122 (Bolt Electric); ¶ 130 (Artistic Electric); ¶ 155 (Vodicka); ¶ 160 (Cates); ¶ 165 (Butakis); ¶ 170 (Gordon); ¶ 177 (Keyser); and ¶ 191 (Oakley). For the Electrician Plaintiffs, Plaintiffs specifically alleged they were injured when they lost "substantial, uncompensated time" investigating nuisance tripping issues because Siemens misrepresented the cause of nuisance tripping and failed to disclose that the cause was a defect in the AFCI breaker. Compl., ¶ 105 (KB Electric); ¶ 115 (Performance Electric); ¶ 124 (Bolt Electric); ¶ 132 (Artistic Electric); ¶ 140 (NSSS); and ¶ 148 (Electricalifornia).

Plaintiffs' allegations are, thus, pled with the particularity required under Fed. R. Civ. P. 9(b). *See Monopoli*, 2022 WL 409484, at *11 (holding plaintiffs satisfied Rule 9(b) by alleging the "[defendant] knew about the defect[,]" and "failed to disclose this defect to its consumers prior to purchasing, and had [defendant] disclosed the . . . defect, [plaintiffs] would not have purchased [their] vehicle[s], or would not have paid as much for [them].").

**B.    The Economic Loss Doctrine Does Not Bar Plaintiffs' Tort Claims**

The economic loss doctrine ("ELD") does not bar Plaintiffs' tort claims here because of two applicable exceptions: (1) Siemens owed an independent duty apart from any contract; and (2) the fraud exception.

### 1.   Plaintiffs alleged an independent duty apart from contract

While Georgia courts have generally held that the ELD establishes a general limitation on tort recovery for claims grounded in contract, *see, e.g.*, *Hanover Ins. Co. v. Hermosa Const. Grp., LLC*, 57 F. Supp. 3d 1389 (N.D. Ga. 2014), the ELD does not serve to bar all tort claims whenever a contract exists.[19]  For example, where the defendant owes a duty independent of the contract, Georgia courts allow plaintiffs to pursue remedies in tort.  *See Liberty Mut. Fire Ins. Co. v. Cagle's, Inc.*, No. 1:10-cv-2158, 2010 WL 5288673, at *3 (N.D. Ga. Dec. 16, 2010) (finding insurance contract between parties did not bar recovery in tort where insurer owed independent duty of reasonableness and good faith in settling claims made under the contract); *see also Equifax*, 371 F. Supp. 3d at 1172.

As described above, under Georgia law, Siemens had an independent duty to disclose the "intrinsic defects" that Siemens knew of and concealed, and that Plaintiffs could not readily determine.  *Monopoli*, 2022 WL 409484, at *12.  Since that duty existed in tort, Plaintiffs may bring their tort claim regardless of any contractual duties.  *See Holloman v. D.R. Horton, Inc.*, 524 S.E.2d 790, 796 (Ga.

---

[19] The conflict in Siemens' arguments—that Plaintiffs can assert neither their warranty claims (because they are disclaimed by Siemens' written warranty) nor tort claims (because they are covered by Siemens' warranty)—would leave Plaintiffs without contract or tort remedies, underscoring the reason for this ELD exception.

App. Ct. 1999) (allowing "contract and negligence actions to proceed simultaneously.").

### 2.    Plaintiffs' allegations satisfy the fraud exception to the ELD

Additionally, Georgia courts do not apply the ELD where a defendant has engaged in fraud, reasoning that plaintiffs should not be bound to contractual remedies that may exist only due to a party's misrepresentations or omissions. *See Holloman*, 524 S.E.2d at 796–97 (describing the "misrepresentation" exception to the EDL, which applies in cases of "passive concealment."). Here, Plaintiffs alleged that they purchased the AFCIs due to Siemens' fraudulent concealment of the devices' defects. Specifically, Siemens knew that its devices were defective due to public complaints and its own testing and based on public comments it has made about nuisance tripping. Despite that, it deliberately concealed the defects in its products, prompting Plaintiffs and others to purchase them when they would not have had they known Siemens' AFCIs were defective. Plaintiffs cannot be bound to remedies in a contract that they entered into due to Siemens' fraudulent omissions. *Holloman*, 524 S.E.2d at 796.

