**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

|  |  |
|---|---|
| KEVIN BRNICH ELECTRIC LLC, *et al.*,<br><br>            Plaintiffs,<br><br>   v.<br><br>SIEMENS INDUSTRY, INC.,<br><br>            Defendant. | Case No. 1:22-cv-01229-MHC<br><br>Honorable Mark Howard Cohen<br>Oral Argument Requested[1]<br><br><br>[REDACTED] |

**SIEMENS INDUSTRY, INC.'S BRIEF IN OPPOSITION
TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**

---

[1] Pursuant to Local Rule 7.1(E), NDGa, and the Court's Standing Order, Siemens Industry, Inc., respectfully requests oral argument on this motion. Pierce MacConaghy, who is less than seven years out of law school, will argue a substantial issue in this case.

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................1

BACKGROUND ...................................................................................5

I.   AFCIs and Consumer Purchasing Behavior ...............................5

II.  Nuisance Tripping and Siemens' Disclosures ...........................6

III. Procedural History.....................................................................8

LEGAL STANDARD ..........................................................................10

ARGUMENT .......................................................................................10

I.   The Nationwide Fraudulent Concealment Class Is Overwhelmed
     by Individualized Issues...........................................................10

     A.   Justifiable Reliance Requires Individual Proof...................11

     B.   Plaintiffs' Device Incompatibility Claims Will Require
          Countless Mini-Trials........................................................18

II.  Plaintiffs Have Failed to Satisfy Rule 23's Manageability and
     Superiority Requirements .........................................................19

III. Plaintiffs Have Failed to Proffer a Valid Class-Wide Damages
     Model ........................................................................................22

IV.  Plaintiffs' State Subclasses Also Fail Rule 23.........................27

CONCLUSION ....................................................................................30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
  521 U.S. 591 (1997)................................................................................17

*Backhaut v. Apple, Inc.*,
  74 F. Supp. 3d 1033 (N.D. Cal. 2014)....................................................27

*Brown v. Electrolux Home Prods., Inc.*,
  817 F.3d 1225 (11th Cir. 2016) ........................................................10, 30

*Bryant v. Mortg. Cap. Res. Corp.*,
  2002 WL 34720249 (N.D. Ga. May 31, 2002).......................................16

*Cardenas v. Toyota Motor Corp.*,
  2021 WL 5811741 (S.D. Fla. Dec. 6, 2021)...........................................24

*Cherry v. Dometic Corp.*,
  986 F.3d 1296 (11th Cir. 2021) ..............................................................20

*Coleman v. Burger King Corp.*,
  2025 WL 3280900 (S.D. Fla. Nov. 25, 2025) ...................................20, 30

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013)....................................................................4, 22, 26, 29

*Cordoba v. DIRECTV, LLC*,
  942 F.3d 1259 (11th Cir. 2019) ..............................................................28

*Davidson v. Apple, Inc.*,
  2019 WL 2548460 (N.D. Cal. June 20, 2019).....................................23, 26

*Durell v. Sharp Healthcare*,
  108 Cal. Rptr. 3d 682 (Cal. Ct. App. 2010)............................................27

*DZ Rsrv. v. Meta Platforms, Inc.*,
  96 F.4th 1223 (9th Cir. 2024) ..................................................................17

*Everett v. TK-Taito, L.L.C.*,
  178 S.W.3d 844 (Tex. App. 2005)...........................................................28

# TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Flodin v. Cent. Garden & Pet Co.*,
2024 WL 4565340 (N.D. Cal. Oct. 23, 2024) ......................................................23

*Fortis Ins. Co. v. Kahn*,
299 Ga. App. 319 (2009) ......................................................................................12

*Francoforte v. Graco Children's Products, Inc.*,
2026 WL 582860 (N.D. Ga. Jan. 20, 2026).........................................................23

*Harris v. Nortek Glob. HVAC LLC*,
2016 WL 4543108 (S.D. Fla. Jan. 29, 2016)........................................................27

*Ilhardt v. A.O. Smith Corp.*,
168 F.R.D. 613 (S.D. Ohio 1996).........................................................................19

*In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*,
2017 WL 2536846 (N.D. Ga. June 9, 2017).........................................................12

*In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*,
2017 WL 2540822 (N.D. Ga. June 9, 2017).........................................................16

*In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*,
2018 WL 2765961 (N.D. Ga. June 8, 2018).........................................................18

*In re Delta/AirTran Baggage Fee Antitrust Litig.*,
317 F.R.D. 675 (N.D. Ga. 2016) ..........................................................................17

*In re Disposable Contact Lens Antitrust*,
329 F.R.D. 336 (M.D. Fla. 2018) .........................................................................17

*In re Fluidmaster, Inc., Water Connector Components Prods. Liab.
Litig.*,
2017 WL 1196990 (N.D. Ill. Mar. 31, 2017) .......................................................25

*In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*,
194 F.R.D. 484 (D.N.J. 2000)...............................................................................19

*In re Takata Airbag Prod. Liab. Litig.*,
2023 WL 5625652 (S.D. Fla. Aug. 24, 2023) ..............................................*passim*

*In re Takata Airbag Prod. Liab. Litig.*,
348 F.R.D. 500 (S.D. Fla. 2025).................................................................12, 15, 17

iii

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

*In re Takata Airbag Prod. Liab. Litig.*,
677 F. Supp. 3d 1311 (S.D. Fla. 2023)........................................................17

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
500 F. Supp. 3d 940 (N.D. Cal. 2020)........................................................27

*Ingram v. Coca-Cola Co.*,
200 F.R.D. 685 (N.D. Ga. 2001) ...............................................................17

*Justice v. Rheem Mfg. Co.*,
318 F.R.D. 687 (S.D. Fla. 2016).................................................................15

*Karhu v. Vital Pharms., Inc.*,
621 F. App'x 945 (11th Cir. 2015)..............................................................29

*Lechter v. Aprio LLP*,
2026 WL 1803824 (N.D. Ga. June 17, 2026)..........................................14, 16

*Liberty Lending Servs. v. Canada*,
293 Ga. App. 731 (2008) ............................................................................12

*Lissys Cortes v. Honeywell Bldg. Sols. SES Corp.*,
2014 WL 11958626 (S.D. Fla. Sept. 24, 2014)..........................................30

*Luse v. Sentinel Offender Servs., LLC*,
2017 WL 11629203 (N.D. Ga. Aug. 21, 2017)...........................................17

*Marion A. Allen, Inc. v. Johnston*,
371 Ga. App. 856 (2024) ...........................................................................14

*McCabe v. Daimler AG*,
160 F. Supp. 3d 1337 (N.D. Ga. 2015).....................................................3, 14

*McVicar v. Goodman Glob., Inc.*,
2015 WL 4945730 (C.D. Cal. Aug. 20, 2015) .........................................15, 16

*Mirkin v. Wasserman*,
858 P.2d 568 (Cal. 1993)............................................................................27

*Mitchell v. Ford Motor Credit Co.*,
68 F. Supp. 2d 1315 (N.D. Ga. 1998).........................................................18

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Monopoli v. Mercedes-Benz USA, LLC*,
  2022 WL 409484 (N.D. Ga. Feb. 10, 2022) ........................................ 17

*Nuwer v. FCA US LLC*,
  343 F.R.D. 638 (S.D. Fla. 2023) .......................................................... 17

*Oddo v. Arcoaire Air Conditioning & Heating*,
  2019 WL 1460627 (C.D. Cal. Mar. 22, 2019) ..................................... 30

