# EXHIBIT 8

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

Kevin Brnich Electrical LLC,
Performance Electric, Inc.,
Artistic Electric Inc., Bolt
Electric LLC, National Sentry
Security Systems, Inc.,
Electricalifornia, Charles Vodicka,
Patrick Cates, Bryan Butakis, Nels
Gordon, Rick Keyser, Tyler Barrette,
and Clifford Oakley individually
and on behalf of all others
similarly situated,
            Plaintiffs,

                          CIVIL ACTION NO.:
vs.                        1:22-cv-01229-MHC
Siemens Industry, Inc.,
            Defendant.


    VIDEO-RECORDED DEPOSITION OF JUERGEN DUEMMIER
                 April 24, 2025
                 9:05 a.m. EST
          999 Peachtree Street, Suite 2300
                 Atlanta, Georgia
         Carolyn M. Carboni, RPR, RMR, CCR-B-878
             Bryan Robinson, Videographer

Page 44

MS. JOST:  Object to form.  Go ahead.

A    If you would call a one-page a protocol, yes.

BY MR. STAUBER:

Q    Was there literally a one-page document that you created?

A    It was a flow chart, very simple.

Q    To the best of your knowledge, was that document collected and produced by counsel in this litigation?

MS. JOST:  Object to form.

A    I don't know.

BY MR. STAUBER:

Q    Do you have a copy of that document saved?

A    I would have to look.  I don't know.  I changed computers.  It might be on the computer that's on hold.  But --

Q    Is there a -- I'm sorry.  I didn't mean to cut you off.

A    But I haven't accessed this computer for at least three years or about three years.

Q    While you worked in this position, was there a similar document, a flow chart, that Siemens used in its residential task force field response?

Page 45

A    Similar to what I -- what we had, no.

THE REPORTER:  I'm sorry.  What's that?

A    Did I answer your question?

BY MR. STAUBER:

Q    Yeah.  I just heard some other chatter.

MS. DeMARIS:  So sorry, Counsel.  I did not realize my microphone was unmuted.

MR. STAUBER:  Great.

BY MR. STAUBER:

Q    Yes, you did answer my question.  Thank you, Mr. Duemmier.

And so if we look back at your LinkedIn, it says, "Improve customer satisfaction by implementing effective failure diagnostic."

Does that -- strike that.

What do you mean by "implementing effective failure diagnostic"?

A    That's a multitude of different things. For instance, we created a video, I believe it's a YouTube video, you should be able to find it on YouTube, for a homeowner, an electrician, to understand which device causes a nuisance tripping of the AFCI breaker.

We created troubleshooting guides, very similar, if not the same, to the video.  Basically,

Page 46

we created a guide, and then we made the guide into a video to support as good as we can for the customers.

And then, also, the process, what I said, like I said, it's a very simple process, a couple of steps.  And that's high level what we did to improve customer satisfaction.

Q    So did you ever deal directly with customers as part of this residential task force for field response?

A    You might want to define what is a customer, right?  There are different customer levels.  There's a contractor, there's electrician, and then there's the end user or homeowner/apartment owner.

And to your question, yes, there's all of them to a degree.

Q    So these products would be sold to -- in different levels of the distribution, it would be sold to a contractor, an electrician, or a homeowner; is that right?

MS. JOST:  Object to form.

BY MR. STAUBER:

Q    Is that right?

A    To a homeowner, we at Siemens wouldn't

Page 47

sell it. They might be able to buy it from retailers.

Q So, for example, you would sell it to Home Depot who could sell it to a homeowner?

A That's correct.

Q So did you ever deal with retailers in your capacity as -- strike that.

Did you ever deal with retailers as part of the residential task force for field response?

A No.

Q Who would have?

A Retailers as a sales function is one thing versus if a customer would have a nuisance tripping, those customers would have called customer support and would have got support there.