### C.   Plaintiffs Pled Siemens' Pre-Sale Knowledge Sufficient to Establish Fraudulent Concealment

Siemens argues Plaintiffs failed to allege both Siemens' pre-sale knowledge of any defect and its duty to disclose that defect.   Siemens is wrong—Plaintiffs adequately alleged Siemens' knowledge under Georgia law.

#### 1.   Plaintiffs alleged Siemens' knowledge of the defect from product testing, customer complaints, and industry knowledge

Although knowledge may be alleged generally, *see* Fed. R. Civ. P. 9(b), Plaintiffs alleged Siemens' pre-sale knowledge with great detail.  Plaintiffs alleged that nuisance tripping in AFCIs is a known issue other manufacturers have resolved, while Siemens has not.  Compl. ¶¶ 58–59.  Plaintiffs cite consumer and electrician forum complaints about Siemens AFCI breakers, *id.* at ¶¶ 75–81, and Siemens' own testing showing that its AFCIs trip when they should not, *id.* at ¶ 83.

Plaintiffs also alleged other Siemens' actions that demonstrate knowledge. Plaintiffs claim Siemens affirmatively misrepresented the defect in public statements by calling nuisance tripping a "myth" or a "safety alert" rather than a defect.  *Id*. at ¶¶ 85, 88. Siemens published a troubleshooting guide that acknowledged the issue while attempting to shift the blame to consumers and electricians.  *Id.* at ¶¶ 89–91. Finally, Plaintiffs alleged Siemens marketed gadgets to help consumers identify the

cause of unwanted tripping.  *Id.* at ¶ 92.  Plaintiffs fully alleged that Siemens was aware of the nuisance tripping issues before selling these defective AFCIs.

Siemens contends these allegations are not enough because allegations of consumer complaints, product testing, and widespread industry knowledge of a defect do not plausibly show pre-sale knowledge.  Def. Br. at 19–23.  In support, Siemens cites cases holding that allegations of *only* consumer complaints or *only* testing or *only* industry knowledge may not plausibly show pre-sale knowledge.[20] However, Plaintiffs did not allege any one of those things standing alone, but alleged them collectively, alongside other allegations, which establish pre-sale knowledge. *See Monopoli*, 2022 WL 409484 at *10 ("[A]lthough each individual piece of information that Plaintiffs rely upon may not, standing alone, demonstrate that Defendants knew of the issues . . . before Plaintiffs purchased the [products], the Court finds that they do so collectively." (internal quotations omitted)); *In re Gen. Motors Air Conditioning*, 406 F. Supp. 3d, 618, 636 (E.D. Mich. 2019) (holding that

---

[20]  Siemens' cases involve allegations of consumer complaints, testing, or industry knowledge individually, not all three collectively.  *See, e.g.*, *Wilson v. Hewlett-Packard Co*., 668 F.3d 1136, 1147 (9th Cir. 2012); *Wozniak v. Ford Motor Co.*, 2019 WL 108845, at *3 (E.D. Mich. Jan. 4, 2019); *Berenblat v. Apple, Inc.,* Nos. 08-4969, 09-1649, 2010 WL 1460297, at *9 (N.D. Cal. Apr. 9, 2010); *Mandani v. Volkswagen Grp. Of Am., Inc.,* No. 17-CV-07287, 2019 WL 652867, at *7-8 (N.D. Cal. Feb. 15, 2019); *Red Roof Franchising, LLC v. Riverside Macon Grp., LLC*, No. 2:18-CV-16, 2020 WL 2494462, at *7 (S.D. Ohio May 14, 2020).

alleged testing related to the defects, when combined with other allegations, "plausibly establish [defendant's] knowledge" of the defect.").

Taken altogether, Plaintiffs have alleged sufficient facts showing Siemens knew of the defects. In addition to widespread public complaints, complaints made directly to Siemens, and Siemens' own testing of its AFCIs, Plaintiffs also alleged that Siemens made public statements regarding nuisance tripping, and created additional products, presentations, and guides to misdirect electricians and consumers and obfuscate the cause of the tripping issues. *See, e.g.* Compl. ¶¶ 84–92. These allegations show that Siemens knew electricians and consumers considered nuisance tripping to be a highly unsatisfactory product performance and Siemens accordingly wrote and published misleading statements and guidance that deflected blame for this unsatisfactory performance onto other products and persons.