*Parris v. 3M Co.*,
  2025 WL 2755869 (N.D. Ga. Sept. 29, 2025) ...................................... 17

*Price v. L'Oreal USA, Inc.*,
  2021 WL 4459115 (S.D.N.Y. Sept. 29, 2021) ...................................... 23

*Rosa v. Am. Water Heater Co.*,
  177 F. Supp. 3d 1025 (S.D. Tex. 2016) ............................................... 30

*Sanchez-Knutson v. Ford Motor Co.*,
  2016 WL 11783302 (S.D. Fla. July 25, 2016) ..................................... 24

*Sanchez-Knutson v. Ford Motor Co.*,
  310 F.R.D. 529 (S.D. Fla. 2015) .......................................................... 24

*Sellers v. Rushmore Loan Mgmt. Servs., LLC*,
  941 F.3d 1031 (11th Cir. 2019) ........................................................... 17

*Simmons v. Ford Motor Co.*,
  592 F. Supp. 3d 1262 (S.D. Fla. 2022) ................................................ 29

*Tershakovec v. Ford Motor Co.*,
  79 F.4th 1299 (11th Cir. 2023) .................................................... *passim*

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ............................................................... 5, 27, 29

*Varner v. Dometic Corp.*,
  2022 WL 2307025 (S.D. Fla. Feb. 2, 2022), *objections overruled*
  *sub nom. Papasan v. Dometic Corp.*, 2022 WL 1222817 (S.D. Fla.
  Apr. 26, 2022) ...................................................................................... 25

v

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)................................................................................1, 10

*Walewski v. Zenimax Media, Inc.*,
    502 F. App'x 857 (11th Cir. 2012)...............................................................27

**Rules**

Fed. R. Civ. P. 23 ...............................................................................*passim*

**INTRODUCTION**

While Plaintiffs' class certification motion should be denied on numerous grounds, perhaps the most telling flaw is Plaintiffs' attempt to mischaracterize this case as involving a "uniform" set of "omissions" to which every putative class member was exposed. This is the cornerstone of their bid to certify the nationwide class, and their motion crumbles without it because cases applying Georgia law uniformly hold that the reliance element of a fraudulent concealment claim is far too individualized for class certification. This Court should not accept Plaintiffs' claim that this case involves a uniform set of omissions. At class certification, the Court must conduct a "rigorous analysis," even if that will "entail some overlap with the merits of the plaintiff's underlying claim." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). The record shows that putative class members were exposed to a wide variety of information about Siemens' Arc Fault Circuit Interrupters ("AFCI") and nuisance tripping. Under settled Georgia law, individualized questions of reliance defeat class certification. Plaintiffs' fallback efforts to certify two subclasses under Texas and California law fail for the same reason, plus more.

Plaintiffs' recitation of the background facts is also misleading and incomplete. In brief:

- Plaintiffs' argument that consumers and electricians "have been plagued by nuisance tripping" is not true. Pls.' Mem. in Supp. of Mot. for Class Certification (Dkt. No. 164) ("Brief" or "Br.") at 1. Nuisance tripping is exceedingly rare, with just ███████ of Siemens AFCIs shipped generating a complaint related to

nuisance tripping. Ex. 1[2] (SIEMENS_AFCI_00047352-53) at SIEMENS_AFCI_00047353.

- Plaintiffs cannot identify their proposed class in any reliable way: Siemens sells AFCIs only through retailers and distributors, keeps no customer list, and most people do not even know what brand AFCI they have. Decl. of Juergen Duemmler ¶ 8; Ex. 2 (Neal Report) §§ 3.1.1.1, 3.1.1.2.

- Plaintiffs were not exposed to a "common" set of "omission[s]." *See, e.g.*, Br. at 23-25. The AFCI literature the putative class saw was not "common": some reviewed product brochures and others never reviewed any Siemens materials at all. This is detailed below and in the attached Appendices. Nor is this an "omissions" case: Siemens routinely disclosed that consumers "may experience a phenomenon called nuisance tripping." *See, e.g.*, Ex. 3 (SIEMENS_AFCI_00056347-58) at SIEMENS_AFCI_00056348.

- Unrebutted survey evidence confirms that additional nuisance tripping disclosures would not have affected purchasing decisions, and most purchasers— primarily electricians already familiar with nuisance tripping—are driven by other factors like brand and panel compatibility. *E.g.*, Ex. 2 (Neal Report) §§ 3.2.4, 3.4.1-3.4.4; Ex. 4 (Caves Dep.) at 242:15-243:1; Ex. 5 (Brnich Dep.) at 58:3-12; Ex. 6 (Montoya Dep.) at 161:19-163:2.

There are many reasons Plaintiffs' motion fails to satisfy Federal Rule of Civil Procedure 23, but there are four overarching problems.

***First***, Plaintiffs' entire argument is based on a false premise: that this case involves a "common" set of "omission[s]" about AFCIs that every putative class member received and relied upon. *See, e.g.*, Br. at 23-25. If that premise is false (as it is), class certification must be denied. Georgia fraud law that governs Plaintiffs'

---

[2] All exhibits are attached to the Declaration of Sarah McVay ("McVay Decl."), submitted concurrently with the Brief.

nationwide class requires a plaintiff to establish ***justifiable reliance***, *McCabe v. Daimler AG,* 160 F. Supp. 3d 1337, 1352 n.4 (N.D. Ga. 2015), which is far too individualized of an inquiry to satisfy Rule 23(b)(3)'s predominance requirement, and creates issues of adequacy, typicality, and manageability as well. Recognizing this, Plaintiffs invoke a narrow Georgia exception that allows courts to ***presume*** reliance when a defendant has made uniform misrepresentations in standardized documents received by all proposed class members. Br. at 24-25. But that exception is inapplicable, because this case does not involve the kind of standardized documents (like security agreements or insurance policies) capable of triggering it. Rather, the evidence shows that putative class members received varying information and exhibited varying degrees of reliance (if any). In fact, the most analogous case—*Takata Airbags*, cited repeatedly in Plaintiffs' own brief—shows why class certification should be ***denied***. *Takata*, like here, involved a putative Georgia class exposed to varying information about the product at issue. Although the district court originally certified the class, it then *sua sponte* narrowed the class to ***exclude*** Georgia purchasers because of individualized reliance issues, squarely rejecting a similar effort to invoke the narrow presumption that Plaintiffs invoke here. That same logic requires Plaintiffs' motion to be denied.

***Second***, Plaintiffs do not meaningfully address Rule 23(b)(3)'s manageability and superiority requirements. Plaintiffs have not explained how class members—

every person or entity across the U.S. who purchased a "new Siemens Gen 3 AFCI" from a distributor or retailer (Br. at 2)—could be identified in any reliable way. Siemens does not sell AFCIs directly to putative class members, nor have Plaintiffs shown that a customer list is available from third parties. This administrative infeasibility and difficulty identifying class members is a manageability problem under Rule 23(b)(3). While this Circuit has not adopted a "heightened" ascertainability requirement, it nevertheless holds that a plaintiff lacking a practical method for identifying absent class members fails to carry its burden under Rule 23. *See Tershakovec v. Ford Motor Co.*, 79 F.4th 1299, 1316 (11th Cir. 2023).