Q So you would have -- someone would communicate with the retailers from a sales perspective, but then usually if there was a nuisance trip complaint, then it wouldn't be the retailer who called you, it would be the end user?

A I cannot 100 percent say that it's never the case that a retailer is calling us. I'm not aware of it.

Q And then what about contractors, did you ever directly communicate with contractors as part

Page 48

of the residential task force for field response?

A    Let's call it as the manager of application engineers, and for those employees, yes.

Q    Who else would handle contractors as part of this residential task force for field response?

A    The application engineers.  It could be that a product manager is involved.  And it could be that the P&L owner, the segment manager, is involved.

Q    What was the last one that you listed?

A    The segment manager.

Q    Thank you.  So the application engineers would be in this situation, Nathan Massicotte, Chenari Abrams, or Tim Curtis?

A    That's correct.

Q    And then who would be the product managers that would respond to complaints about nuisance tripping?

A    Ashley -- I think her last name is now Keith, Ashley Keith.

Q    Is there anyone else?  Is there any other product manager?

A    There are many other product managers, but she is the product manager for the AFCIs.

Page 255

The following reporter and firm disclosures were presented by me at this proceeding for review by counsel:

REPORTER&DISCLOSURES

The following representations and disclosures are made in compliance with Georgia Law, more specifically:

Article 10 (B) of the Rules and Regulations of the Board of Court Reporting (disclosure forms)

OCGA Section 9-11-28 (c) (disqualification of reporter for financial interest)

OCGA Sections 15-14-37 (a) and (b) (prohibitions against contracts except on a case-by-case basis).

- I am a certified court reporter in the State of Georgia.
- I am a subcontractor for Veritext.
- I have been assigned to make a complete and accurate record of these proceedings.
- I have no relationship of interest in the matter on which I am about to report which would disqualify me from making a verbatim record or maintaining my obligation of impartiality in compliance with the Code of Professional Ethics.
- I have no direct contract with any party in this action, and my compensation is determined solely by the terms of my subcontractor agreement.

FIRM DISCLOSURES

- Veritext was contacted to provide reporting services by the noticing or taking attorney in this matter.
- There is no agreement in place that is prohibited by OCGA 15-14-37 (a) and (b).  Any case-specific discounts are automatically applied to all parties, at such time as any party receives a discount.
- Transcripts:  The transcript of this proceeding as produced will be a true, correct, and complete record of the colloquies, questions, and answers as

Page 256

submitted by the certified court reporter.

- Exhibits:  No changes will be made to the exhibits as submitted by the reporter, attorneys, or witnesses.

- Password-Protected Access:  Transcripts and exhibits relating to this proceeding will be uploaded to a password-protected repository, to which all ordering parties will have access.

Page 257

CERTIFICATE

STATE OF GEORGIA:

COUNTY OF FULTON:

I hereby certify that the foregoing transcript was taken down, as stated in the caption, and the colloquies, questions and answers were reduced to typewriting under my direction; that the transcript is a true and correct record of the evidence given upon said proceeding.

I further certify that I am not a relative or employee or attorney of any party, nor am I financially interested in the outcome of this action.

I have no relationship of interest in this matter which would disqualify me from maintaining my obligation of impartiality in compliance with the Code of Professional Ethics.

I have no direct contract with any party in this action and my compensation is based solely on the terms of my subcontractor agreement.

Nothing in the arrangements made for this proceeding impacts my absolute commitment to serve all parties as an impartial officer of the court.

This the 2nd day of May, 2025.

CAROLYN M. CARBONI, RPR, RMR, CCR-B-878

Page 258

Robbie R. Jost, Esq.

rjost@crowell.com

                    May 5, 2025

RE: Kevin Brnich Electric LLC, et al. v. Siemens Industry

    4/24/2025, Juergen Duemmler (#7325965)

    The above-referenced transcript is available for

review.