Siemens also cites *Szep* to assert that even multiple sources indicating a defect may be insufficient to establish pre-sale knowledge. 491 F. Supp. 3d at 294. However, although *Szep* refers to several sources of defendant's supposed knowledge of a defect, *id.* at 294–95, the court discounted two of those sources (complaints and an engine redesign) as undeveloped because plaintiffs did not allege the defendant knew of the complaints or altered the engine due to the defect. *Id.* That left just one potential source of defendant's knowledge—technical service

bulletins related to the engines.  *Id.* at 295.  The court held the bulletin was insufficient on its own and plaintiffs made "no other independent allegations that would support an inference that GM had knowledge of the oil consumption defect." *Id.* [21]  Here, however, Plaintiffs alleged numerous sources of Siemens' knowledge, including consumer complaints to Siemens and Siemens' own testing, which identified high rates of improper nuisance tripping.  Given the totality of the allegations, Plaintiffs adequately alleged Siemens' pre-sale knowledge.

### 2. Plaintiffs alleged Siemens' duty to disclose the defects based on its superior knowledge and efforts to misinform purchasers

Under Georgia law, a defendant's obligation to disclose a defect may arise from "the confidential relations of the parties or from the particular circumstances of the case."  *Amin v. Mercedes-Benz USA, LLC*, 301 F. Supp. 3d 1277, 1296 (N.D. Ga. 2018).  The "particular circumstances of a case" trigger a duty to disclose a defect "where there is a concealment of 'intrinsic qualities of the article which the other party by the exercise of ordinary prudence and caution could not discover.'"

---

[21] Siemens also relies on *Ahern v. Apple Inc.,* 411 F. Supp. 3d 541, 565 (N.D. Cal. 2019), but that case is readily distinguishable because the supposed industry knowledge, consumer complaints, and testing were unrelated to the defect at issue. *Id.*  Here, the complaints, testing, and Siemens' public comments all relate to the same underlying issue: nuisance tripping of Siemens' AFCIs.

*Id.*; *Monopoli*, 2022 WL 409484, at *12.[22]  Therefore, at the motion to dismiss stage, it suffices to allege that: (1) the defendant knew of the defect; (2) denied the existence of the defect; (3) actively concealed the defect; and (4) that the defect could not have been discovered by purchasers using reasonable care.  *Amin*, 301 F. Supp. 3d at 1296; *see Monopoli*, 2022 WL 409484, at *12 (finding that car buyers alleging Mercedes-Benz USA, LLC was aware of defect in its Active Head Restraint ("AHR") technology but nevertheless marketed AHR as safety feature had adequately alleged enough to establish duty to disclose "because no purchaser, by the exercise of ordinary prudence and caution, could have discovered the defect.").

Here, Plaintiffs have alleged that Siemens (1) knew of the defect, Compl. ¶¶ 74, 75, 82, 83; (2) represented that its products did not have the defect, Compl. ¶¶ 74, 84, 88, 89, 90, 105, 110, 115, 124, 132, 140, 148; and (3) took measures to

---

[22] Georgia's rule regarding duty to disclose based on superior knowledge is shared by numerous other states.  *In re Volkswagen Timing Chain Prod. Liab. Litig.*, No. 16-cv-2765, 2017 WL 1902160, at *21 (D.N.J. May 8, 2017) (defendant's superior knowledge of a safety defect triggered a duty to disclose under California, Ohio, Pennsylvania, and law); *Favors v. Matzke*, 770 P.2d 686, 690 (Wash. Ct. App. 1989) (same under Washington law).  Some states do not even require plaintiffs to establish a duty to disclose where the defendant allegedly took steps to actively conceal a defect.  *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Pracs., & Prod. Liab. Litig.*, 295 F. Supp. 3d 927, 1009 (N.D. Cal. 2018) (analyzing Oregon and Pennsylvania law); *SodexoMAGIC, LLC v. Drexel Univ.*, 24 F.4th 183, 211 (3d Cir. 2022) (applying Pennsylvania law); *Elbeco Inc. v. Nat'l Ret. Fund*, 128 F. Supp. 3d 849, 859 n.6 (E.D. Pa. 2015) (applying Pennsylvania law); *Martin v. Ort*, No. 15-cv-0195, 2016 WL 1069907, at *3 (Me. Super. Feb. 03, 2016) (applying Maine law).