***Third***, Plaintiffs fail predominance because they have not provided a class-wide damages model that aligns with their theory of liability, as required under *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). Plaintiffs' core theory of liability is that Siemens AFCIs trip at an abnormally high rate compared to a properly functioning AFCI. But Plaintiffs' experts do not model the effects of disclosing an increased propensity to nuisance trip. Plaintiffs' damages model also fails to account for individualized damages issues. For example, although Plaintiffs' class definition sweeps in many different types of purchasers, including licensed electricians and ordinary consumers, Plaintiffs' expert did not properly evaluate preference variation among these groups. Faced with evidence showing wide variation in purchasing behavior, and despite Plaintiffs' bid to certify a sweeping nationwide class,

4

Plaintiffs' expert just assumed, without showing, that a conjoint survey works here.

**Fourth**, Plaintiffs' fallback subclasses fail for these reasons and more. The subclasses include anyone who potentially **used** a Siemens AFCI, which poses heightened manageability problems and means the proposed classes are overwhelmingly populated by people who never experienced nuisance tripping at all. Only a tiny percentage—less than ███—of Siemens AFCIs report nuisance tripping. But under Texas and California law, putative class members that never experienced nuisance tripping or viewed the alleged omissions lack standing, and "[e]very class member must have Article III standing in order to recover individual damages." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

For these reasons and as detailed below, Plaintiffs' motion should be denied.

## BACKGROUND

## I.     AFCIS AND CONSUMER PURCHASING BEHAVIOR

AFCIs are circuit breakers that protect against fires by detecting potentially dangerous electrical arcs on a circuit. Second Am. Consolidated Class Action Compl. (Dkt. No. 123) ("SAC") ¶ 2. Siemens does not sell AFCIs directly to electricians or end users. Decl. of J. Duemmler ¶¶ 3-4. Like other AFCI manufacturers, Siemens sells to big-box retailers and independent distributors, who in turn sell to electricians and end-users. *Id.* ¶ 3; Ex. 7 (Kees Rule 30(b)(6) Dep.) at 27:14-28:5, 148:25-149:10; Ex. 8 (Duemmler Dep.) at 46:18-47:5. Siemens has no

direct relationship with—and cannot identify—those who use and install its AFCIs.

Homeowners may or may not be involved in purchasing the AFCIs in their homes. Though AFCIs have been required by electrical codes since 2002, Ex. 9 (Durham Report) ¶ 78, nearly half of homeowners do not know whether they have an AFCI. Ex. 2 (Neal Report) § 3.1.1.2. Around 4 in 5 homeowners do not participate in selecting their homes' breakers, or otherwise never view printed or online materials from their breaker manufacturer before purchase. *Id.* § 3.2.4. Any number of characteristics may play a role in selecting an AFCI for a home, but one of the most important is brand: the AFCI brand must match the brand of the home's electrical panel to pass state electrical codes and home inspections. *See, e.g.*, Ex. 5 (Brnich Dep.) at 58:3-12; Ex. 6 (Montoya Dep.) at 161:19-163:2. Thus, unless a new electrical panel is being installed, the AFCI must match the existing panel brand.

## II.    NUISANCE TRIPPING AND SIEMENS' DISCLOSURES

AFCI performance is governed by Underwriters Laboratories ("UL") Standard 1699, which governs when an AFCI should and should not trip. *See* Ex. 10 (Durham Dep.) at 94:4-12. Each generation of Siemens AFCIs sold in the U.S. has passed UL Standard 1699 testing. *Id.* at 93:19-23. Even so, homeowners may experience unwanted AFCI tripping for various reasons, including wiring problems and incompatibility with a connected load (such as an appliance). Ex. 11 (SIEMENS_AFCI_00020560-63) at SIEMENS_AFCI_00020561. The latter—

sometimes called "nuisance tripping"—has long been known in the industry. As Plaintiffs' own expert conceded, "knowing about nuisance tripping is just ... part of being an electrician." Ex. 4 (Caves Dep.) at 242:15-243:1. Nuisance tripping happens when loads create electrical signals that mimic the signals of dangerous electrical arcs. Ex. 3 (SIEMENS_AFCI_00056347-58) at SIEMENS_AFCI_00056349.

AFCI nuisance tripping is an industry-wide phenomenon. ████████████ ████████████████████████████████████████████████ ███████████████████████████████. Ex. 12 (NEMA_S-0066736). The data also confirms nuisance tripping is extremely rare: "[n]uisance [t]ripping" or "[i]nteroperability" issue reports were made for 0.0078% of all AFCIs shipped industry-wide. Ex. 13 (SIEMENS_AFCI_00004504-14) at SIEMENS_AFCI_00004506. ██████████████████████████████ ██████████████████████████████████████████████. Ex. 1 (SIEMENS_AFCI_00047352-53) at SIEMENS_AFCI_00047353.

Even so, Siemens has publicly disclosed the potential for nuisance tripping in many different ways. Examples of those disclosures are set out in Appendix A. █ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████. Ex. 7 (Kees Rule 30(b)(6) Dep.) at 27:10-28:5. For example, Siemens

has contributed to industry publications to avoid conditions of nuisance tripping, including explaining that nuisance tripping can be caused by "damaged or faulty" appliances, Ex. 14 (SIEMENS_AFCI_00125746-55) at SIEMENS_AFCI_00125751, and "lack of compatibility with a connected load," Ex. 11 (SIEMENS_AFCI_00020560-63) at SIEMENS_AFCI_00020561-62. Siemens has published various troubleshooting guides and YouTube videos explaining why nuisance tripping may be happening. *See* App. A. Siemens has interacted with appliance manufacturers, visited sites of reported nuisance tripping, and spoken with customers to help analyze and troubleshoot reports of nuisance tripping. *Id.*

## III. PROCEDURAL HISTORY

Plaintiffs are eleven individuals and businesses. They filed their SAC on May 12, 2025. Their own experiences underscore the wide variation within the proposed classes. Details are in Appendix B, filed herewith, but in short, the Plaintiffs include:

- Licensed electricians who were familiar with nuisance tripping but chose Siemens AFCIs for many different reasons, with varied experiences in terms of the disclosures they received and reviewed; their interactions with Siemens, including returning AFCIs; and who bought and sold AFCIs at varying price points (*e.g.*, Keyser, Brnich, Bolt Electric, Electricalifornia, and Zank Electric).

- Individuals with no formal electrical training but who nonetheless installed their own electrical systems and neither reviewed materials about AFCIs nor interacted with Siemens (*e.g.*, Oakley).

- Homeowners who did not purchase their AFCIs and who did not review any materials, some of whom interacted with Siemens after nuisance tripping (*e.g.*, Vodicka, Cates, Barrette, and Butakis) but others that did not (*e.g.*, Wylie). Based on Plaintiffs' motion, some appear to remain class representatives (Vodicka) and

8

others do not (*e.g.*, Butakis and Barette), though it is unclear why.

Although Plaintiffs' theory of class certification has changed over time, on May 19, 2026, Plaintiffs sought to certify a "Nationwide Purchaser Class" consisting of "[a]ny person or entity who ... purchased a new Siemens Gen 3 AFCI from a Siemens distributor or retailer," and two "State Homeowner Subclasses" consisting of "[a]ny person who resides in California or Texas who used Siemens Gen 3 AFCI in a residence they owned." Br. at 2.[3] The only remaining claims for the proposed classes are a fraudulent concealment claim under Georgia law (nationwide class), a California Consumers Legal Remedies Act ("CLRA") claim (California subclass), and a breach of implied warranty claim under Texas law (Texas subclass). *Id* at 2-3.