    Within the applicable timeframe, the witness should

read the testimony to verify its accuracy. If there are

any changes, the witness should note those with the

reason, on the attached Errata Sheet.

    The witness should sign the Acknowledgment of

Deponent and Errata and return to the deposing attorney.

Copies should be sent to all counsel, and to Veritext at

cs-midatlantic@veritext.com.

 Return completed errata within 30 days from

receipt of testimony.

    If the witness fails to do so within the time

allotted, the transcript may be used as if signed.

                 Yours,

                 Veritext Legal Solutions

Page 259

Kevin Brnich Electric LLC, et al. v. Siemens Industry Inc.

Juergen Duemmler (#7325965)

E R R A T A   S H E E T

PAGE_____ LINE_____ CHANGE See attached Errata Page_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

PAGE_____ LINE_____ CHANGE_____

_____

REASON_____

_____   _____

Juergen Duemmler                              Date

Page 260

Kevin Brnich Electric LLC, et al. v. Siemens Industry Inc.

Juergen  Duemmler (#7325965)

ACKNOWLEDGEMENT OF DEPONENT

I, Juergen Duemmler, do hereby declare that I have read the foregoing transcript, I have made any corrections, additions, or changes I deemed necessary as noted above to be appended hereto, and that the same is a true, correct and complete transcript of the testimony given by me.

_____     __6/12/2025_____

Juergen Duemmler                              Date

*If notary is required

SUBSCRIBED AND SWORN TO BEFORE ME THIS

_____ DAY OF _____, 20___.



_____

NOTARY PUBLIC

*Kevin Brnich Electric LLC, et al. v. Siemens Industry Inc.*
**Juergen Duemmler (#7325965)**
**ERRATA SHEET**

| Page : Line(s) | Change | Reason |
|---|---|---|
| 1:15 | "Duemmier" to "Duemmler" | Typographical error |
| 4:3,4 | | |
| 6:5,21 | | |
| 7:3,5,6 ,7,15,17 | | |
| 10:1 | | |
| 13:3,17 | | |
| 14:3 | | |
| 15:3,4,5,9, 24,25 | | |
| 16:1 | | |
| 45:11 | | |
| 53:19 | | |
| 68:8 | | |
| 75:1 | | |
| 77:2 | | |
| 77:3,7 | | |
| 85:7 | | |
| 86:7 | | |
| 91:8 | | |
| 92:7 | | |
| 92:8,16 | | |
| 95:13,17 | | |

1

| | | |
|---|---|---|
| 96:7 | | |
| 109:3,5 | | |
| 137:18,21,23 | | |
| 139:1 | | |
| 174:1,5,8,10 | | |
| 176:15 | | |
| 191:8 | | |
| 191:10,14 | | |
| 200:3,5 | | |
| 212:5 | | |
| 218:6,10 | | |
| 230:11,15 | | |
| 232:23 | | |
| 237:9,13 | | |
| 240:7,11 | | |
| 253:19 | | |
| 13:21 | "Duemmier.juergen" to "Duemmler.juergen" | Typographical error |
| 15:25 | "Mr. Duemmier's" to "Mr. Duemmler's" | Typographical error |
| 20:16 | "portable" to "panel" | Transcription error |
| 22:14 | "RaVolt" to "REFUsol" | Transcription error |
| 30:20 | "degree" to "party" | Transcription error |
| 33:17 | "EVP" to "VP" | Transcription error |
| 48:21 | "Keith, Ashley Kieth" to "Kees, Ashley Kees" | Transcription error |

| 71:18 | "discussions" to "technical discussions" | Transcription error |
|---|---|---|
| 72:21 | "EF circuit" to "air circuit" | Transcription error |
| 74:6 | "end-of-stock" to "in-to-stock" | Transcription error |
| 75:21 | "all" to "old" | Transcription error |
| 176:15 | "Mason" to "Nathan" | Transcription error |
| 217:22 | "sent" to "stand" | Transcription error |

3