prevent Plaintiffs from learning of it, Compl. ¶¶ 85, 87, 88, 89, 90, 92, 105, 110, 112, 115,124, 132, 140, 148.  Plaintiffs alleged Siemens was put on notice of the defect through its own testing and numerous complaints made to it directly and through public forums.  Compl. ¶ 83.  Despite that knowledge, Siemens publicly represented that nuisance tripping of its AFCIs was "a myth," falsely characterized nuisance tripping as a "safety alert," and blamed reported nuisance tripping on homeowners and electricians.  *Id.* ¶¶ 85–88.  Siemens also falsely claimed it had resolved any nuisance tripping defect in its breakers.  *Id.* ¶¶ 88, 90.  To further its concealment of the defect, Siemens created tools and guides that deliberately omitted that nuisance tripping may be caused by a defective AFCI and instead placed responsibility on other persons and actions.  *Id.* ¶¶ 90–92.

Plaintiffs could not have reasonably discovered the AFCIs' defect.  Siemens' AFCIs are proprietary and uniquely programmed.  *Id.* at ¶¶ 69–70.  While electricians and others may be able to investigate and rule out a dangerous arc as the cause of the tripping, they depend on Siemens for information and explanations about Siemens' products.  *Id.* at ¶¶ 95–96.  Siemens' "tools" and guides to identify the cause of a trip further obfuscate and omit that the issue could be defects in Siemens AFCIs and point to over a half dozen other potential causes for tripping.  *Id.* at ¶¶ 84–91.  These allegations sufficiently establish Siemens' duty to disclose

that its AFCIs contained a defect that led to repeated nuisance tripping, and Siemens failed to disclose that defect.[23] *Id.* at ¶¶ 215–18.

### D. Plaintiffs Sufficiently Alleged Affirmative Misrepresentations and Omissions Necessary to State a Claim for Negligent Misrepresentation

#### 1. Siemens' material omissions are sufficient to establish negligent misrepresentation

Siemens asserts that Plaintiffs failed to allege affirmative misrepresentations necessary to state a claim for negligent misrepresentation.  However, negligent misrepresentation in Georgia, like fraud, need not be based on affirmative misrepresentations; material omissions, as Plaintiffs allege, also suffice.  As the Georgia Supreme Court has explained, "the only real distinction between negligent misrepresentation and fraud is the absence of the element of knowledge of the falsity of the information disclosed." *Shea,* 533 F. Supp. 3d at 1339 (quoting *Holmes,* 691 S.E.2d at 200).  Courts, thus, "apply the same principles . . . to both fraud and

---

[23] Siemens makes one argument specific to California and Pennsylvania law—which does not apply here—claiming these states would not impose a duty to disclose unless the defect could cause serious bodily harm or present a safety issue.  Def. Br. at 27.  At least one court has rejected that argument under Pennsylvania law. *See, e.g., Volkswagen Timing Chain,* 2017 WL 1902160, at *19-20.  California, likewise, has abandoned the requirement. *See Hodsdon v. Mars, Inc.,* 891 F.3d 857, 864 (9th Cir. 2018) ("[R]ecent California cases show that *Wilson's* safety hazard pleading requirement is not necessary in all omission cases[.]").

negligent misrepresentation cases under Georgia common law." *Id.* (internal quotations omitted). And while the Georgia Supreme Court has not specifically addressed whether a material omission alone can give rise to a claim for negligent misrepresentation, in articulating the elements of a negligent misrepresentation claim, the Georgia Court of Appeals has made it clear that a negligent misrepresentation claim may be premised on false statements *or* an omission of material fact. *See, e.g., Lafontaine v. Alexander*, 808 S.E.2d 50, 55 (Ga. Ct. App. 2017); *Moore v. Lovein Funeral Home, Inc.*, 852 S.E.2d 876, 883 (Ga. Ct. App. 2020) Siemens cites no authority suggesting negligent misrepresentation claims cannot be based on omissions.[24]

Plaintiffs alleged that Siemens omitted material information sufficient to establish negligent misrepresentation. For instance, Plaintiffs pled that Siemens