Fact and expert discovery is closed. Plaintiffs put forward two experts: Dr. Kevin Caves, an economist whose survey was used to identify a supposed market-wide price premium associated with a claimed omission; and Dr. Robert Durham, an electrical engineer who concluded without product testing or statistical analysis that Siemens AFCIs are defective. Siemens' experts are:

---

[3] Plaintiffs' motion for class certification narrows the claims and classes asserted in the SAC. The SAC asserted six causes of action on behalf of a nationwide "Consumer Class," a nationwide "Commercial Class," and nine state subclasses. SAC ¶¶ 174-76, 183-249. Plaintiffs' motion abandons the Commercial Class, drops all but two state subclasses, and narrows claims to Gen 3 AFCIs. Plaintiffs thus abandoned their bid to certify classes for their Song-Beverly Act claim (Count III), California UCL claim (Count V), and the implied warranty claims for all states other than Texas (Count II).

- **Dr. David Neal**: Dr. Neal is a survey expert. He supervised and analyzed results for two unrebutted surveys, which found most people know nothing about their AFCIs and a nuisance tripping disclosure would have no effect on electricians' purchasing decisions. Ex. 2 (Neal Report) §§ 2.3-2.5, 3.1.1, 3.2, 3.4.

- **Dr. Ran Kivetz**: Dr. Kivetz is also a survey expert who has analyzed Dr. Caves' survey, finding that it included leading and ill-defined language for a supposed "nuisance tripping defect" confirmed by fifteen "cognitive interviews" moderated by Dr. Caves himself. Ex. 15 (Kivetz Report) ¶ 23.

- **Dr. Keith Ugone**: Dr. Ugone is an economist who analyzed Dr. Caves' damages model, finding that it does not provide a class-wide model of economic harm and that damages cannot be assessed class-wide. *See* Ex. 16 (Ugone Report) ¶ 9.

- **Dr. Scott Wright**: Dr. Wright is an electrical engineer who opines that unwanted tripping can occur for reasons having nothing to do with AFCI design and that Siemens AFCIs rarely nuisance trip. Ex. 17 (Wright Report) at 7.

## LEGAL STANDARD

The party seeking class certification bears the burden of "affirmatively demonstrat[ing] his compliance" with each of Rule 23's requirements. *Wal-Mart*, 564 U.S. at 350; *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016). A district court must conduct a "rigorous analysis" of Rule 23's criteria, which "will entail some overlap with the merits." *Wal-Mart*, 564 U.S. at 351. The Court must resolve any doubts against Plaintiffs: "the presumption is against class certification because class actions are an exception to our constitutional tradition of individual litigation." *Brown*, 817 F.3d at 1233.

## ARGUMENT

**I.     THE NATIONWIDE FRAUDULENT CONCEALMENT CLASS IS OVERWHELMED BY INDIVIDUALIZED ISSUES**

10

Plaintiffs' nationwide class cannot possibly be certified because of the overwhelmingly individualized evidence necessary to prove their claim—interchangeably described as a fraudulent "omission" or a "concealment" (*see, e.g.*, Br. at 14, 23)—under Georgia law. Plaintiffs' entire effort at certifying the class rests on the false premise that Siemens made a class-wide, uniform omission about AFCIs that all class members nationwide were exposed to, reviewed, and were duped by since 2017. But the reality is the opposite: many putative class members did not interact with Siemens at all, and those that did received very different information. *See* App'x B. Many putative class members, for example, were exposed to Siemens disclosures about nuisance tripping—but then ignored it. *Id.* These differences defeat any effort to meet Rule 23's commonality and predominance requirements.

### A.    Justifiable Reliance Requires Individual Proof

Cases uniformly hold that the reliance element of Georgia fraudulent concealment law requires too individualized an inquiry for class certification. Faced with this precedent, Plaintiffs frame this as an "omission and concealment" case, Br. at 23—but it is not. The reality is that Siemens made many different statements about its AFCIs and the risk of nuisance tripping, such that putative class members were exposed to many different disclosures (if any at all).

It is well settled that fraud cases like this are "unsuited for treatment as a class action if there [i]s material variation in the representations made or in the kinds of

11

degrees of reliance by the persons" in the putative class. *In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, 2017 WL 2536846, at \*14 (N.D. Ga. June 9, 2017) (denying certification); *see also In re Takata Airbag Prod. Liab. Litig.*, 2023 WL 5625652, at \*3 (S.D. Fla. Aug. 24, 2023) ("*Takata II*"). Georgia recognizes a narrow exception to that rule in omissions cases: "only when (1) a defendant makes uniform written misrepresentations in standardized documents that are received by all proposed class members, and (2) there is common circumstantial evidence of all class members' conduct demonstrating their reliance." *In re Takata Airbag Prod. Liab. Litig.*, 348 F.R.D. 500, 517 (S.D. Fla. 2025) ("*Takata III*") (citing *Fortis Ins. Co. v. Kahn*, 299 Ga. App. 319 (2009); *Liberty Lending Servs. v. Canada*, 293 Ga. App. 731 (2008)).

This case does not resemble that narrow exception in any respect. Plaintiffs' cited cases are inapposite because they, unlike here, contained uniform, class-wide "written misrepresentations" in standardized documents. *Fortis* involved "uniform written misrepresentations" common in all insurance policies. 299 Ga. App. at 322. *Liberty Lending* involved "similar written representations" that "were common to all the security agreements at issue." 293 Ga. App. at 741. Here, by contrast, Siemens had neither a uniform channel of communication with the nationwide class, nor a uniform set of written representations about its AFCIs. *See* Ex. 10 (Durham Dep.) at 172:9-176:22 (Plaintiffs' expert agreeing Siemens communicates with customers

12

about its AFCIs in many ways). Most putative class members had no meaningful contact with Siemens at all before purchase, and those that did received varying disclosures, or already knew about nuisance tripping independent of anything Siemens said. *See* App. B. That spectrum—from no information, to disclosures, to independent baseline knowledge—is the ***opposite*** of the uniform, standardized transmission of information that justifies a reliance presumption in the cases Plaintiffs cite. *See Takata II*, 2023 WL 5625652, at *3 ("[A] presumption of reliance is inappropriate where, as here, there is no evidence that all class members received the same, standardized written documents containing uniform misrepresentations."). Indeed, many putative class members were exposed to the ***opposite*** of an omission: Siemens disclosed the potential for nuisance tripping in multiple ways, including through product troubleshooting guides, industry white papers, and emails.[4]

This is not a case where Siemens "stood mute in the face of a duty to disclose." *Tershakovec*, 79 F.4th at 1309. Given the numerous different disclosures and

---

[4] *See, e.g.*, Ex. 18 (SIEMENS_AFCI_00103449-53) correspondence provided to electrician disclosing that noncompliant electronics or remodeling-related wiring may cause unnecessary tripping); Ex. 19 (SIEMENS_AFCI_00192735-60) (sharing 2011 NEMA Product Compatibility White Paper with customer); Ex. 20 (SIEMENS_AFCI_00040348-53) (correspondence with electrician regarding light fixture); Ex. 21 (SIEMENS_AFCI_00002842) (informing user that a refrigerator's VFD could cause AFCI breakers to trip) (A PDF of Ex. 21 is attached for electronic filing, but does not fully reproduce the native Excel spreadsheet. A complete copy in native format has been provided to the Court and all parties via email.).

13

representations about the potential of nuisance tripping, there are myriad individualized fact issues with respect to the reliance element of Plaintiffs' Georgia law fraud claim: whether a plaintiff reviewed the materials available to it, and if so, which ones; whether the plaintiff ***in fact*** relied on those representations; and whether that reliance was justifiable. Courts routinely deny class certification in like circumstances. *See Lechter v. Aprio LLP*, 2026 WL 1803824, at *16 (N.D. Ga. June 17, 2026); *Takata II*, 2023 WL 5625652, at *3; *cf. Tershakovec*, 79 F.4th at 1312 ("[P]roving an individual's reliance [on an alleged misrepresentation] will necessarily require individualized evidence.").