---

[24] Siemens' reliance on *dicta* in *Intellicig USA, LLC v. CN Creative Ltd.*, 2017 WL 11634374 (N.D. Ga. Mar. 6, 2017), Def. Br. at 28 n 6, is undercut by the *Intellicig* court's express acknowledgement that it did not need to decide whether a negligent misrepresentation claim could be based on an omission and that the Georgia Supreme Court and Court of Appeals (at that time) had not ruled on the issue. *Id.* at *7, n.6. *Intellicig's* suggestion that the language Georgia courts use implies that negligent misrepresentation claims require an affirmative representation is made without citation or explanation. Further, the case Siemens cites in Exhibit C when listing states where negligent misrepresentation claims based on omissions are not recognized, *Greenwald v. Odom*, repeatedly references misrepresentations *or* omissions. *See* 723 S.E.2d 305, 317 (Ga. Ct. App. 2012) ("To establish common law fraud or negligent misrepresentation, a plaintiff must prove that the alleged misrepresentation or omission proximately caused his or her injury.").

withheld that its AFCIs could not distinguish between harmless and dangerous arcs and were prone to nuisance tripping. Compl. ¶¶ 57, 68, 73, 83, 84. Courts routinely find a product's defective nature to be material information. *See, e.g., Hadjian v. Mercedes-Benz, USA, LLC*, 2022 WL 3699603, at *9 (N.D. Ga. Mar. 31, 2022) (failure to disclose defective air inlets that clog in bumper was a material omission); *Amin*, 301 F.Supp.3d at 1291 (failure to disclose defective HVAC system that led to moldy smell was a material omission).  Siemens' omissions were material because, had Siemens disclosed that its AFCIs were defective, it would have impacted Plaintiffs' actions—that is, Plaintiffs would not have purchased the AFCIs or would have paid less for them.  *Hadjian*, 2022 WL 3699603 at *1, 9; *see also* Restatement (Second) of Torts § 538 (1977) (defining the materiality of a misrepresentation). Siemens knew its omissions were material, given that it expended great effort creating guides, presentations, and even alternative tools to portray that nuisance tripping was a "myth" or due to a host of issues other than defects in its AFCIs. These material omissions suffice to establish negligent misrepresentation.

### 2. Siemens' affirmative misrepresentations are sufficient to establish negligent misrepresentation

Plaintiffs also sufficiently pled Siemens' affirmative misrepresentations sufficient to state a claim for negligent misrepresentation.[25] For instance, multiple Plaintiffs alleged they sought or consulted Siemens' guidance and lost substantial time investigating the potential cause of tripping when following Siemens' advice. Compl., ¶ 104–106 (KB Electric); ¶ 110–115(Performance Electric); ¶ 123–124 (Bolt Electric); ¶ 131–132 (Artistic Electric); ¶ 139–140 (NSSS); and ¶ 148

---

[25] Siemens contends that in Washington, Maine, and Pennsylvania, a negligent misrepresentation claim must be based on a breach of a statutory duty. Although these laws do not apply due to Georgia's choice of law rules, none of Siemens' cases make any such holding. *See Seattlehaunts, LLC v. Thomas Family Farm, LLC*, 2020 WL 5500373, at *8 (W.D. Wash. Sept. 11, 2020) (requiring only a special relationship to trigger a duty to disclose under Washington); *Fulton Bank, N.A. v. UBS Securities, LLC*, 2011 WL 5386376, at *8 (E.D. Pa. Nov. 7, 2011) (requiring under Pennsylvania law only that the parties to the transaction have a relationship of trust and confidence); *Sanford v. National Ass'n for Self-Employed, Inc.*, 2009 WL 1460768, at *10 (D. Me. May 26, 2009) (finding under Maine law that a partial disclosure can create a duty to disclose supporting an omission-based claim for negligent misrepresentation). Additionally, the WPLA does not preempt fraud-based claims like negligent misrepresentation. *Ochoa v. Indus. Ventilation, Inc.*, No. 2:18-cv-0393, 2021 WL 5405203, at *8 (E.D. Wash. Nov. 18, 2021); Wash. Rev. Code Ann. § 7.72.010(4). Although Siemens claims Nebraska does not recognize an omission-based negligence claim, Nebraska does so, but refers to it as "non-disclosure" claim rather than as an omission. *See, e.g.*, *Outlook Windows P'ship v. York Intern. Corp.*, 112 F.Supp.2d 877, 896 n. 35 (D. Neb., 2000) (holding a "nondisclosure" claim is permitted when a party "fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction.").