Take, for example, a putative class member who never reviewed the disclosures made available to it.[5] For these class members, proving justifiable reliance is a near impossibility because Georgia fraud plaintiffs must undertake efforts to discover the allegedly omitted information. *See, e.g.*, *McCabe v. Daimler AG*, 160 F. Supp. 3d 1337, 1352 n.4 (N.D. Ga. 2015) (no justifiable reliance where plaintiff never reviewed available records); *Marion A. Allen, Inc. v. Johnston*, 371

---

[5] This is not a hypothetical issue. Even though Siemens had long made information about its AFCIs available, many class representatives themselves confirmed in discovery that they never reviewed it. *See* Ex. 22 (Vodicka Dep.) at 224:15-17; Ex. 23 (Cates Dep.) at 46:12-47:1, 53:12-16; Ex. 5 (Brnich Dep.) at 136:25-138:2, 149:14-16; Ex. 24 (Butakis Dep.) at 215:15-20, 61:24-62:18; Ex. 25 (Barrette Dep.) at 170:24-171:20; Ex. 26 (Oakley Dep.) at 42:1-4, 55:22-25; Ex. 27 (Wylie Dep.) at 135:9-25.

14

Ga. App. 856, 860-61 (2024) (no justifiable reliance when homebuyer did not read inspection reports or "undertake any independent investigation"). Courts routinely deny certification in these circumstances. *See, e.g.*, *McVicar v. Goodman Glob., Inc.*, 2015 WL 4945730, at *11, n.8 (C.D. Cal. Aug. 20, 2015) (denying class certification where only 27% of consumers reviewed manufacturer materials before purchase); *Justice v. Rheem Mfg. Co.*, 318 F.R.D. 687, 697 (S.D. Fla. 2016).

Focusing on those that *did* review material about Siemens AFCIs only highlights the predominance problem because they "were exposed to different representations that were conveyed through many different mediums." *Takata III*, 348 F.R.D. at 517. Some class representatives who are electricians, for example, viewed brochures, marketing materials, and advertisements, Ex. 28 (Zank Dep.) at 133:1-22; some read the packaging, Ex. 29 (Keyser Dep.) at 75:11-23; and some reviewed literature through now-forgotten channels, Ex. 6 (Montoya Dep.) at 143:22-144:1. And many plaintiffs were otherwise aware of nuisance tripping because it's "just part of being an electrician." Ex. 4 (Caves Dep.) at 242:15-243:1.[6]

There is no common evidence about what each class member knew about

---

[6] *See also* Ex. 4 (Caves Dep.) at 128:11-24, 240:4-10; Ex. 6 (Montoya Dep.) at 73:9-24, 171:25-173:4; Ex. 30 (Meade Dep.) at 137:12-19; Ex. 5 (Brnich Dep.) at 152:20-24; Ex. 29 (Keyser Dep.) at 29:11-20; Ex. 31 (Cognitive Interview Trs.) at 16 ("Every electrician knows what nuisance tripping is."); Ex. 16 (Ugone Report) ¶ 111; Ex. 17 (Wright Report) at 48.

nuisance tripping, what Siemens communicated (or what Siemens allegedly failed to communicate), or what class members reviewed, meaning that each class member's fraudulent concealment claim is highly individualized such that common issues cannot predominate. *See Takata II*, 2023 WL 5625652, at *3; *Lechter*, 2026 WL 1803824, at *16; *In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, 2017 WL 2540822, at *11 (N.D. Ga. June 9, 2017) (class members on notice of defect cannot rely on omission of the defect).

Moreover, the unrebutted evidence in the record shows that even if Siemens' statements had been identical (they were not), reliance still cannot be presumed here because it would not have been material to purchasing decisions. *See McVicar*, 2015 WL 4945730, at *14; *see also Bryant v. Mortg. Cap. Res. Corp.*, 2002 WL 34720249, at *10 (N.D. Ga. May 31, 2002) (claims requiring materiality "are particularly unsuited for class treatment"). Dr. Neal's unrebutted survey report shows that even if electricians received the very nuisance tripping disclosure designed by plaintiffs, it would not have changed the decision to purchase Siemens AFCIs. In a survey of 280 electricians who were shown a Siemens brochure then asked if they would purchase the advertised AFCI anyway, there was no statistically significant difference between those whose brochure contained a nuisance-tripping disclosure and those whose brochure did not. Ex. 2 (Neal Report) §§ 3.4.1-3.4.4. These material differences in Plaintiffs' reliance defeat predominance.

16

Unsurprisingly, Plaintiffs cannot identify a single case on like facts certifying

a Georgia fraud claim. *See* Br. at 22-26. Most of Plaintiffs' cited cases do not even

address certification in the context of Georgia's reliance element for fraud claims.[7]

The one case that Plaintiffs cite that ***is*** on point—*In re Takata Airbag Prod. Liab.

Litig.*, 677 F. Supp. 3d 1311, 1327 (S.D. Fla. 2023) ("*Takata I*")—shows why

Plaintiffs' motion should be denied. Recognizing that *Takata I* addressed this same

issue, Plaintiffs try to distinguish it on the theory that this case is an "omissions"

case. Br. at 18 n.2. But so was *Takata*. *Takata III*, 348 F.R.D. at 509 ("The crux of

Plaintiffs' legal claims is [the defendant] … concealed or otherwise filed to notify

Plaintiffs [of the defect]."). Even so, months after certifying a class, the district court

---

[7] *See DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1234 (9th Cir. 2024) (applying California law and recognizing cases with "material variation in the representations made or in the kinds or degrees of reliance" are not susceptible to class treatment); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (denial of certification of settlement class in personal injury case); *In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 413 (M.D. Fla. 2018) (federal antitrust law); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 699 (N.D. Ga. 2001) (employment discrimination); *Nuwer v. FCA US LLC*, 343 F.R.D. 638, 656 (S.D. Fla. 2023) (finding no predominance for New York fraud claim but certifying Florida consumer protection law class because statute does not require reliance); *Parris v. 3M Co.*, 2025 WL 2755869, at *5 (N.D. Ga. Sept. 29, 2025) (water contamination); *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 317 F.R.D. 675, 697 (N.D. Ga. 2016) (federal antitrust); *Monopoli v. Mercedes-Benz USA, LLC*, 2022 WL 409484, at *10 (N.D. Ga. Feb. 10, 2022) (motion to dismiss); *Sellers v. Rushmore Loan Mgmt. Servs., LLC*, 941 F.3d 1031, 1043 (11th Cir. 2019) (Florida debt collection law); *Luse v. Sentinel Offender Servs., LLC*, 2017 WL 11629203, at *4 (N.D. Ga. Aug. 21, 2017) (settlement class challenging probationer drug testing).

*sua sponte* excluded all Georgia purchasers from the class, recognizing after the Eleventh Circuit's ruling in *Tershakovec* that a class cannot be certified unless a state law permits a presumption of reliance. *Takata II*, 2023 WL 5625652, at *2. The *Takata* court examined Georgia law, looking specifically at the very cases that Plaintiffs cite here and distinguishing them because "there is no evidence of uniform written misrepresentations contained in standardized documents that were received by all class members." *Id.* at *3.[8]  Instead, the court pointed out that where—as here—class members "[a]re exposed to myriad different representations concerning" the product at issue "that were conveyed through different mediums," "the Court cannot infer class-wide reliance under Georgia law, and thus the predominance requirement of Rule 23(b)(3) is not satisfied." *Id.* So, too, here.