(Electricalifornia). Plaintiffs also alleged Siemens' trouble shooting guide misleadingly purports to list the potential causes of a trip without listing a defective AFCI. Compl. ¶¶ 105, 124, 132; *see also id* ¶¶ 110 (alleging Siemens represented to Performance Electric that nuisance tripping was the fault of electricians or that Siemens would be releasing and update to resolve the issue); ¶ 164 (alleging Siemens told Bryan Butakis its AFCIs were not defective); ¶¶ 140, 148 (allegations by NSSS and Electricalifornia that they lost substantial time due to Siemens' misleading trouble shooting guide). Siemens also sold an Intelli-Arc tool that was meant to help diagnose the cause of tripping, and this tool also contained a misrepresentation: it failed to provide Plaintiffs with the true cause of the nuisance tripping, *i.e.* a defect in Siemens' AFCI breaker. Compl. ¶ 112. Those affirmative misrepresentations further support Plaintiffs' negligent misrepresentation claim.

## V.   PLAINTIFFS PROPERLY PLED THEIR UNJUST ENRICHMENT CLAIMS

Siemens argues that Plaintiffs' unjust enrichment claims are barred by express warranties and adequate legal remedies. Def. Br. at 29. However, both Fed. R. Civ. P. 8(a)(3) and (d)(3) "unquestionably allow[] plaintiffs to plead their claims in the alternative," and those claims may be brought "regardless of consistency." *Dinner Bell Café, Inc. v. N. Am. Bancard, LLC*, No. 1:15-cv-3059, 2016 WL 4257768, at *5

(N.D. Ga. Aug. 4, 2016).[26] Plaintiffs plead unjust enrichment as an alternative to its theories of legal liability, and therefore dismissal at this stage is improper, especially where Siemens contends the warranty claims should be dismissed. *Elder*, 563 F. Supp. 3d at 1221; *see also* **State Farm Mutual Auto. Ins. Co. v. Physicians Injury Care Ctr., Inc.**, 427 F. App'x 714, 722 (11th Cir. 2011), *rev'd in part sub nom.*, *State Farm Mut. Auto. Ins. Co. v. Williams*, 824 F.3d 1311 (11th Cir. 2014).

Since Georgia law applies to the remaining unjust enrichment claims and Plaintiffs are permitted under Georgia law to bring an unjust enrichment claim in the alternative, this claim survives. *Terrill*, 753 F. Supp. 2d at 1290; *Mullinax v. United Mktg. Group, LLC*, 2011 WL 4085933, at *14 (N.D. Ga. 2011).[27] Consequently, the Court should decline to dismiss the Plaintiffs' remaining unjust enrichment claims.

---

[26] Because Georgia law applies, Defendant's citations to *Deras v. Volkswagen Grp. of Am., Inc.*, 2018 WL 2267448, at *3 (N.D. Cal. May 17, 2018) and *Forrett v. Gourmet Nut, Inc.*, 2022 WL 6768217, at *5 (N.D. Cal. Oct. 11, 2022) are inapposite.
[27] Should Plaintiffs' home state laws govern, Plaintiffs are likewise permitted to plead unjust enrichment in the alternative. *See Puhalla v. Mercedes-Benz USA, LLC (In re Takata Airbag Prods. Liab. Litig.)*, 462 F. Supp. 3d 1304, 1326 (S.D. Fla. 2020) (permitting unjust enrichment claims in an MDL under California, North Carolina, Ohio, Oregon, and Pennsylvania law); *Lugo v. Farmers Pride, Inc.*, 2009 PA Super 5, 967 A.2d 963, 970 (2009); *June Roberts Agency, Inc. v. Venture Properties, Inc.*, 676 A.2d 46, fn.1 (Me. 1996); *Scott v. Carr*, No. C20-cv-0236, 2020 WL 6381812 (W.D. Wash. Oct. 30, 2020); *Gerace Construction Company, Inc. v. DRC Acquisition, Inc.*, 2023 WL 2772393, at *2-3 (N.D. Ohio, 2023); *Precisely Software Inc. v. Loqate Inc.*, 2022 WL 4348469, at *3 (N.D. Cal., 2022); *Niloy, Inc. v. Lowe's Companies, Inc.*, No. 516-cv-00029, 2017 WL 29338, at *8 (W.D.N.C. Jan. 3, 2017); *In re: Dollar General Corp. Motor Oil Mktg. and Sales Practices Litig.*, No.