### B.    Plaintiffs' Device Incompatibility Claims Will Require Countless Mini-Trials

In attempting to frame this as an "omissions" case, Plaintiffs fault Siemens for not including "a list of appliances and products Siemens determined caused its

---

[8] Plaintiffs fail to establish that a duty to disclose can be shown classwide. Under Georgia law, a duty to disclose arises only where there is a "dependent relationship," even if plaintiffs claim omission of an "intrinsic" defect. *Mitchell v. Ford Motor Credit Co.*, 68 F. Supp. 2d 1315, 1320 (N.D. Ga. 1998); *In re Atlas Roofing Corp. Chalet Shingle Prods. Liab. Litig.*, 2018 WL 2765961, at *9-10 (N.D. Ga. June 8, 2018) (no duty to disclose where the manufacturer had no pre-purchase communications). Plaintiffs cannot show class-wide duty, since members acquired AFCIs through intermediaries and largely did not communicate with Siemens pre-sale.

AFCIs to trip," or conversely "a list of 'good devices.'" Br. at 2, 11. But nuisance tripping is extremely rare, and what matters is Siemens' understanding of the *particular* appliances that might cause it, which evolved over time. If Siemens had no knowledge that a particular appliance created a nuisance tripping concern, it obviously could not have disclosed that risk. Assessing whether a class member had such an appliance and when Siemens learned of any risk would require countless individualized, appliance-by-appliance mini-trials.[9] *See Ilhardt v. A.O. Smith Corp.*, 168 F.R.D. 613, 620-21 (S.D. Ohio 1996) (rejecting certification because of "myriad of individual issues relating to individual ... models, level of manufacturer knowledge in particular years and causation issues unique to each class member"); *In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.*, 194 F.R.D. 484, 492-96 (D.N.J. 2000) (rejecting a proposed two-stage mini-trial plan).

## II.    PLAINTIFFS HAVE FAILED TO SATISFY RULE 23'S MANAGEABILITY AND SUPERIORITY REQUIREMENTS

Class representatives of Rule 23(b) classes must also show the proposed class

---

[9] *See e.g.*, Ex. 32 (SIEMENS_AFCI_00065490-93) (learning for this first time in January 2018 that a particular LED driver caused tripping); Ex. 33 (SIEMENS_AFCI_00065459) ███████████████████████████████████ ██████████████████████████████████████████████████████ ; Ex. 34 (SIEMENS_AFCI_00053738-42) (first learning that a Samsung cooktop could cause tripping in December 2019); Ex. 35 (SIEMENS_AFCI_00024629-31) (January 2020 email state it was "the first time" engineering heard of a KitchenAid refrigerator causing tripping).

19

is "adequately defined and clearly ascertainable," and superior to other available methods of adjudicating the controversy. *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021). While this Circuit has not adopted a "heightened standard" that requires "[p]roof of administrative feasibility" as a "precondition for certification," *see id.* at 1302, it has made clear that courts must weigh "likely difficulties in managing a class action," including administrative infeasibility and difficulties in identifying class members. *Id.* at 1303-04; *see also* Fed. R. Civ. P. 23(b)(3)(D). Applying that standard, courts have frequently held that a plaintiff lacking a practical method for identifying absent class members fails to carry its burden.[10] Here, Plaintiffs have not shown how nationwide class members could ever be identified, and so have failed to meet their burden under Rule 23's requirements. *Tershakovec*, 79 F.4th at 1316; *Cherry*, 986 F.3d at 1304.

Plaintiffs have not even attempted to show how members of the proposed nationwide class could be identified. The nationwide class consists of every person or entity across the U.S. who purchased a "new Siemens Gen 3 AFCI" from a distributor or retailer. Br. at 2. Siemens has no such customer list—it does not sell

---

[10] *See, e.g.*, *Coleman v. Burger King Corp.*, 2025 WL 3280900, at *16 (S.D. Fla. Nov. 25, 2025) (lack of superiority where identifying class would be "administrative nightmare"); *see Tershakovec*, 79 F.4th at 1316 ("The district court should consider the manageability challenges ... and should ... ensure that the difficulties of managing the class action do not impede the fair and efficient adjudication of the case.").

20

to putative class members. *See* Ex. 8 (Duemmler Dep.) at 46:18-47:5. Nor have Plaintiffs shown that such a customer list is reasonably available from third parties.

Even if one could identify absent class members (one cannot), Plaintiffs' papers underscore how indeterminate their class definition is in practice. Take, for example, Plaintiffs Vodicka, Barrette, and Butakis. In the current iteration of the class, Vodicka remains a class representative but the other two do not. Br. at 2. But there are no meaningful objective criteria for the distinction: none purchased a Siemens AFCI; all three moved into homes with Siemens AFCIs already installed. Ex. 22 (Vodicka Dep.) at 130:15-131:8; Ex. 25 (Barrette Dep.) at 170:21-171:6; Ex. 24 (Butakis Dep.) at 119:4-6. If there is no consistent rule for sorting who is in the class, there is no reliable way of doing so on an exponentially larger basis.

Plaintiffs do not suggest that absent class members can come forward to self-identify—for good reason. Homeowners are unlikely to know the brand, model, or generation of AFCI in their homes. Unrebutted survey evidence of homeowners shows that around *half* of homeowners do not even know whether they have an AFCI or the brand of circuit breaker in their home (47.1% and 55.8%, respectively). Ex. 2 (Neal Report) § 3.1.1. These identification problems are compounded by the absence of reliable purchase records: even some Plaintiffs who operate electrical businesses maintain no more than "[m]ental records" of the AFCIs they have purchased and installed. Ex. 30 (Meade Dep.) at 84:3-86:1.

21

## III.    PLAINTIFFS HAVE FAILED TO PROFFER A VALID CLASS-WIDE DAMAGES MODEL

Plaintiffs also fail the Rule 23(b)(3) predominance requirement because they have not provided a valid class-wide damages model that aligns with their theory of liability, as required by *Comcast*. *Comcast*, 569 U.S. at 35. There, the Supreme Court held that a class-wide damages model must measure only those damages attributable to the plaintiffs' specific theory of liability; a model that fails to do so cannot satisfy Rule 23(b)(3)'s predominance requirement. *Id.* at 34-35.

***First***, the price premium purportedly measured by Caves' conjoint breaks from Plaintiffs' theory of liability, violating the central holding of *Comcast*. The theory that Plaintiffs pursue here is that Siemens AFCIs trip at an abnormally high rate compared to a properly functioning AFCI, including those made by Siemens' competitors. *See, e.g.*, SAC ¶ 71 ("Siemens knew that its AFCI breakers experienced abnormally high rates of nuisance tripping ...."); Br. at 9-10 (⬛⬛⬛⬛⬛ ⬛⬛⬛⬛⬛. But nothing about Plaintiffs' expert reports—including Caves' conjoint survey—models an increased propensity of Siemens AFCIs to nuisance trip. *See, e.g.*, Ex. 4 (Caves Dep.) at 90:20-25 ("[Q.] You are not offering any opinions in this case that Siemens AFCIs experience nuisance tripping more or less frequently than the AFCIs of other potential manufacturers. True? A. Yeah, I haven't studied that. I haven't looked at that. It's not relevant to my opinions."); *see also id.* at 221:7-223:13; Ex. 16 (Ugone Report) ¶¶ 156-63; Ex. 15 (Kivetz Report)