## CONCLUSION

Based on the foregoing, the Court should hold that: (1) Georgia's choice of law rules apply to all Plaintiffs' claims; (2) Georgia law governs Plaintiffs' common law tort claims and all Plaintiffs' unjust enrichment claims except the Washington Plaintiffs; (3) Plaintiffs' home state laws govern their warranty claims; and (4) except for the Washington Plaintiffs' unjust enrichment claim, all Plaintiffs' claims survive the motion to dismiss.

Dated: July 19, 2023

/s/ Brian C. Gudmundson
Brian C. Gudmundson (*pro hac vice*)
Jason P. Johnston (*pro hac vice*)
Michael J. Laird (*pro hac vice*)
Rachel K. Tack (*pro hac vice*)
**ZIMMERMAN REED LLP**
1100 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 341-0400
brian.gudmundson@zimmreed.com
jason.johnston@zimmreed.com
michael.laird@zimmreed.com
rachel.tack@zimmreed.com

---

16–02709–MD–W–GAF, 2017 WL 3863866, at *10 (W.D. Mo. Aug. 3, 2017) (allowing an unjust enrichment claim pled in the alternative under Nebraska law) (citing *Hornig v. Martel Lift Systems, Inc.*, 258 Neb. 764, 772 (Neb. 2000)); *General Insulation Co. v. Eckman Const.*, 159 N.H. 601, 611 (N.H. 2010); *Confederated Tribes of Warm Springs Reservation of Oregon v. Ambac Assur. Corp.*, 2010 WL 4875657, at *7 (D. Or. 2010); *see also Bush Truck Leasing, Inc. v. All Ways Auto Transp., LLC*, Case No. 1:20-cv-511, 2021 WL 3173073 at *10–12 (S.D. Ohio July 26, 2021) (rejecting the argument that *Johnson v. Microsoft Corp.*, 834 N.E.2d 791 (Ohio 2005) requires privity for an unjust enrichment claim)); *Carter-Jones Lumber Co. v. Oro RB SPE Owner, LLC*, 2021 WL 2592531, at *6 (S.D. Ohio, 2021) (same).

Charles H. Van Horn (724710)
**BERMAN FINK VAN HORN P.C.**
3475 Piedmont Road, N.E. Suite 1640
Atlanta, GA 30305
Telephone: (404) 261-7711
cvanhorn@bvfvlaw.com

Victoria S. Nugent (*pro hac vice*)
Brian E. Johnson (*pro hac vice*)
**COHEN MILSTEIN SELLERS & TOLL
  PLLC**
1100 New York Ave. NW, Fifth Floor
Washington, DC 220025
Telephone: (202) 408-4600
vnugent@cohenmilstein.com
bejohnson@cohenmilstein.com

David A. Goodwin (*pro hac vice*)
Anthony J. Stauber (*pro hac vice*)
**GUSTAFSON GLUEK PLLC**
Canadian Pacific Plaza
120 South Sixth Street, Suite 2600
Minneapolis, MN 55402
Telephone: (612) 333-8844
dgoodwin@gustafsongluek.com
tstauber@gustafsongluek.com

E. Adam Webb
G. Franklin Lemond, Jr.
**WEBB, KLASE & LEMOND, LLC**
1900 The Exchange, S.E.
Suite 480
Atlanta, Georgia 30339
Telephone: (770) 444-9325
Adam@WebbLLC.com
Franklin@WebbLLC.com

Joseph G. Sauder (*pro hac vice*)
Matthew D. Schelkopf (*pro hac vice*)
Joseph B. Kenney (*pro hac vice*)
**SAUDER SCHELKOPF**
1109 Lancaster Avenue
Berwyn, PA 19312
Telephone: (610) 200-0581
jgs@sstriallawyers.com
mds@sstriallawyers.com
jbk@sstriallawyers.com

Bonner C. Walsh
**WALSH PLLC**
1561 Long Haul Road
Grangeville, ID  83530
Telephone: (541) 359-2827
bonner@walshpllc.com

*Attorneys for Plaintiffs*