22

¶¶ 102-04. To the contrary, the design of Caves' survey implies that the alleged defect is *bound* to manifest. *See, e.g.*, Ex. 36 (Caves Report) ¶ 40 ("These AFCIs use an arc detection method that, according to reports, leads these AFCIs to trip ...."). The respondents in Caves' pre-survey cognitive interviews expressed precisely this confusion. One respondent even noted, "[i]t sounds like anything could trip this the way I'm reading this." Ex. 31 (Cognitive Interview Trs.) at 525. Courts routinely find that damages models at the class certification stage that "failed to convey that the ... defect might not manifest" are insufficient to support class certification. *Davidson v. Apple, Inc.*, 2019 WL 2548460, at *14 (N.D. Cal. June 20, 2019); *see also Flodin v. Cent. Garden & Pet Co.*, 2024 WL 4565340, at *10 (N.D. Cal. Oct. 23, 2024) (rejecting conjoint survey that tested "Made with Avocado" generally; theory of liability was about the specific amount/proportion of avocado); *Price v. L'Oreal USA, Inc.*, 2021 WL 4459115, at *6 (S.D.N.Y. Sept. 29, 2021) (decertifying class where conjoint survey did not isolate alleged misrepresentation).[11]

**Second**, the model fails Rule 23 because it fails to account for individualized damages issues. Caves offered a single damages theory: that "[a]ny person in the United States who purchased a Siemens' AFCI breaker, except for resale," overpaid

---

[11] *Francoforte v. Graco Children's Products, Inc.*, 2026 WL 582860, at *12 (N.D. Ga. Jan. 20, 2026), is not to the contrary, since the survey there isolated the price premium attributable to plaintiffs' theory. Caves' survey, on the other hand, does not test Plaintiffs' theory that Siemens AFCIs trip at high rates relative to competitors.

by 32%.[12] Ex. 36 (Caves Report) ¶¶ 5, 10-11 (citation omitted). Caves quantified these damages by surveying a select group of electricians (and a small subset of home DIYers), seeding them with an 8-paragraph "Nuisance Tripping Defect" disclosure, then supposedly capturing a market-wide magnitude of overpayment associated with the non-disclosure. *Id.* ¶¶ 29, 40, 50-64.

When Plaintiffs' class definition sweeps in many different types of purchasers—here, electricians doing a new install, tradesmen working off an existing electrical panel, and DIY enthusiasts, to name a few—simply assuming a conjoint model can uniformly apply to all downstream purchasers is not a cognizable class-wide damages model. Rather, Plaintiffs must come forward with evidence showing these groups hold reasonably uniform preferences.[13] Caves' own robustness testing confirms that they do not: when he included 50 non-electricians in his sample,

---

[12] Plaintiffs' proposed nationwide class differs from the class Caves purportedly analyzed. Plaintiffs seek to certify a class of "[a]ny person or entity who ... purchased a new Siemens Gen 3 AFCI from a Siemens distributor or retailer," discarding Caves' exclusion of resellers. *Compare* Br. at 2, *with* Ex. 36 (Caves Report) ¶ 5.

[13] The cases Plaintiffs cite in support of their conjoint model considered narrower purchaser classes to avoid the type of intra-class variation present in this case. *See Cardenas v. Toyota Motor Corp.*, 2021 WL 5811741, at *13 & n.4 (S.D. Fla. Dec. 6, 2021) (proposed class "purchase[d] their vehicle under the same circumstances: from an authorized Toyota dealer"); *Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 539 (S.D. Fla. 2015) (similar); *see also Sanchez-Knutson v. Ford Motor Co.*, 2016 WL 11783302, at *4 (S.D. Fla. July 25, 2016) (subsequently de-certifying implied warranty class "because the law requires the elements of pre-suit notice and the opportunity to cure be met as to each class member").

the resulting damages figure was different. Ex. 4 (Caves Dep.) at 123:7-124:5. That divergence confirms purchaser type alters the price premium, yet nothing shows the remaining untested types of class members—like tradesmen and DIY enthusiasts— share electricians' preferences. Nor does picking the more "conservative" figure cure the defect (*id.*): where results apply only to the tested population, a figure calibrated to one subgroup does not reliably measure damages for subgroups never surveyed at all. *See In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*, 2017 WL 1196990, at *29 & n.22 (N.D. Ill. Mar. 31, 2017) (proffered class damages model failed in not evaluating "whether the preferences of plumbers and ordinary consumers are the same or account[ing] for any differences if they are not"); *Varner v. Dometic Corp.*, 2022 WL 2307025, at *4 (S.D. Fla. Feb. 2, 2022), *objections overruled sub nom. Papasan v. Dometic Corp.*, 2022 WL 1222817 (S.D. Fla. Apr. 26, 2022) (excluding conjoint analysis proffered as method of class-wide damages where expert "failed to 'identify a representative sample of those who buy Defendant's products', which in turn, 'significantly undermines the relevance of [his] survey.'" (citation omitted)).

This is to say nothing of the other differences within the proposed class that Caves' conjoint model elides, including whether a large portion of the proposed class passed off their AFCI purchase cost (with or without a markup) to downstream

buyers,[14] whether class members were refunded the purchase price of their AFCI because they participated in a warranty program, and variation in actual prices paid. *See, e.g.*, Ex. 4 (Caves Dep.) at 160:17-161:18, 252:16-255:9. These, too, impact the damages analysis and undermine the suitability of Caves' conjoint damages model as a class-wide measure of damages. *See* Ex. 16 (Ugone Report) ¶¶ 120-320; *see also Davidson*, 2019 WL 2548460, at *14 (conjoint that failed to measure impact of warranty replacement on premium attributed to undisclosed defect failed *Comcast*); *Tershakovec*, 79 F.4th at 1334 n.36 ("But cars are different. Some pay sticker price. Some pay less. There is no indication that every purchaser paid the same amount of price premium here.").

**Third**, and finally, Caves' survey is plagued by independent methodological flaws that undermine its reliability as a basis for class-wide proof. Caves' pre-survey "cognitive interviews" revealed that respondents found the exercise "confusing," "loaded," a "trick question," and "unfair to ask," *see, e.g.*, Ex. 31 (Cognitive Interview Trs.) at 71, 161, 411, 482, 540, yet he proceeded without addressing that feedback, Ex. 4 (Caves Dep.) at 225:25-226:25, and used leading, counsel-selected

---

[14] Plaintiffs Kevin Brnich Electric LLC, Bolt Electric LLC, Electricalifornia, and Zank Electric LLC each passed off the costs of their Siemens AFCI purchases, sometimes with a markup to turn a profit. *See* Ex. 5 (Brnich Dep.) at 141:10-14, 145:6-13; Ex. 30 (Meade Dep.) at 170:20-23; Ex. 6 (Montoya Dep.) at 56:24-59:5; Ex. 28 (Zank Dep.) at 120:22-121:2, 225:17-21.

26

language ("defect") throughout, *id.* at 33:22-34:13. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 500 F. Supp. 3d 940, 950 (N.D. Cal. 2020) (flawed pretesting resulted in flawed conjoint survey).[15]

## IV.   PLAINTIFFS' STATE SUBCLASSES ALSO FAIL RULE 23

Plaintiffs' proposed subclasses fail to satisfy Rule 23 for multiple reasons.[16]

***Standing.*** The California and Texas subclasses are overbroad because they include many homeowners who lack standing. *TransUnion*, 594 U.S. at 431 (holding that absent class members must have standing). For CLRA standing, plaintiffs have standing only if they were exposed to and relied on the alleged omission. *See, e.g.*, *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 697 (Cal. Ct. App. 2010); *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1048 (N.D. Cal. 2014). Reliance means "had the omitted information been disclosed one would have been aware of it and behaved differently." *Mirkin v. Wasserman*, 858 P.2d 568, 574 (Cal. 1993). Thus, to have CLRA standing, ***every class member*** must have had some exposure to Siemens

---

[15] Siemens reserves the right to file a *Daubert* motion at the appropriate time. A court need not exclude an expert, however, to find an improperly designed survey failed to establish a cognizable class-wide damages methodology. *See Harris v. Nortek Glob. HVAC LLC*, 2016 WL 4543108, at *15 (S.D. Fla. Jan. 29, 2016) (critiquing damages model without reaching pending *Daubert* motion).

[16] Even if these sub-classes could be certified, the underlying state-law claims fail as a matter of law. Siemens filed a contemporaneous motion for summary judgment on the Texas implied warranty and California CLRA claims, demonstrating their legal insufficiency. *See Walewski v. Zenimax Media, Inc.*, 502 F. App'x 857, 861 (11th Cir. 2012) (class cannot be certified when claim cannot survive as a matter of law).

AFCI literature or advertising. But the California subclass proposed here includes any California homeowner who had a Siemens AFCI installed in their home, **whether or not** they were exposed to Siemens AFCI literature or advertising from which information was supposedly omitted. Given survey data showing that most homeowners had no involvement in purchasing their AFCIs, Ex. 2 (Neal Report) § 3.1.1, many California subclass members lack standing.[17]   For Texas implied warranty claims, it is not enough that a product has a risk of misfunction; plaintiffs have standing only if the alleged defect has actually happened. *Everett v. TK-Taito, L.L.C.*, 178 S.W.3d 844, 855 (Tex. App. 2005). But Plaintiffs have offered no evidence that every Siemens AFCI at issue has nuisance tripped; to the contrary, the record demonstrates that they barely ever do. *See* Ex. 1 (SIEMENS_AFCI_00047352-53)  at  SIEMENS_AFCI_00047353 ████████ ████████████████████████████████). Thus the vast majority of Texas subclass members never experienced nuisance tripping at all.

The inclusion of many absent class members lacking standing is reason alone to deny class certification. *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1273 (11th

---

[17] For this reason, Mr. Cates, the California subclass representative, lacks standing. Mr. Cates does not know where the AFCIs in his home were purchased and did not review any AFCI packaging or literature before install. *See* Ex. 23 (Cates Dep.) at 46:12-47:1; Ex. 37 (Cates Suppl. Objs. & Resps. to Siemens' 1st Set of Reqs. for Admis.) at 6-7.

Cir. 2019); *TransUnion*, 594 U.S. at 431.

***Damages.*** Plaintiffs also have not provided a subclass damages model tied to their theory of liability, as required for each class or subclass asserting a distinct injury. *See Comcast*, 569 U.S. at 35; Br. at 29-30. The nationwide and state classes seek different remedies: nationwide members seek an alleged price premium, while subclass members seek "AFCI replacement or replacement costs," Br. at 2-4—an out-of-pocket measure driven by individualized factors like labor rates and material costs. *See* Ex. 16 (Ugone Report) at 133-38. Plaintiffs do not (and cannot) explain how the proffered price premium model could serve as a proxy for replacement costs, a failure fatal to class certification. *See Simmons v. Ford Motor Co.*, 592 F. Supp. 3d 1262, 1297 (S.D. Fla. 2022) (rejecting "one-sentence argument" that a damages model applies to another class as insufficient under *Comcast*).

***Plaintiff Identification and Individual Inquiries.*** Plaintiffs' subclasses also suffer from individualized problems that defeat manageability and predominance. Plaintiffs offer no real method for identifying those who "used" a Siemens AFCI (Br. at 2), particularly since the subclasses include individuals who acquired homes with pre-installed AFCIs, and nearly half of homeowners do not even know whether they have an AFCI at all. Ex. 2 (Neal Report) § 3.1.1.2. Self-identification through affidavits, Plaintiffs' sole alternative, would violate Siemens' rights "against unverified self-identification" and "invite fraudulent submissions." *Karhu v. Vital*

29

*Pharms., Inc.*, 621 F. App'x 945, 947, 948 n.3 (11th Cir. 2015); *see also Coleman*, 2025 WL 3280900, at *16-17. And, as with the Georgia fraud claims, CLRA plaintiffs must prove reliance, and courts decline to certify CLRA classes where, as here, plaintiffs fail to show uniform exposure to the same misrepresentations.[18]

Additionally, Texas implied warranty claims are unsuited to class treatment because plaintiffs must prove manifestation of the alleged defect.[19] Even if Plaintiffs could identify those subclass members whose AFCIs tripped (they cannot), they have offered no way of proving that the tripping was due to the alleged defect. Ex. 10 (Durham Dep.) at 112:1-114:2 (identifying multiple causes of perceived nuisance tripping); Ex. 17 (Wright Report) at 23 (same). This, too, prevents certification. *See Lissys Cortes v. Honeywell Bldg. Sols. SES Corp.*, 2014 WL 11958626, at *4 (S.D. Fla. Sept. 24, 2014) (class unmanageable where plaintiffs had to show electrical arcing "was not the result of other causes, such as poor wiring").

**CONCLUSION**

For the foregoing reasons, the Court should deny Plaintiffs' motion.

---

[18] *See, e.g.*, *Oddo v. Arcoaire Air Conditioning & Heating*, 2019 WL 1460627, at *10 (C.D. Cal. Mar. 22, 2019).

[19] *See Brown*, 817 F.3d at 1238 (vacating certification of Texas and California claims because each class member would "need to prove that his washing machine actually grew mildew," not that it could); *Rosa v. Am. Water Heater Co.*, 177 F. Supp. 3d 1025, 1053 (S.D. Tex. 2016) (dismissing class implied warranty claims because "Texas law does not allow recovery for unmanifested defects").

30

Dated: August 4, 2026

Respectfully submitted,

*/s/ Stacey Mohr*

Stacey Mohr (619207)
Kaitlin A. Carreno (174813)
Claire Scavone (843960)
EVERSHEDS SUTHERLAND (US) LLP
999 Peachtree Street, N.E.
Atlanta, Georgia 30309
Telephone: (404) 853-8000
Facsimile: (404) 853-8806
staceymohr@eversheds-sutherland.com
kaitlincarreno@eversheds-sutherland.com
clairescavone@eversheds-sutherland.com

Gregg LoCascio (*pro hac vice*)
Ragan Naresh (*pro hac vice*)
Sarah McVay (*pro hac vice*)
Pierce MacConaghy (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5000
Facsimile: (202) 389-5200
glocascio@kirkland.com
ragan.naresh@kirkland.com
sarah.mcvay@kirkland.com
pierce.macconaghy@kirkland.com

Robin McCue (*pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, IL 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
rmccue@kirkland.com

*Counsel for Defendant Siemens Industry, Inc.*

31

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify, in compliance with LR 5.1, NDGa, that the foregoing pleading has been prepared using 14-point Times New Roman font, with top, bottom, left, and right margins of at least one inch and complies with Dkt. No. 169.


Dated: August 4, 2026                         Respectfully submitted,

                                              */s/ Stacey Mohr*
                                              Stacey Mohr

                                              *Counsel for Defendant Siemens Industry, Inc.*

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on August 4, 2026, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

Dated: August 4, 2026                    Respectfully submitted,

                                         */s/ Stacey Mohr*
                                         Stacey Mohr

                                         *Counsel for Defendant Siemens Industry, Inc.*